**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ANTHONY SOS,

        Plaintiff,

v.                                                           Case No: 6:17-cv-890-Orl-40LRH

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.
_____/

## ORDER

Before the Court are Plaintiff's Renewed Motion for Class Certification (Doc. 70 ("**Motion**")) and responsive filings (Docs. 85, 96, 178, 179). The Court held a hearing on the Motion (Doc. 180); this Order follows.

**I.    BACKGROUND**

In this case, named Plaintiff Anthony Sos brings suit on behalf of himself and all others similarly situated, claiming that State Farm's failure to pay sales tax and mandatory fees on leased-vehicle total loss claims constitutes a breach of contract. (Doc. 27, ¶¶ 48–51). Specifically, Plaintiff asserts that State Farm was obligated to pay Florida's 6 percent state sales tax plus applicable local sales tax, as well as title transfer fees. (*Id.* ¶¶ 15, 24).

On March 13, 2019, the Court granted summary judgment in Plaintiff's favor as to his breach of contract claim. (Doc. 159). The Court held that Plaintiff was entitled to damages in the amount of $2,239.12 in sales tax, which is 6 percent of the value of Plaintiff's total loss vehicle, plus applicable local tax, and an additional $75.25 in title transfer fees. (*Id.* at p. 13). On March 14, 2019, the Court entered judgment in Plaintiff's

favor (Doc. 160), and State Farm has since paid Plaintiff in accordance with the judgment (Doc. 175).

The State Farm insurance policies covering the putative class members' total loss claims (the "**Policies**") had identical essential terms. (Doc. 27, ¶ 13). The Policies provide that State Farm has the right to pay the insured the actual cash value ("**ACV**") of his vehicle. (*Id.* ¶¶ 27–28). Although undefined in the Policies, the Court found ACV includes 6 percent Florida sales tax and title transfer fees in the amount owed for the purchase of an owned vehicle. (Doc. 159, p. 10). However, from 2012 to 2017, it was State Farm's practice to not pay sales tax or mandatory title transfer fees on leased-vehicle total loss claims. (*Id.* at p. 3).

Accordingly, Plaintiff seeks to certify a Florida class of similarly-situated individuals to recover unpaid sales tax and title transfer fees associated with total loss claims. (Doc. 70, p. 5).[1] State Farm opposes, in large part arguing that class certification is unnecessary because it engaged in a remediation process to identify and pay Florida insureds sales taxes and fees as part of their total loss settlement for leased vehicles. (Docs. 85, 178). State Farm conducted its first remediation in 2017 after Plaintiff filed suit, sending payments to 2,555 insureds totaling $3,411,110.70. (Doc. 85, p. 8; Doc. 85-8). Upon further investigation in early 2018, State Farm remediated an additional 704 insureds for $906,727.71. (Doc. 85, p. 9; Doc. 85-8). In sum, State Farm has sent individual payments totaling $4,317,838 to 3,269 insureds.

---

[1] Plaintiff filed the Motion on March 1, 2018 (Doc. 70), seven months prior to the parties filing their motions for summary judgment (Docs. 110, 111). However, the Court deferred ruling on the issue of class certification until after ruling on summary judgment.

2

## II. STANDARD OF REVIEW

"Questions concerning class certification are left to the sound discretion of the district court." *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985). To certify a class action, the moving party must satisfy a number of prerequisites. First, the movant must demonstrate the named plaintiffs have standing and the class is clearly ascertainable. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Second, the putative class must meet all four requirements enumerated in Federal Rule of Civil Procedure 23(a). *Id.* Those four requirements are "numerosity, commonality, typicality, and adequacy of representation." *Id.* (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003)). Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). *Id.* Relevant to this case, Rule 23(b)(3) permits certification of a class where (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method for resolving these common questions. *Id.* A party moving for certification of a Rule 23(b)(3) class in this Court also faces the added hurdle of proposing a cost-effective means of providing notice to putative class members. M.D. Fla. R. 4.04(b).

Certifying a class involves "rigorous analysis of the [R]ule 23 prerequisites." *Vega*, 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). This inquiry is not a merits determination, though the Court "can and should consider the merits of the case [only] to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Id.* (quoting *Valley Drug*, 350 F.3d at 1188 n.15).

