UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

ANTHONY SOS,

    Plaintiff,

v.

    CASE NO.: 6:17-cv-890-KRS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign insurance
company,

    Defendant.

## DEFENDANT STATE FARM'S MOTION TO DECERTIFY THE CLASS

State Farm's principal argument against class certification was that there was no basis for certifying a class when all possible class members had been paid through State Farm's voluntary remediation. In its order granting class certification, however, the Court expressed skepticism about the completeness of State Farm's remediation: "[T]he Court is skeptical of State Farm's contention that it remediated all potential claims. . . . The Court rejects State Farm's blanket argument that its remediation process obviates the need for class certification." Dkt. 181 at 4-5. The Court then certified a class consisting of insureds who were part of the remediation along with an additional group of over 1,000 insureds who Plaintiff argued had leased vehicle total loss claims and were paid more than zero but less than six percent in sales taxes.

The parties have now completed the notice process as ordered by the Court. Despite Plaintiff's argument that the remediation was incomplete and missed over 1,000 claims, the

1

results of the court-ordered notice process found only an additional *four* possible claims who could fit the class definition. This after-the-fact investigation demonstrates and confirms that the remediation was thorough, complete, and importantly, that the State Farm insureds whose claims were impacted by the programming error in the total loss settlement tool were fully compensated through the remediation. The remediation was completed almost two years ago and nullifies any possible basis for certification under Rule 23.

## I.     FACTUAL BACKGROUND

At the inception of this case, State Farm identified a programming error that resulted in sales taxes on Florida total loss claims involving leased vehicles to be zeroed out. In its opposition to class certification, [Dkt. 85], and its motion for summary judgment, [Dkt. 110 at 18-20], State Farm explained in detail the process that it used to identify insureds affected by this issue and to remediate these claims. To summarize, State Fam reviewed each and every claim that had both a leased endorsement (so the claim was identified as leased in State Farm's claims system) and that had zero taxes paid. State Farm compensated insureds for the sales tax and any unpaid fees on all vehicles where sales tax is typically owed.[1] As a result of those

---

[1] Nothing prevents State Farm from either contacting or compensating its own insureds. *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (courts will only limit communications with potential class members when the communication is "abusive in that it threatens the proper functioning of the litigation."). Moreover, the correspondence provided to State Farm's insureds: (1) identified this case and directed insureds to review the complaint and other filings; (2) informed insureds that the amount they were receiving was not reduced by payment to the attorneys or Sos; and (3) did not require class members to release any claims against State Farm. Dkt. 70-1. Thus, State Farm has met the requirements outlined by earlier cases regarding the non-coercive and forthright communications with putative class members. *Id.* at 564 (explaining that "[s]ettlement offers to putative class members must advise of the class action lawsuit."); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003) (finding that a defendant "has the right to communicate settlement offers directly

2

efforts, State Farm has sent individual payments totaling $4,317,838 to 3,259 Florida insureds. Dkt. 110-26 at 15-16. This was done over the course of two remediations, the second of which actually included a significant number of owned vehicles. *Id.* Every claim was reviewed by a claims handler, although some were not ultimately paid for various reasons, including that many claims had received sales tax and some were never settled as a total loss. *Id.* at Graff Decl. ¶ 14.

In opposing class certification, State Farm argued that the class should not be certified because no further relief was necessary since all insureds with leased vehicles that were totaled during the class period had been paid sales taxes through the remediation. Dkt. 85 at 12-18. As a result, class certification was inappropriate when there was no further benefit to the class. *Id.*

While the class certification motion was pending, the parties briefed motions for summary judgment in accordance with the Court's schedule. Dkt. 110, 111. The Court granted Plaintiff's individual motion for summary judgment and ordered that State Farm pay Plaintiff taxes and additional fees on his claim. Dkt. 159. State Farm paid the judgment on Plaintiff's claim. Dkt. 175.

The Court then set a class certification hearing, and the parties supplemented their briefing. Dkt. 178, 179. State Farm argued that the class could not be certified because Plaintiff's claim had been paid by judgment, so it was now moot. Dkt. 178. At the class certification hearing, the Court expressed skepticism that all insureds had been paid. Dkt. 182

---

to putative class members" as long as there is "no inherently coercive relationship" between the parties.).