## III. DISCUSSION

Plaintiff seeks to certify the following Florida class[2] pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):[3]

> All insureds of State Farm Mutual Automobile Insurance Company and any subsidiary insurance companies with Florida automobile insurance policies that provide Auto Physical Damage coverage for a total loss insured leased vehicle, whose total loss claim payment did not include full state and local sales tax and tag title fees, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

(Doc. 70, p. 5).

As a threshold matter, the Court addresses State Farm's arguments that its remediation process obviates the need for class certification. State Farm maintains "there is nothing to certify because State Farm has compensated the affected insureds, including [Plaintiff] himself." (Doc. 85, p. 1).

The Court is unpersuaded by this argument. First, even assuming State Farm paid the appropriate amount of sales tax and fees to all putative class members, the members are still not made whole because State Farm did not pay them prejudgment interest or attorneys' fees in accordance with the fee-shifting statute. (*Id.* at p. 16). Second, the Court is skeptical of State Farm's contention that it remediated all potential claims. There was no judicial oversight over the remediation process, and as such, the Court has not

---

[2] Plaintiff initially sought to certify a multi-state class in addition to the proposed Florida class. (Doc. 70). However, Plaintiff withdrew his claim for certification of a class outside of Florida. (Doc. 100). Accordingly, only the proposed Florida class remains.

[3] Plaintiff also sought to certify the class pursuant to Rule 23(b)(2). (Doc. 70, p. 14). Rule 23(b)(2) provides that the party opposing certification must have acted or refused to act on grounds that apply generally to the class, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. Pro. 23(b)(2). The Court granted summary judgment in favor of State Farm as to Plaintiff's injunctive and declaratory relief claims, so there is no longer any basis for certification under Rule 23(b)(2). (Doc. 159, p. 13).

confirmed whether the entire proposed class received payment. In fact, State Farm itself realized its first remediation process was insufficient, later finding 704 more insureds who were due payment. (*Id.* at p. 9). Finally, it appears State Farm engaged in this unusual practice of remediating claims after the filing of the lawsuit to circumvent the normal class action mechanisms. (*Id.* at pp. 12–13). Therefore, the Court rejects State Farm's blanket argument that its remediation process obviates the need for class certification.

### A.     Ascertainability

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304; *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). To prove ascertainability, "the class definition [must] contain[] objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* (quoting *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (per curiam)).[4] The plaintiff must offer more than general assertions that class members can be identified through the defendant's records; "the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948. The Court "need not know the identity of each class

---

4   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

5

member before certification; ascertainability requires only that the [C]ourt be able to identify class members at some stage of the proceeding." *Id.* at 952 (Martin, J., concurring) (quoting Newberg on Class Actions § 3.3 (5th ed.)). In *Roth v. GEICO Gen. Ins. Co.*, the Southern District of Florida found a parallel class of insureds with leased vehicles covered by GEICO policies was ascertainable.[5]

Plaintiff contends that State Farm's remediation process provides enough evidence to satisfy the ascertainability requirement.[6] The Court agrees. In discussing its remediation, State Farm admitted that it "set aside the time of 21 claim handlers working full time over three weeks and several team managers, to conduct the necessary file-by-file review." (Doc. 85, p. 13). Through the process, State Farm identified 3,259 insureds who they sent individual payments totaling $4,317,838.00. (*Id.*). On this record, Plaintiff demonstrated that the proposed class is ascertainable.

### B. Numerosity

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The general rule is that more than forty members is sufficient to demonstrate that joinder is impracticable. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). While the party seeking certification need not identify the exact number of members in the proposed class, he cannot rest on "mere allegations

---

[5] No. 16-62942-Civ, Doc. 165, p. 7 n.1 (S.D. Fla. May 3, 2018) ("**Roth**"); *see also Roth*, Doc. 267, p. 3 ("[T]he Court finds that a simple back-and-forth process to vet the final list of class members and their damages amounts is not overly burdensome and will result in a final proposed judgment suitable for entry by the Court. The Court will refer this matter to the magistrate judge to supervise this process.").

[6] State Farm does not appear to contest this argument in its response. The response discusses ascertainability of the proposed nationwide class but fails to discuss the requirement in the context of the Florida class. (Doc. 85, p. 34).

of numerosity." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Rather, the movant must provide the court with sufficient proof to support a reasoned finding that the certified class would meet the numerosity requirement. *Vega*, 564 F.3d at 1267.