3

at 61:16-19 ("How do I know that every single human being who leased a car, who received more than 0 but less than 6 percent, has been made whole?"). State Farm had prepared Doug Graff, the claims consultant who oversaw the remediation efforts, to testify about this process and answer any concerns the Court had, but the Court did not permit Mr. Graff to testify at the class certification hearing. Dkt. 182 at 11:9-15.

The Court granted Plaintiff's motion for class certification and certified a class as follows:

> All insureds of State Farm Automobile Insurance Company and any subsidiary insurance companies with Florida Automobile insurance policies that provide Auto Physical Damage coverage for a total loss insured leased vehicle, whose total loss claim payment did not include full state and local sales tax and title fees, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

Dkt. 181 at 18–19. In its order granting class certification, the Court again expressed skepticism about the completeness of State Farm's remediation: "[T]he Court is skeptical of State Farm's contention that it remediated all potential claims. . . . The Court rejects State Farm's blanket argument that its remediation process obviates the need for class certification." *Id.* at 4-5.

Plaintiff argued in his class certification briefing and at the hearing that he had identified additional insureds who were not part of, but should have been part of, the remediation. Dkt. 70 at 8; Dkt. 182 at 13:22-14:6. Plaintiff contended that he had identified a group of insureds who were paid more than zero, but less than six percent in sales taxes. Following the class certification order, Plaintiff proposed that an additional 841 insureds be included in the notice. This, presumably, was the group of insureds Plaintiff complained were not included in the remediation and which gave the Court skepticism about the scope of the

4

remediation. The Court ordered State Farm to identify those insureds to which it objected to receiving class notice and for Plaintiff to use his database to determine whether a vehicle was leased or owned. Dkt. 194. Thus, there were essentially two groups of insureds to whom notice was contemplated: (1) all insureds whose claims were reviewed during the remediation; and (2) the 841 "underpaid" claims.

Following the class certification order, on September 30, 2019, State Farm determined that the 841 insureds in this second group were likely owned vehicles, and thus outside the class definition. Decl. of Cassandra Johnson ¶ 3. This is because the computer programming error only zeroed out taxes on leased claims. So, if a claim was leased, then that claim would have been paid zero dollars if impacted by the business rule, not some amount between zero and six percent of the ACV.

Plaintiffs' counsel next ran the VIN numbers for these 841 claims through their database and told State Farm's counsel that 50 of the claims came back as leased. Johnson Decl. ¶ 4. To date, Plaintiffs' counsel has never provided State Farm with any concrete information about that process, and no declaration from any individual providing any details about their conclusions that 50 of these claims involved leased cars. Johnson Decl. ¶ 5.

State Farm nonetheless reviewed the claims files for each of the 50 claims that Plaintiff identified and determined that only three of the claims had a leaseholder on the policy. Declaration of Doug Graff ¶¶ 5-6. On November 13, 2019, Plaintiffs' counsel amended his prior representation and stated that there had been an error with how the claims were run in the database and only 18, not 50, were returned as leased. Johnson Decl. ¶ 6. In the meantime, State Farm pulled the title on every one of the originally-identified 50 claims and provided it

to Plaintiff. Graff Decl. ¶ 8; Johnson Decl. ¶ 7. The end-result was that only four of the 841 claims were leased. Graff Decl. ¶¶ 6, 9. On those claims, State Farm had paid varying amounts between 0 and 6% of the ACV, which appears to be simply an entry error during the original claims handling:[2]

| Claim Number | Date of Loss | ACV | Taxes Paid | Fees Paid |
|---|---|---|---|---|
| 59-8L16-528 | 4/19/2016 | $20,523.39 | $109.92 | $79.75 |
| 59-0446-3D0 | 12/20/2016 | $14,864 | $300.00 | $75.25 |
| 59-1419-Q28 | 9/11/2017 | $14,419 | $565.14 | $77.25 |
| 59-9D98-597 | 9/20/2016 | $24,947 | $1,084.12 | $60.75 |

Therefore, the class as certified by this Court actually consists of at most: (1) all insureds whose claims were reviewed during the remediation; and (2) four individual claims of leaseholders who were mistakenly paid some amount less than 6% of their sales tax.