Through its remediation process, State Farm has admitted there are 3,269 insureds who were not properly paid sales tax and fees on their total-loss claims. (Doc. 85, p. 9). Therefore, there are at least 3,269 insureds who were not paid prejudgment interest. The numerosity requirement is easily met through this number alone. *See Marcus*, 687 F.3d at 595.

In addition, Plaintiff contends that economist Jerry Martin has identified an additional 1,045 insureds in Florida who received more than $0.00 in sales tax but less than 6 percent of the ACV on their total-loss vehicle. (Doc. 70, p. 10; Doc. 70-6 ("**Martin Declaration**")). State Farm maintains that the Court should not consider the Martin Declaration because it is an "untimely filed expert report." (Doc. 84; Doc. 85, p. 18 n.5). The Martin Declaration therefore adds additional, albeit unnecessary, support to the finding that numerosity is met.

### C. Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This prerequisite does not demand that all questions of law or fact be common among the class members, only that all members base their claims on a common contention that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). One common question of law or fact is sufficient so

long as answering the question is central to determining the validity of all of the class members' claims and will aid in the resolution of the case. *Id.* at 359.

Plaintiff maintains that all claims share a common question of law: "whether [State Farm] is required under their identical contracts with each putative class member to pay the full value of sales tax and tag and title fees as an element of the ACV of total-loss vehicles." (Doc. 70, p. 10). State Farm contends that commonality is not met because Plaintiff "failed to demonstrate that the [remediation] payments were inadequate to compensate the putative class or that any insureds rejected such payments in favor of class litigation." (Doc. 85, p. 17).

The Court finds that Plaintiff has satisfied commonality. The question of whether State Farm breached its contractual obligations to insureds by not paying full sales tax and fees is common to all putative class members and "capable of classwide resolution." *See Dukes*, 564 U.S. 338, 349–50. The remediation process does not change this finding because, at a minimum, class members were not paid prejudgment interest.

Furthermore, issues relevant only to damages are insufficient to demonstrate a lack of commonality or to otherwise defeat class certification. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 679 (S.D. Fla. 2015) ("Individual issues relating to damages do not defeat class certification."). Accordingly, the fact that some class members were paid between $0.00 and 6 percent sales tax does not destroy commonality. There remains the common question as to whether the class members were paid in full; slight variation in damages do not preclude certification if the awards are capable of quantification by generally-applicable formulas.

**D. Typicality**

Typicality demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This element of certification "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)), *cert. denied*, 528 U.S. 1159 (2000). The named plaintiffs' claims do not need to be identical to the claims of the absent class members, but they should "share the same essential characteristics" such that it would make sense for the plaintiffs to act as the class's representatives. *Haggart v. United States*, 89 Fed. Cl. 523, 534 (Fed. Cl. 2009) (quoting *Curry v. United States*, 81 Fed. Cl. 328, 335 (Fed. Cl. 2008)).

In support of typicality, Plaintiff contends that the class members were insured by identical Policies, the named Plaintiff and the class members suffered total losses, and State Farm allegedly breached the Polices in the same way—by failing to pay mandatory sales tax and other fees. (Doc. 70, pp. 11–12). State Farm disagrees, arguing that Plaintiff cannot satisfy typicality because he "intentionally forewent payment [and] is fully compensated [for his] claim." (Doc. 85, p. 18).

The named Plaintiff's claim is typical of the putative class. The putative class members' claims and named Plaintiff's claim involve the alleged breach of identical contractual provisions pursuant to State Farm's standard practice. (Doc. 70, pp. 11–12). State Farm's alleged breach was pursuant to a uniform practice, Plaintiff and each class member suffered the same harm in the same manner from identical Policies, and there is a uniform remedy—full payment of ACV. Because the putative class members' claims

9

are approximately identical and proving the named Plaintiff's claim would necessarily prove claims classwide, typicality is met. See *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984). ("[Typicality is met] if the claims or defenses of the class and the class representative[s] arise from the same event or pattern or practice and are based on the same legal theory."); *Haggart*, 89 Fed. Cl. at 534. The Court rejects State Farm's contention that because Plaintiff rejected a settlement offer, he is somehow "atypical."