**II.     ARGUMENT & ANALYSIS**

The Court should de-certify this class. Decertification is appropriate because (A) the four additional "underpaid" claims do not satisfy the Rule 23(a) requirements; (B) any doubt or concerns about the scope of the remediation have been alleviated, with any possible class member having already been paid; and (C) policy considerations favor decertifying the class.

A district court "retains the ability, and perhaps even a duty, to alter or amend a certification decision . . . to recognize the importance of new facts." *Shin v. Cobb Cty. Bd. of*

---

[2] Those four claims were given notice. Johnson Decl. ¶ 8.

*Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.").

This Court is also tasked with ensuring that class certification is appropriate at all stages of the case before judgment. *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 692 (S.D. Fla. 2013) ("This Court is well aware of its obligation to continually evaluate the appropriateness of class treatment and to adjust or decertify if the circumstances warrant."). When new evidence comes to light that demonstrates that class certification is an inappropriate vehicle to adjudicate the case, the Court may order the class de-certified. *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, 2015 WL 12859422, at *1 (M.D. Fla. Mar. 11, 2015) (the "ability to alter or amend a class certification order . . . is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered.").

> **A.  The Four Additional Claims Do Not Meet the Numerosity, Commonality, or Typicality Requirements of Rule 23(a).**

Plaintiff asserted in his class certification briefing that there could be over a thousand outstanding "underpaid" leased vehicle claims, but that claim is now demonstrably false. *See* Dkt. 70 at 8. Instead, the facts now clearly show that only four leased vehicle claims remain

outstanding, and that these claims are for varying amounts between 0 and 6%.[3] Plaintiff's own process to identify leased vehicles (which State Farm has never had the opportunity to see or verify) determined that only 18 of the original 840 "underpaid" claims were leased vehicles. State Farm reviewed all 18 of the files and determined that 4 of those claims noted payment to a leaseholder, or that title was in the leaseholder's name. Graff Decl. ¶¶ 6, 9, 11. For the remaining 14 claims, State Farm provided Plaintiff's counsel with the title of each vehicle on file. Graff Decl. ¶ 8; Johnson Decl. ¶ 7. In addition, a review of the payment of those claims shows that payment was made directly to the insured or a lienholder, not a leaseholder. Graff Decl. ¶ 11. For the four leased vehicles, State Farm paid taxes in varying amounts, and the lack of any consistency appears to be a simple computation error as the above chart shows. Supra at p. 6.

These claims cannot form the basis of a class because they fail to meet the Rule 23(a) requirements. First, the class of four claims is not "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "[W]hile there is no fixed numerosity rule, "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). This Court noted the same case law in its order certifying the class: "[t]he general rule

---

[3] State Farm notes that Plaintiff presented no evidence whatsoever in his class certification brief to demonstrate that these "underpaid" claims were leased vehicles, and thus could be considered part of the class. *See Flecha v. Medicredit, Inc., et. al.*, Case No. 18-50551 at 7 (5th Cir. Jan. 8, 2020) ("courts must certify class actions based on proof, not presumptions"). All Plaintiff presented at that time was the speculation that some of these claims could be leased vehicles, even though State Farm's records did not record them as leased. Nonetheless, the Court included these claims in the class that it certified.

8

is that more than forty members is sufficient to demonstrate that joinder is impracticable." Dkt. 181 at 6. The remaining four claims are not sufficiently numerous to constitute a class.

Second, there is no common question of fact as to these four claims. Unlike the remediated claims, these four claims were not zeroed out as a result of the programming errors. Therefore, there was no uniform policy that creates any kind of common question of fact between these claims. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law.") (internal citations omitted). Instead, the amounts paid on each of the four claims varies from $109 to over $1,000 and appears to be a computation error. As one might expect, out of the original 20,000 claims that State Farm handled in Florida during the class period, a handful of claims may unintentionally slip past State Farm's quality control processes and result in payments that deviate from State Farm's general practice of paying 6% Florida state sales tax on total losses (in addition to the appropriate adjustments for local taxes). This does not create a class-wide issue or a common question of fact.