### E.   Adequacy of Representation

The final Rule 23(a) element, adequacy of representation, requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation refers both to the named plaintiff who intends to represent the absent class members and to the lawyers who intend to serve as class counsel. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). Regarding the latter, class counsel will adequately represent the class if they are "qualified, experienced, and generally able to conduct the proposed litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). This requires the court to evaluate a number of factors, including counsel's knowledge and experience with class action litigation, counsel's knowledge and experience with the substantive law governing the class's claims, the resources available to counsel to pursue the class's claims, the quality of counsel's litigation efforts so far, and any other relevant factor speaking to counsel's ability to represent the class's legal interests. See 1 NEWBERG ON CLASS ACTIONS §§ 3:73–3:79 (5th ed. 2011).

As to the adequacy of the proposed class representative, a named plaintiff will be adequate as long as (1) he is qualified, and (2) he has no substantial conflict of interest

with the class. *Valley Drug*, 350 F.3d at 1189. A named plaintiff is qualified if he holds a basic understanding of the facts and legal theories underpinning the lawsuit and is willing to shoulder the burden of litigating on the class's behalf. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). At the certification stage, inquiry into a proposed representative's qualifications is not especially stringent. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (stating that certification should only be denied for inadequate representation where the plaintiff's lack of knowledge and involvement with the case essentially amounts to abdication of his role in the case), *cert. denied*, 485 U.S. 959 (1988). A named plaintiff will have a substantial conflict of interest which precludes him from acting as class representative when his interests are so antagonistic to the interests of the absent class members that he cannot fairly pursue the litigation on their behalf. *See Griffin*, 755 F.2d at 1533; *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016).

### 1. Adequacy of Named Plaintiff

State Farm argues that the Court's entry of judgment and State Farm's subsequent satisfaction of that judgment extinguish Plaintiff's standing to act as a class representative or otherwise makes him an inadequate class representative. (Doc. 178). The Court disagrees and finds that named Plaintiff has standing and is a proper class representative notwithstanding judgment.

To proceed with certification of this class, named Plaintiff must have standing. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). State Farm argues that the entry of judgment in Plaintiff's favor destroys his standing and moots the remaining class claims. (Doc. 178, p. 1). "[T]he named plaintiff who retains an 'economic

interest' in the class certification continues to have a personal stake in the action. [T]he Supreme Court [has] recognized that an economic interest could include the named plaintiff's continuing individual interest in shifting the costs of litigation to the entire class." *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1247 (11th Cir. 2003) (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 (1980)). The Court finds that named Plaintiff still has standing to pursue the claims because at a minimum, he has a claim for attorney's fees.

The Eleventh Circuit has not ruled on the exact issue of whether a judgment in favor of a named plaintiff moots the remaining class claims.[7] However, the Eleventh Circuit has stated that "[e]ven if individual claims are somehow deemed moot, the class claims remain live, and the named plaintiffs retain the ability to pursue them." *Stein v. Buccaneers L.P.*, 72 F.3d 698, 704 (11th Cir. 2014) (decided in the context of an unaccepted Rule 68 tender).

In the Rule 23 context, the named plaintiff has a "procedural . . . right to represent a class that is independent of his substantive claims." *Maxim Healthcare*, 347 F.3d at 1247 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980)). As such, the Eleventh Circuit has found that a named plaintiff has standing to appeal class certification denials even where the named plaintiff's claim was mooted by a settlement offer or summary judgment was entered against the named plaintiff. *Martinez-Mendoza v. Champion Intern. Corp.*, 340 F.3d 1200, 1216 (11th Cir. 2003) (remanding the issue of

---

[7] State Farm cites to *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134 (10th Cir. 2009), where the Tenth Circuit found that entry of judgment in favor of the named plaintiff mooted the case because the plaintiff no longer had any personal stake in the outcome of the litigation. The Court declines to follow the Tenth Circuit's reasoning.

class certification to the district court because "even after finding against plaintiff on the merits, the court should have determined whether the class action could be maintained, and whether the plaintiff could represent that class"); *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (holding that even though the named plaintiffs settled their claims, "they still have standing to appeal the denial of certification because the settlement agreement preserved their right to appeal the class certification decision"). These opinions belie State Farm's mootness argument.