Third, the claim of the class representative, Anthony Sos, is not typical of these four additional claims. Mr. Sos alleged that he was paid $0 in taxes, and the Court concluded that this was the result of a business rule which zeroed out the taxes on leased vehicle claims. Dkt. 159 at 3. State Farm maintains its position that its satisfaction of the judgment to Plaintiff makes him an inappropriate class representative as to the entire class. *See* Dkt. 178. However, specifically as to these four "underpaid" insureds, their claims were not zeroed out by the business rule because some amount of taxes were paid on these claims. In fact, these claims

9

were never marked in State Farm's system as leased vehicles, so the business rule did not apply to them. Graff Decl. ¶ 7. Thus, they were "underpaid" for reasons entirely separate than Plaintiff's claim where the business rule caused taxes to be zeroed out entirely.

For these reasons, class certification as to only four claims is inappropriate under Rule 23(a). This fact alone is sufficient for the Court to decertify the class. And, for the same reasons, certification is also inappropriate under Rule 23(b)(3) because there is no uniform policy such that common questions of law and fact could predominate over individual inquiries. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) ("Rule 23(b)(3) [requires] that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."). Therefore, the Court should decertify the class and these four individuals may pursue individual claims, should they wish to do so.

### B. State Farm Has Paid All Additional Class Members Potentially Owed, So these Claims Cannot Form the Basis of a Class.

In opposing class certification, State Farm outlined the extensive steps that it took to conduct a file-by-file review of thousands of claims in order to compensate insureds whose claims had been zeroed out by the business rule. Dkt. 85. In sum, State Farm compensated 3,259 insureds $4,317,838. Dkt. 110-26 at 15-16. This represents all the leased vehicles with a Florida total loss, where sales tax was incurred in the purchase of the insured vehicle.[4] These

---

[4] Some claims were not compensated because, for example, the claims were not Florida total losses or the insured vehicle was a tax-exempt vehicle. Dkt. 110 at Graff Decl. ¶ 14.

individuals no longer have standing to pursue a claim, nor do they have any claim in this case because they were fully compensated everything Plaintiff's counsel seeks on their behalf. *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019) ("When an insurance company has 'paid all benefits in full . . . [t]here is no case or controversy[.]'"). Courts routinely find that "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also Dykes v. Dudek*, No. 4:11CV116/RS-WCS, 2011 WL 4904407, at *2 (N.D. Fla. Oct. 14, 2011) ("Standing is a core component of this Article III requirement that must be established by litigants before a court may exercise jurisdiction over their claims. The rules allowing the creation of class actions cannot be used to circumvent this most fundamental requirement"); *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *3 (S.D. Fla. Sept. 1, 2006) ("the proposed class description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf."). Here, the class members no longer have standing to pursue their claims, so the class should be decertified.

Beyond justiciability issues, a class action is not the proper procedural mechanism to remedy a non-existent harm. "No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016). Courts routinely reject class certification and class settlements when the relief obtained is unfounded and instead serves only to benefit the class counsel. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (warning that courts should pay "special attention"

11

"when the class receives no monetary distribution but class counsel are amply rewarded"). And, any settlement that could arise from such a putative class would necessarily contain "unreasonably excessive attorneys' fees." *Ward v. Parks Elec. Co.*, No. 608-CV1111-ORL-19KRS, 2009 WL 1684455, at *8 (M.D. Fla. June 16, 2009).

As State Farm cited in its opposition to class certification, the Seventh Circuit's *Aqua Dots* decision is directly on point. *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011). There, after discovering a safety issue with a toy, the manufacturer stopped selling the toys, issued a recall for the toys that had been purchased, and honored money back requests, while retailers gave refunds. *Id*. at 750. The plaintiffs were purchasers of the toy, whose children were not harmed, and who neither sought a refund nor challenged the recall program. *Id*. The Court concluded that under Rule 23(a)(4), class certification was inappropriate because the class representatives and attorneys sought meaningless relief, reasoning that a "representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." *Id*. at 752. As in *Aqua Dots*, State Farm's remedial measures have fully compensated the putative class for all relief sought prior to Sos's motion for class certification, and State Farm has demonstrated that there are only four additional claims that were paid less than 6%.

In sum, the Court previously disregarded the remediation because it did not believe the remediation was complete. But whether before the class certification order or after, and with the full benefit of discovery, Plaintiff still has not identified a single State Farm insured who

was not fully compensated through the remediation. There should not be any doubt or concern about the scope of the remediation.[5]

### C. The Fact That State Farm Did Not Pay Pre-Judgment Interest or Attorneys' Fees During the Remediation is Not a Basis to Certify a Class.