Additionally, the Eleventh Circuit permits district courts to rule on certification after summary judgment. *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("[It is] within the court's discretion to consider the merits of the claims before their amenability to class certification."); *Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1289 (M.D. Ala. 1998) ("[T]he vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification."). It would be nonsensical to permit this if, by ruling on summary judgment, the issue of class certification was therefore rendered moot.

To the extent State Farm argues that one-way intervention precludes certification, the Court finds that State Farm waived the argument by filing for summary judgment prior to a ruling on class certification. (Doc. 110). State Farm could have moved to extend the deadline for filing dispositive motions if it was worried about one-way intervention. *See Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1382 (D.C. Cir. 1980) ("Rationale [for one-way intervention] disappears when the defendant himself moves for summary judgment before a decision on class certification.").

Finally, the Court finds that named Plaintiff has diligently pursued the claims. He has participated in depositions and attended mediations. (Doc. 96, pp. 10–12). The fact that he obtained the relief sought—and in doing so, helped the class—does not change this analysis. Furthermore, even after the judgment, named Plaintiff retains a claim for attorney's fees and costs that the class members have. The Court does not find that the judgment in favor of named Plaintiff somehow makes his interests antagonistic to the class's. His interests are still aligned with the class members. Named Plaintiff is an adequate representative of the proposed class.

### 2. Adequacy of Named Plaintiff's Counsel

State Farm also argues that Plaintiff's counsel are not adequate representatives of this class because they filed a charging lien and "the only recovery they now seek is attorneys' fees." (Doc. 85, p. 20). Specifically, State Farm maintains that the charging lien evidences a conflict of interest between counsel and the class. The Court disagrees. Charging liens put parties on notice that the attorneys intend to enforce the equitable right to costs and fees owed for legal services secured by the judgment or recovery in a lawsuit. *Sinclair v. Bascom*, 428 F.2d 1383, 1384 (Fla. 1983); *see also* Rules Regulating The Florida Bar, Rule 4.1 (stating that the rules concerning business transactions between client and lawyer do not prohibit a lawyer from "acquiring or asserting a lien granted by law to secure the lawyer's fees or expenses"). The purpose of a charging lien is to make sure a party does not pay out money and void the responsibility of attorney's fees.

The Court finds that the charging lien does not create a conflict of interest between counsel and the class, particularly given the unusual circumstance of the remediation. *See Sinclair*, 428 F.2d at 1384. By filing the charging lien, counsel put State Farm on

14

notice that if it paid off all the potential class members, it would nonetheless be bound to make payment to the attorneys. Notably, counsel filed the charging lien after State Farm indicated they would proceed with the remediation on its own volition and outside of court supervision. (Doc. 96, p. 13).

Furthermore, counsel is experienced in litigating class actions and has recently enjoyed success in class actions nearly identical to this case. (*See* Doc. 112-1). Accordingly, Plaintiff's counsel is qualified under Rule 23(g)(1) to represent the class.

### F.     Predominance and Superiority

In addition to demonstrating standing and satisfying Rule 23(a)'s four prerequisites, a plaintiff must show that the putative class he wishes to certify falls into at least one of Rule 23(b)'s three class types. Rule 23(b)(3) affords class status where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two elements are referred to as "predominance" and "superiority," respectively, and the Court discusses them in turn.

*1.     Predominance*

Predominance refers to the class's cohesion as a whole and examines whether adjudication of members' individual interests on a classwide basis would be appropriate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In determining predominance, the district court assesses the issues of law and fact likely to arise during the litigation and weighs whether issues common to the class predominate over issues which are unique to each individual class member. *Id.* at 622–23 & n.18. Ultimately,

predominance revolves around the quality, rather than the quantity, of the class members' shared interests. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 272 (4th Cir. 2010). Where the litigation is defined by individualized inquiries regarding the defendant's possible liability to each class member, predominance is lacking and certification should be denied. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). However, where the class members seek answers to the same questions and those answers would "have a direct impact on every class member's effort to establish liability," common issues predominate and certification should be granted. *Id.* (quoting *Vega*, 564 F.3d at 1270) (internal quotation marks and emphasis omitted).