In its order, the Court certified the remediated class because, it reasoned, "even assuming State Farm paid the appropriate amount of sales tax and fees to all putative class members, the members are still not made whole because State Farm did not pay them prejudgment interest, or attorneys' fees in accordance with the fee-shifting statute." Dkt. 181 at 4. Neither provides a basis for certifying a class.

#### 1. *There is no claim for pre-judgment interest for any individual insured and that is not a basis to certify the class.*

Individuals who are compensated prior to entry of a judgment are not entitled to prejudgment interest. A trial court only assesses prejudgment interest after a verdict liquidating damages has been rendered. *Albanese Popkin Hughes Cove, Inc. v. Scharlin*, 141 So. 3d 743, 746-47 (Fla. Dist. Ct. App. 2014). Liquidated claims are "sums which are certain, but which the defendant refuses to surrender." *Air Ambulance Prof'ls, Inc. v. Thin Air*, 809 So. 2d 28, 31 (Fla. Dist. Ct. App. 2002). Here, State Farm compensated these insureds before any judgment was entered (and none has been as to the class to date). Thus, State Farm has

---

[5] Plaintiff previously accused State Farm of failing to make a full accounting of the remediated claims. However, State Farm has provided Plaintiff's counsel with a list of all claims paid in the remediation, the amount paid, and when the check was cashed. Johnson Decl. ¶ 2. State Farm's witnesses also testified to the efforts they undertook to identify insureds' addresses if a check was returned uncashed. Dkt. 110 at Ex. D, Graff Dep. 97:14-25; 98:1-25. Ultimately, if no current address could be found, then the check followed State Farm's normal processes for remitting unclaimed funds to the State. *Id.*

13

not refused to surrender any amount, and there is no verdict, so there can be no claim for prejudgment interest.

For example, if State Farm had compensated these insureds in April 2017, before this case had been filed, Plaintiffs' counsel could not bring a class action solely for prejudgment interest on the claims that State Farm voluntarily paid. Even though payment was made after the suit had been filed, the putative class members were not represented by counsel and did not bring the lawsuit themselves. There is no meaningful difference as to the remediated class members between payment prior to another insured's lawsuit and payment after (but before class certification) because their legal rights are not represented until after class certification. *See e.g. Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2008 WL 113667, at *2 (S.D. Fla. Jan. 8, 2008) (finding that a summary judgment ruling pre-certification can only bind the named plaintiffs because "they were the only plaintiffs in the case at that point in time."); *Bailey v. Cumberland Cas. & Sur. Co.*, 180 F. App'x 862, 865 (11th Cir. 2006) (noting that a class that was never certified does not achieve "separate legal status.").

State Farm was not under any obligation to include pre-judgment interest in delayed payments to its insureds. Further, it would be inappropriate to maintain a class that seeks no further relief in the underlying claim, solely for prejudgment interest.

      2.    *The Court should not certify a class solely to allow Plaintiffs' counsel to recover attorney's fees.*

With the remediation complete and no independent claim for pre-judgment interest, the only remaining basis for maintaining this class would be for the recovery of attorneys' fees. This, however, is the same high transaction costs that the Seventh Circuit rejected as inappropriate for class certification. *Aqua Dots*, 654 F.3d at 750; *see also Doster Lighting,*

14

*Inc. v. E-Conolight, LLC*, No. 12-C-0023, 2015 WL 3776491, at *7 (E.D. Wis. June 17, 2015) (finding that plaintiff and counsel were not adequate representatives because "the plaintiffs here could have had refunds or replacement—and may still be able to have them today"). And, as with prejudgment interest, a State Farm insured does not have a right to attorneys' fees when payment was made prior to class certification. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[An] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."). Thus, the class members do not maintain a certifiable interest in being compensated their attorneys' fees (which they never incurred and Plaintiffs' counsel has no right to).

To the extent that the Court intends to maintain the certified class solely to compensate Plaintiff's attorney for fees on behalf of a class, even when the class members themselves do not have a right to attorneys' fees, this would be inappropriate. There is no statutory or common law basis to award attorneys' fees to an attorney who did not represent the insured. At the time of the remediation, Plaintiff's counsel did not represent any of the State Farm insureds other than Anthony Sos. *Pendlebury*, 2008 WL 113667, at *2. Thus, Plaintiff's statutory claim for attorneys' fees applies only to Mr. Sos's claim and any fees incurred directly related to resolving his claim.

In fact, Section 627.428 only provides for attorneys' fees upon rendition of a judgment or decree by a Court. Fla. Stat. § 627.428. But, for the remediated claims, there is no further breach of contract claim because the insureds have been compensated in full. *See Travelers of Fla. v. Stormont*, 43 So.3d 941, 944 (Fla. Dist. Ct. App. 2010) ("Where suit is filed without any necessity to do so, attorneys' fees under section 627.428 will be denied."). Absent a basis to enter a judgment as to the remediated claims, there can be no basis for attorneys' fees on the remediated claims.

> 3. *Continuing to certify the class in this case promotes a policy that encourages class litigation solely for the sake of litigation.*

There are no policy concerns in decertifying the class when there is no benefit to the class. The Court has expressed concern about the policy implications of permitting a remediation pre-certification, which could leave the Plaintiff's attorneys without a fee award. Tr. 23:10-14 ("That doesn't seem to be good policy because then every class action would be defeated by simply saying, 'You know what? You're right. We're going to pay. We could have done it before. We didn't. We were sued.'"); Tr. 24:1-3 ("You can avoid paying attorneys' fees. That doesn't seem to be consistent with the principles behind class actions.").

Respectfully, the focus in a class action, or any litigation, should not be the recovery of attorneys' fees. And importantly, these concerns raised by the Court do not play a part in assessing whether Plaintiff has adequately carried the burden of demonstrating that a viable class exists on whose behalf he seeks to advocate. *See Flecha v. Medicredit, Inc., et. al.*, Case No. 18-50551 at 10 (5th Cir. Jan. 8, 2020) ("the Supreme Court has made clear that fear of underenforcement is no justification for class certification.") (citing *Am. Exp. Co. v. Italian*

*Colors Rest.*, 570 U.S. 228, 234 (2013). Here, there is not a viable class for the reasons outlined above.

Additionally, State Farm's actions accomplished all of the goals set forth by Rule 23, so there is no inconsistency in the policy objectives. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). Here, that policy concern has already been alleviated—individuals already obtained relief, fulfilling the purpose of Rule 23, and Plaintiff's counsel can seek statutory attorneys' fees for litigating his individual claim in accordance with Florida law.[6] The remediation simply provided a quick way to accomplish these goals, and State Farm had hoped to provide this compensation to its insureds without the need for burdensome and expensive litigation.

### III. CONCLUSION

For the reasons set forth above, State Farm requests that this Court decertify the class.

---

[6] Even if this case had settled as a common fund case, the Court would be tasked with evaluating counsel's fee request to ensure that it is proportional to the time, effort, and risk involved. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006). Here, this would be minimal because State Farm addressed the error at the outset of the case. And the result of over two years of litigation was locating an additional four claims who could be part of the class.

DATE: January 10, 2020

        Respectfully submitted,

        */s/ Daniel F. Diffley*
        Daniel F. Diffley (*pro hac vice*)
        Cassandra K. Johnson (*pro hac vice*)
        ALSTON & BIRD LLP
        1201 W. Peachtree Street
        Atlanta, Georgia 30309
        Tel.: 404-881-7000
        Fax: 404-881-7777

        Johanna W. Clark
        Florida Bar No. 196400
        CARLTON FIELDS, P.A.
        450 S. Orange Avenue, Suite 500
        Orlando, Florida 32801
        Tel.: 407-849-0300
        Fax: 407-648-9099
        ***Attorneys for Defendant, State Farm Mutual Automobile Insurance Company***

## RULE 3.01(g) CERTIFICATE OF CONFERRAL

Pursuant to Rule 3.01(g), Local Rules for the Middle District of Florida, I hereby certify that on January 10, 2019, counsel for State Farm conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this Motion and that Plaintiff did not agreed to the relief requested herein.

*/s/ Cassandra K. Johnson*
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of January, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send a notice of electronic filing to all counsel or record.

*/s/ Daniel F. Diffley*
*Attorney for Defendant*