At the hearing, State Farm expressed concern over the difficulty of finding insureds who were paid sales tax of more than $0.00 and less than 6 percent. (Unofficial Transcript, 25:10–29:10).[8] State Farm contends that determining who is in this group "necessarily requires an individualized review of each particular file . . . . [and] it is very hard to figure out who those individuals are." (*Id.* at 25:13–16, 27:13–14). State Farm overstates the potential difficulties this may cause. As demonstrated though its remediation, State Farm has data that indicates how much it paid to insureds and from that data, it can formulaically determine who was paid less than 6 percent in sales tax. (*Id.*). Furthermore, damage awards to class members who received partial payment can be mechanically set off by the amount paid. *See, e.g.*, *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("[I]ndividual damage calculations generally do not defeat a finding

---

[8] In its briefing, State Farm does not appear to contest predominance as to the proposed Florida class. (Doc. 85).

16

that common issues predominate."). The inquiry is the same for each class member; whether they were paid sales taxes and fees in full. Predominance is easily met.

### 2. Superiority

Superiority refers to whether the class action mechanism "would be the best or the fairest way" to resolve the parties' dispute when compared to available alternatives. *Ungar v. Dunkin' Donuts of Am., Inc.*, 68 F.R.D. 65, 148 (E.D. Pa. 1975), *rev'd on other grounds*, 531 F.2d 1211 (3d Cir. 1976), *cert. denied*, 429 U.S. 823 (1976). Determining superiority requires the court to evaluate the four factors enumerated by Rule 23(b)(3). *See Vega*, 564 F.3d at 1278. These four factors are: (1) the class members' interests in individually controlling the prosecution of their own claims, (2) the extent and nature of litigation already initiated by individual class members, (3) the desirability of concentrating litigation in a single forum, and (4) whether there will be difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

"The class[ ]action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Class actions mitigate against the unlikelihood that individuals will pursue small claims "by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor." *Amchem Prods.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). The case at bar exemplifies the class action purpose. Plaintiff seek to certify a class to vindicate between 3,000 and 4,000 claims for 6 percent sales tax, interest, and $75.25 in title transfer fees. (Doc. 70).

State Farm argues that remediation is a superior alternative for resolving the parties' dispute because the "remedial measures have fully compensated the putative class for all relief." (Doc. 85, p. 15). However, the Court has already rejected State Farm's contention that the remediation process "fully compensated" all class members. *See infra* Section III. There remain the claims for prejudgment interest and possibly claims from insureds who were paid sales tax of more than $0.00 and less than 6 percent.

Reference to the Rule 23(b)(3) factors erases all doubt that superiority is met: (1) the class members' interest in controlling the prosecution of these relatively small claims is low; (2) Plaintiff has invested substantial time and resources into litigating this action, and several other related class actions are ongoing or already completed; (3) combining the large number of small claims by Florida class members in this Court is highly desirable; and (4) there will not be substantial difficulties in litigating these claims together. *See* Fed. R. Civ. P. 23(b)(3).

Thus, the class action method provides a superior method for resolving the parties' dispute, as compared to remediation or other alternatives.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Renewed Motion for Class Certification (Doc. 70) is **GRANTED IN PART** and **DENIED IN PART**.

2. The Court hereby certifies a class (the "**Florida Class**") pursuant to Fed. R. Civ. P. 23(b)(3) consisting of the following:

   All insureds of State Farm Mutual Automobile Insurance Company and any subsidiary insurance companies with Florida automobile insurance policies that provide Auto Physical Damage coverage for a total loss insured leased vehicle, whose total loss claim payment

18

  did not include full state and local sales tax and tag title fees, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

3. Anthony Sos is hereby certified as representative of the Florida Class.

4. Christopher Lynch, Esq., Christopher J. Lynch, P.A., Edmund A. Normand, Esq., Normand Law PLLC, and Jacob Lawrence Phillips are hereby certified as Class Counsel pursuant to Rule 23(g)(1).

5. On or before May 13, 2019, the parties shall jointly file for approval by the Court a proposed notice to Florida Class members; alternatively, if the parties cannot agree on a proposed notice, Plaintiff shall file a proposed notice on or before May 13, 2019, and State Farm shall file any objections within three (3) days of the filing of Plaintiff's proposed notice.

6. The Motion is otherwise **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on May 2, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties