IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY SOS,                                        CASE NO.: 6:17-cv-890-orl-18KRS

      Plaintiff,                                <u>CLASS ACTION</u>

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign insurance
company,

      Defendant.

_____/

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY AND MEASURE OF DAMAGES FOR CLASS CLAIMS</u>

Plaintiff Anthony Sos, on behalf of the certified class and pursuant to Court Order (Doc. 200), hereby files this Motion for Summary Judgment on Class Claims, and requests the Court appoint a Special Master or Magistrate to determine individual damages calculations for purposes of facilitating entry of a Final Judgment, which will also address any motion for taxable and non-taxable costs and attorneys' fees, and further states in support the following:

## I.      <u>INTRODUCTION</u>

This case concerns Plaintiff's allegations, individually and on behalf of similarly-situated insureds, that Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") breached materially-identical policies by failing to include the full amount of sales tax and mandatory transfer fees to its leased-vehicle insureds who suffered a total-loss of their insured vehicles. Doc. 110 at pgs. 1-2. On March 13, 2019, this Court granted summary judgment in Plaintiff's favor on

his individual claim for sales tax and title transfer fees of $75.25. Doc. 159 (Order on Summary Judgment). Subsequently, on May 2, 2019, this Court certified a class of Florida leased-vehicle insureds who, during the relevant time period, did not receive full sales tax and transfer fees as part of their total-loss payment. Doc. 181 (Order on Class Certification). The Parties subsequently provided individual Notice to members of the certified Class, which totaled 3,263 members, and the deadline to request exclusion from the Class has now passed. Doc. 196 (deadline of December 15, 2019, to request exclusion). Thus, the time is now ripe to consider summary judgment as to the members of the certified Class who have not requested exclusion, and are therefore bound by this Court's determinations and rulings.

As set forth below, this Court's finding that the failure to include full sales tax and title transfer fees of $75.25 in making payment for the actual cash value ("ACV") of a total-loss vehicle constitutes a material breach of contract is the law of the case and is equally applicable to the certified class members. Every Class Member was insured under materially-identical Policy language and were not paid the full amount of sales tax and title transfer fees owed as part of the ACV of their total-loss vehicles. Thus, they stand in identical position as Mr. Sos, and are equally entitled to summary judgment on their claims, and, like Mr. Sos, are entitled to sales tax (calculated as 6% of the adjusted vehicle value plus applicable local surtax), title transfer fees of $75.25, prejudgment interest, and attorneys' fees and costs under Fla. Stat. § 627.428.

Following the filing of this putative Class Action, presumably upon recognizing the claims are meritorious and ostensibly to correct a "business rule" error that resulted in the failure to fully pay the ACV of total-loss leased vehicles, Defendant purported to provide "remediation" of the underpayments to the putative class. However, it is not disputed that even this supposed "remediation" did not, at minimum, include payment of prejudgment interest and therefore was

insufficient. Judgment is necessary, at minimum, to determine prejudgment interest and attorneys' fees, along with any other underpayment owed to Class Members. Said another way, at most the supposed "remediation" operates only as a set-off to damages, but it certainly does not preclude summary judgment. Following summary judgment, Plaintiff and the Class propose that the Court appoint a Magistrate or a Special Master to oversee calculation of individual damages awards to Class Members, which will account for previous payments in the original claim payment and in the remediation process.

For these reasons, and as fully set forth below, Class Members are entitled to summary judgment on liability and the measure of damages, including prejudgment interest, and, along with Plaintiff, are entitled to attorneys' fees and costs in an amount to be subsequently determined by the Court, and, following an Order on summary judgment, Plaintiff and the Class respectfully propose the Court appoint a Magistrate or Special Master to oversee calculation of individual damages awards, after which a Final Judgment can be fashioned and entered.

## II.     STATEMENT OF MATERIAL FACTS

1.  The only form used during the relevant time-period was Form 9810A or, if there was any other form, the relevant language is identical. Ex. A (Platt 30(b)(6) Dep.) 168:8-169:20; Ex. B (Form 9810A) (the "Policy").

2.  The relevant section of the policy is Section IV, entitled "PHYSICAL DAMAGES COVERAGE". Ex. B at 30.

3.  The policy defines loss as, in relevant part, "direct or accidental damage to your car." *Id*. at 5.

4.  "Your car" is defined as the car or vehicle listed on the declarations page. *Id*. at 6.

5.  In the event of a loss, the policy provides that the limit of Defendant's liability for the loss is either the ACV or the cost to repair. *Id.* at 33.

6.  Defendant declares vehicles to be a total loss when the cost to repair exceeds a threshold percentage of the value of the vehicle. Ex. A (Platt Dep.) at 46:14-25. Thus, every total loss vehicle – which is definitionally a declaration that Defendant is not paying the cost to repair – is an instance where Defendant is electing (and thus promising) to pay ACV. Policy at 33.

7.  There is no policy language excluding sales tax or title transfer fees from ACV payments. Policy at 34-35 (list of exclusions for property damage coverage); Ex. C (Erickson Rep.) at pg. 6.

8.  State Farm does not condition ACV payment on actual replacement. Doc. 115 (Stipulation of Material Facts) at pg. 1, ¶ 3.

9.  The Policy defines owned, financed, and leased vehicles as owned vehicles – i.e., "owned by" means any vehicle owned by, registered by, or leased to the insured. Policy at 5.

10. Defendant does not distinguish between leased and non-leased vehicles in determining premiums, nor does Defendant distinguish between leased and non-leased vehicles in its ratemaking. Ex. C (Erickson Rep.) at pgs. 11-13.

11. State Farm uses a third-party vendor, AutoSource, to determine market value amount to purchase a vehicle. Ex. D (Sample AutoSource Valuation document, asserting report evaluates vehicles for sale); Ex. C (Platt Dep.)15:5-16, 44:10-18, 123:19-124:7 (sales tax entered based on value of vehicle), 47:12-16 (settlement based on AutoSource report); Ex. E (Sos Market Valuation Report, including comparable vehicles for sale and listing purchase price, not lease price). Thus, Defendant paid actual cash value on Plaintiff's

4

leased vehicle total loss claim based on what it would cost to purchase a new vehicle, not what it would cost to lease a new vehicle. Id. See Ex. F (Graff Dep.) at 40:24-41:3 (State Farm insures the cost to purchase).

12. To purchase or lease a vehicle, Florida law requires sales taxes to be applied to the payments for the auto, regardless of whether it is a vehicle purchase or lease. Fla. Stat. § 212.05; Ex. G at 5-6 (McCathren Rep.). Every vehicle purchased or leased in the state of Florida is taxed for each and every payment for the auto at the same 6% state sales tax rate plus local taxes. Id.; Fla. Stat. § 212.05.

13. Moreover, any trade-in value on an owned, financed, or leased vehicle also is taxed. Ex. G at 5-6.

14. To replace any Florida vehicle, it must have valid title transferred to the vehicle driver's name. F.S. § 319.34.

15. Defendant's policy provides that title transfer fees should be included in ACV payments to leased insureds. Ex. H (Hager Dep.) 79:18-22; Ex. F (Graff Dep.) 33:17-23, 12:22-13:4; Ex. A (Platt Dep.) 218:1-15.

16. Under the Policy language outlined above, State Farm includes full sales tax amounts as owed and payable ACV payments to insureds who own or finance their vehicle. Ex. A (Platt Dep.) at 41:4-13, 107:16-25.

17. State Farm's claim procedure is to use a proprietary Total Loss Settlement Tool to calculate sales tax and mandatory fees, in addition to ACV payments for total-loss vehicles. Ex. A (Platt Dep.) at 43:1-20; Ex. I (State Farm Document).

18. From before 2012 until July 2017 (following the filing of this lawsuit), State Farm's claims procedure applied a computer programing rule to the Total Loss Settlement Tool

that zeroed out sales tax on total loss leased vehicles. Ex. A (Platt Dep.) at 108:5-14, 175:1-11; Ex. F (Graff Dep.) at 10:4-22; Ex. J (Butler Dep.) at 20:1-11. As a result, State Farm's practice prior to the filing of this lawsuit was to refuse to pay any sales tax on a Florida leased vehicle total loss claim. Id.

19. Defendant admits its policies and procedures and policy forms are such that leased and owned vehicles are considered and treated the same. Ex. F (Graff Dep.) 39:18-40:14, 51:4-52:2; Ex. A (Platt Dep.) 137:3-20, 175:1-11, 57:24-58:9, 186:6-14, 187:7-19.

20. In exchange for that identical coverage, State Farm does not condition premiums on whether the vehicle is owned, financed, or leased. Ex. C (Erickson Report) at 11-13; Ex. F 40:14-41:15.

21. Defendant admits that it owes and should pay sales tax and mandatory fees on leased vehicle total loss claims in the same manner as it treats owned vehicle total loss claims. Ex. F (Graff Dep.) 12:22-13:2, 15:2-16:7; Ex. A (Platt Dep.) 55:7-13, 61:8-62:3, 175:1-11, 217:13-24; Ex. H (Hager Dep.) 62:17-24, 64:19-65:5.

22. Defendant's policy requires sales tax to be included in total-loss payments in the amount of at least 6% (not including local sales surtax). Fla. Stat. § 212.06; Ex. A 79:11-25; Ex. F 135:1-24.

23. After and because this lawsuit was initiated, Defendant remediated partial payment to approximately 2600 class members. Ex. K (Diffley Letter).

24. Plaintiff analyzed the data, and discovered numerous insureds who were not paid sales tax as part of their total-loss claim and yet were not remediated. Ex. L (First Martin Decl.) at ¶ 11.

6

25. Upon informing this Court that Defendant neglected to "remediate" all class members who had not been paid sales tax, Defendant then issued a second partial "remediation" to 704 insureds, which also did not include prejudgment interest. Ex. M (Third Martin Decl.); Ex. N (Butler Decl.).

26. After the supposedly-complete first remediation, and after the supposedly-complete second remediation, Plaintiff and Defendant identified an additional four class members who were underpaid sales tax and were not included in either "remediation." Doc. 202.

27. The amounts "remediated" to class members did not include, at minimum, prejudgment interest. Ex. P (Resp. to Interrog. No. 13).

28. Just as consumers sometimes replace owned vehicles with leased vehicles, they also sometimes replace leased vehicles with owned vehicles – because total losses terminate lease agreements, there is no requirement or financial incentive to replace leased vehicles with leased vehicles. Ex. G at 5-6.

### III.   LEGAL STANDARDS

Summary judgment is proper where the movant shows show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion. *See Booth v. Pasco County*, 829 F. Supp. 2d 1180, 1188 (M.D. Fla. 2011).

The standard on interpretation of insurance contracts strongly favors the insured and finding of coverage. In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. *See Altman Contractors, Inc. v. Crum & Forster*

*Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016). But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy ambiguities "liberally in favor of the insurer and strictly against the insured who prepared the policy." *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565 (Fla. 2nd DCA 1984).

## IV.     MEMORANDUM IN SUPPORT

### a.    This Court's Order on Plaintiff's Individual Claim is the Law of the Case and Applies to all Class Members' Claims

As an initial point, under Florida law, State Farm's "remediation" and payment of insurance benefits in the form of sales tax and title transfer fees to the class members, subsequent to suit, constitutes a confession of judgment. Thus, irrespective of the issue of whether State Farm was legally obligated to pay these benefits, the class members are entitled to prejudgment interest, attorneys' fees, and costs without the necessity of the court entering judgment for the sales tax and title transfer fee benefits. *See generally*, *Travelers of Fla. v. Stormont*, 43 So.3d 941, 944 (Fla. 3d DCA 2010); *State Farm Fla. Ins. Co. v. Lorenzo*, 969 So.2d 393, 397-98 (Fla. 5th DCA 2007); *see also Wollard v. Lloyd's & Cos. Of Lloyds*, 439 So.2d 217, 218-19 (Fla. 1983) ("[w]hen the insurance company has agreed to settle a disputed case, it has . . . declined to defend its position in the pending suit. Thus the payment of the claim is . . . the functional equivalent of a confession of judgment . . .").

As to the merits of the claim, it is important to note this Court granted summary judgment to Mr. Sos on his individual claim. Doc. 159. In so doing, this Court answered the question as to whether State Farm is obligated to include full sales tax at the applicable rate (6% plus any local surtax) and title transfer fees of $75.25 in making ACV payment to total-loss leased insureds:

> "The Policy does not distinguish between the actual cash value for owned or leased vehicles and provides no notice to insureds that their leased vehicles will be valued differently based on whether they were leased. (Doc. 112-2, p. 30–33). Rather, the Policy defines both owned and leased vehicles as "owned" vehicles. (Id. at p. 5). Furthermore, nothing in the Policy requires an insured to replace his total loss leased vehicle with another leased vehicle, or even to replace the vehicle at all. (Id.). As such, the Court finds that the Policy requires State Farm to treat its actual cash value payments for total loss. claims on leased vehicles the same as it would for total loss claims on owned vehicles, i.e., by paying sales tax and title transfer fees in the amount owed for the purchase of an owned vehicle.4 See Roth, 2017 WL 5640740, at *3 (holding that leased-vehicle total loss claims should include title transfer fees in the amount owed for owned vehicles). Therefore, State Farm's failure to pay insureds with leased-vehicle total loss claims sales tax in the amount of 6 percent of the value of the vehicle plus applicable local taxes and title transfer fees in the amount of $75.25 constitutes a material breach of contract."

-*Id*. at pgs. 10-11.

As this Court previously noted, such legal holding on that question is the law of the case:

> Because in summary judgment…what I found was State Farm's failure to pay insureds with leased vehicles total loss claim sales tax in the amount of 6 percent of the value of the vehicle plus applicable local taxes and title transfer fees constitutes a material breach of the contract…[the court concluded that] that there is a contractual obligation to pay this amount, and State Farm breached it as for this plaintiff; therefore, everyone else who enjoys the same contract falls within that same analysis?... [**T**]**hat's the law of the case at the moment**." -Ex. Q (Transcript on Class Certification) at 27-29.

The "law of the case" doctrine noted by this Court suggests that this Court's legal and factual conclusions are binding on the Parties in this litigation. *See United States v. Escobar-*

*Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case."). The purpose of the "law of the case" doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 788 (1981).[1]

Thus, this Court's factual findings (pgs. 1-3) and legal conclusions that, *inter alia*, (1) in Florida, ACV, unless otherwise defined, is synonymous with "market value" and means (or is measured as) "replacement cost less depreciation", (2) ACV in Defendant's Policies therefore equates to "replacement costs less depreciation", (3) sales tax and title transfer fees are mandatory, unavoidable replacement costs, (4) Defendant's Policy "does not distinguish between the [ACV] for owned or leased vehicles and provides no notice to insureds that their leased vehicles will be valued differently based on whether they were leased", and (5) based on the Policy language, then, "State Farm's failure to pay insureds with leased-vehicle total loss claims sales tax in the amount of 6 percent of the value of the vehicle plus applicable local taxes and title transfer fees in the amount of $75.25 constitutes a material breach of contract" are all the law of the case and apply equally here. Doc. 159 at pgs. 4-10.[2]

Thus, the only real questions for purposes of this Motion are: (1) does the same Policy language – promising payment of ACV in the event of a total loss irrespective of replacement, if any, and irrespective of whether the vehicle was leased, owned, or financed – apply to Class

---

[1] Plaintiff acknowledges that the law-of-the-case doctrine is discretionary where a court considers its own prejudgment rulings in the same case. *See Barbakow v. USAIR, Inc.*, 950 F. Supp. 1145, 1146 (S.D. Fla. 1996). But, as this Court noted at the hearing – in asserting that its summary judgment Order was the law of the case – none of the factors that might justify reconsideration are present here.

[2] Moreover, as set forth below, this Court's Order was well-reasoned and properly applied governing Florida and Eleventh Circuit law.

Members and (2) did State Farm pay less than "6% of the value of the vehicle plus applicable local taxes and title transfer fees in the amount of $75.25"? If so, then Class Members are also entitled to summary judgment on their breach of contract claim.

### b. Defendant Breached Its Contract with Class Members

In Florida, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *See Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992). Class Members were all insured under ACV insurance policies, which are intended to predictably guarantee payment of an agreed-upon value upon a total loss (which value might be lower, higher, or the same as those costs, if any, an insured paid on the original vehicle or will pay on its replacement). In short, State Farm had a duty to pay sales tax and title fees as components of ACV to members of the class, it breached that duty by failing to make such payments, and class members were damaged by State Farm's failure to pay the monies owed despite having paid premiums to receive such coverage.

### i. *Class Members Are Insured Under the Same Material Policy Language and Were Not Paid the Amount Owed Under the Policy*

Class members, along with Mr. Sos, were all insured under materially-identical form policies, which promised, in the event of a total-loss, to pay the ACV of the insured vehicle. SoF at ¶¶ 1-6. As this Court explained, in Florida, ACV means "market value" measured as replacement costs less depreciation. Doc. 159 at 8 ("the Court finds that actual cash value under the Policy means replacement cost minus depreciation.") (citing *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) ("Focusing on the cost approach to fair market value (actual cash value), it can readily be observed that an allowance for actual depreciation is mandated as the cost approach by definition is the consideration of cost minus depreciation."); *Trinidad v. Fla.*

*Peninsula Ins. Co.*, 121 So. 3d 433, 443 (Fla. 2013) ("As we have explained, actual cash value is defined as replacement cost minus depreciation.") (other citations omitted)).[3]

ACV includes costs reasonably necessary to replace the damaged property, which includes sales tax and title transfer fees. Order at 9-10 ("The Court finds that sales tax and fees are costs an insurer is reasonably likely to incur in replacing his leased vehicle, and therefore are components of actual cash value under the Policy.") (*citing Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("easily conclud[ing]" that sales tax is reasonably likely to be incurred in replacing a motor home and thus a component of ACV); *Roth v. Geico Gen. Ins. Co.*, No. 16-62942, 2017 WL 5640740, at *3 (S.D. Fla. Jan. 24, 2017) (relying on *Mills* in holding that ACV necessarily includes sales tax and title transfer fees); *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1295 (M.D. Fla. 2015) ("Sales tax is an unavoidable component of the cost to buy a replacement vehicle.") (other citations omitted)). This is because sales tax and title transfer fees are imposed on *every* vehicle transaction, whether purchased, leased, or financed. SoF at ¶¶ 12-14; Fla. Stat. § 212.05; Fla. Stat. § 319.21-22, 319.34.

Because Class Members were all insured under materially-identical policies promising to pay the ACV of insured vehicles in the event of a total-loss, and because sales tax and title-transfer fees are indisputably components of ACV, they were entitled to payment of sales tax and title transfer fees on their total-loss claim payment under their respective contracts.

    ii.    *Class Members Are Entitled to the Applicable Sales Tax Percentage and Title Transfer Fees of $75.25*

---

[3] As this Court pointed out, Defendant attempted to point to extrinsic evidence to show ACV means market value. Order at 7 n.2. As *Perez* and this Court pointed out, however, "market value" as used in an ACV policy is calculated as replacement cost less depreciation. *Perez*, 689 So. 2d at 291 ("Focusing on the cost approach to fair market value (actual cash value)…the cost approach by definition is the consideration of cost minus depreciation."). This, of course, is precisely why in *Trinidad*, the Supreme Court, in citing to *Perez*, easily concluded ACV is defined as replacement cost less depreciation.

The amount to which Class Members are entitled in sales tax is 6% (plus local surtax) and title transfer fees of $75.25 – precisely the same amount owed to all insureds, irrespective of whether the vehicle is owned, financed, or leased. As this Court cogently explained (quoted above), the Policy makes no distinctions between owned, financed, and leased vehicles – in fact, it positively identifies them as identical – and certainly provides no notice to insureds of any distinctions. Doc. 159 at 10-11; SoF at ¶¶ 9-10, 19.[4] Further, recognizing that it is providing precisely the same coverage, Defendant solicits the same premium rate irrespective of whether the insured vehicle is leased or owned. SoF at ¶ 20. Defendant concedes it owes sales tax and title transfer fees to leased insureds to the same extent as owned/financed insureds. *Id*. at ¶¶ 16, 21-22.

Importantly, the Policy does not require that an insured purchase a replacement vehicle or lease a replacement vehicle or even replace a vehicle at all – insureds are owed the same amount in any of those scenarios. SoF at ¶ 8; Doc. 159 at 10 ("Furthermore, nothing in the Policy requires an insured to replace his total loss leased vehicle with another leased vehicle, or even to replace the vehicle at all."). This comports with Florida law, which makes clear that ACV does not require actual repair or replacement and is independent from the amount incurred in replacement (if any). *See, e.g.*, *Trinidad*, 121 F. 3d 443 ("Accordingly, we hold that the Third District erred in concluding, based on the policy, that Florida Peninsula was not required to pay Trinidad overhead and profit because Trinidad had not actually incurred those costs."); *Mills*, 511 F. 3d at 1305 ("We see nothing in the language of the Policy that even suggests that if the Millses never repaired or replaced their property, they would not *for that reason* be entitled to compensation for the actual cash value of the damaged property."); *Roth*, at *9 ("Furthermore, nothing in the Policy requires a

---

[4] Defendant implicitly acknowledge as much by basing the underlying value of leased vehicles on the cost to purchase a replacement vehicle, not the cost to lease a replacement vehicle. SoF at ¶ 11. Moreover, Defendant implicitly concedes as much by charging the same premium for owned and leased vehicles (all else being equal). Id. at ¶ 20.

leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all.").

Of course, Defendant pays sales tax to insureds who own or finance their vehicles at a rate of 6% of the adjusted vehicle value, plus local surtax. SoF at ¶ 16. As this Court held, leased insureds are owed the same amount. Doc. 159 at 11 ("State Farm's failure to pay insureds with leased-vehicle total loss claims sales tax…of 6 percent of the value of the vehicle plus applicable local taxes and title transfer fees…of $75.25 constitutes a material breach of contract."); *see also Roth*, at *12 (same). This applies equally to every Class Member, all of whom were owed (but were paid less than) 6% plus local surtax of the adjusted vehicle value plus $75.25 in title transfer fees.[5] Defendant's failure to provide such payment – ostensibly because of a business rule error (SoF at ¶ 18) – constituted a material breach of contract as to every class member. Defendant already conceded that class members were insured under the same material policy language – thus, the logic of this Court's previous (and correctly-decided) Order applies equally to class members.

      iii.    *Class Members Are Entitled to an Award of Prejudgment Interest*

In addition to the sales tax and title transfer fees, class members are also entitled to prejudgment interest. In diversity cases, "[w]hether a successful claimant is entitled to prejudgment interest is a question of state law." *Chavez v. Mercantil Commerce Bank, N.A.*, 601 F. App. 814, 815-16 (11th Cir. 2015). Under Florida law, "a plaintiff is entitled to prejudgment interest as a matter of law." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007).

---

[5] The mandatory fee amount of $75.25 derives from Fla. Stat. § 319.32(5) ($48.00 base fee), § 319.32(1) ($1.00 security fee), § 319.324 ($1.00 odometer fee), § 319.32(2)(a) ($4.25 service fee), and § 319.32(5) (state transportation trust fund fee of $21.00). Incidentally, the $21.00 transportation trust fund fee is not applied to leased vehicles, which is why such transfer fee amount is only $54.25. For the reasons set forth herein, however, as the Court held, Class Members are owed $75.25 (not $54.25).

Importantly, Florida law holds to the "loss theory" of prejudgment interest. *See Bosem v. Musa Holdings, Inc.*, 46 So.3d 42, 45 (Fla. 2010) (per curiam). As this Court previously explained:

> Under this theory, Florida courts award prejudgment interest as an element of damages to fully compensate the plaintiff for the value of his or her loss which was caused by the defendant's conduct. *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212, 214-15 (Fla. 1985). Neither the defendant's good faith in defending against the lawsuit nor the plaintiff's inability to quantify the value of loss preclude an award of prejudgment interest; the plaintiff shall recover prejudgment interest as a matter of right once a finder of fact determines that the defendant is liable and reduces the plaintiff's injuries to a sum certain. *Id*. at 215. While equitable considerations are certain types of injuries may preclude an award of prejudgment interest in a particular case, prejudgment interest is generally mandatory and is available in any dispute with the Plaintiff's loss is pecuniary in nature, including those grounded in contract. (Cites omitted).

-*Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 212 F. Supp. 3d 1232, 1239-40 (M.D. Fla. 2016). Numerous courts have explained the implications and application of the law on this subject, including that prejudgment interest is a substantive right and an element of compensatory damages. *Id*.; *see also Florida Steel Corp. v. Adaptable Developments, Inc.*, 503 So. 2d 1232, 1236 (Fla. 1986) (reaffirming *Argonaut* and holding that the loss theory of prejudgment interest is the law in Florida because "interest is merely another element of pecuniary damages"). Thus, courts have no discretion concerning prejudgment interest. *Bosem*, 46 So.3d at 45 ("loss theory forecloses discretion in the award of prejudgment interest") (quoting *Argonaut*, 474 So. 2d at 215). Instead, class members are entitled to prejudgment interest as a matter of substantive right and as an element of their compensatory, pecuniary damages.

Defendant has appeared to suggest at various times in this litigation that prejudgment interest is not owed because Defendant alleges to have paid other compensatory damages – sales tax and title transfer fees – prior to entry of a judgment by the court. Such argument is foreclosed,

however. Dispositive on this point is *Columbia Casualty Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217 (11th Cir. 1989). There, the insurer and insured engaged in an appraisal process prior to any suit being filed, wherein the appraiser determined the amount payable. *Id.* at 1218. The insurer paid the appraisal award. *Id.* The insured demanded payment of prejudgment interest on the appraisal amount paid by the insurer; the insurer, however, declined to pay any prejudgment interest because no suit had been filed and the amount owed was not determined until the appraisal award. *Id.* at 1219. The insurer filed a declaratory action concerning whether prejudgment interest was owed, and the insured countersued for the prejudgment interest. *Id.* The only amount of damages at issue was the prejudgment interest, which the Eleventh Circuit held was owed to the insured because it accrued thirty days after the proof of loss was provided, irrespective of the fact that the *amount* was not established until the appraisal award (which operated as a finder of fact). *Id.* The case, then, forecloses Defendant's argument that if the amount owed under the policy is paid prior to entry of judgment, prejudgment interest is not owed; *see also Craigside, LLC v. GDC View, LLC*, 74 So. 3d 1087, 1091-92 (Fla. 1st DCA 2011) (interest owed on amount paid prior to judgment because interest runs "from the date the debt was due rather than from judgment.") (citations omitted).

Defendant also appears to suggest that because it provided remediation prior to certification of the class, prejudgment interest is not owed. Such argument has no merit, of course, because, beyond the fact that prejudgment interest is owed even if payment of the underlying amount owed under a policy is made prior to suit being initiated at all, "the filing of a timely class action complaint commences the action for all members of the class as subsequently determined." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974). Moreover, as *Southern Flapjacks* makes

clear, a suit need not be filed to establish entitlement to prejudgment interest, because the prejudgment interest accrues at the point the payment was owed but not paid.

Here, then, it is unquestionable that class members are entitled to prejudgment interest calculated as the applicable percentage of the amount owed from the original settlement date (which liquidated the damages) to the payment date, either by the supposed "remediation" (assuming State Farm demonstrates it paid the full sales tax and title transfer fees owed) or payment made pursuant to this Court's Final Judgment. *See, e.g., Jablonski v. St. Paul Fire & Marine Ins. Co.*, 645 F. Supp. 2d 1101, 1103-04 (M.D. Fla. 2009) (once damages are liquidated, prejudgment interest is calculated as the applicable percentage of the liquidated amount accrued as of the date payment was due); *Specialized Transportation of Tampa Bay, Inc. v. Nestle Waters North America, Inc.*, 356 F. App'x 221, 230 (11th Cir. 2009)("[I]t is not necessary for the jury to determine the date on which damages are liquidated so long as it is clear from the context of the litigation"). Thus, class members are entitled to prejudgment interest calculated as of the original total-loss settlement payment (which establishes the underlying vehicle value and thus the amount that should have been paid), which will be calculated after the Order of summary judgment and subsequently entered as a Final Judgment.[6]

      iv.   *Plaintiff and Class Members are Entitled to Attorneys' Fees and Costs*

---

[6] To be clear, the Final Judgment will not order State Farm to pay amounts in sales tax and title transfer fees that State Farm has already paid. Instead, it will order State Farm to pay amounts owed less amounts already paid. As to Class Members State Farm showed were, through "remediation", paid the full amount owed in sales tax and title transfer fees, the Final Judgment would order payment of prejudgment interest as to such Class Members. Florida law is clear that final judgment as to prejudgment interest is appropriate and necessary even if all other damages were paid prior to judgment. *See, e.g.*, *Travelers of Florida v. Stormont*, 43 So.3d 941, 946 n.3 (3d DCA 2010) ("The parties disagreed on the amount of prejudgment interest, so it was appropriate for the trial court to resolve the dispute and enter judgment for the interest amount.").

Finally, Plaintiff and Class Members are entitled to an award of attorneys' fees and costs under Fla. Stat. § 627.428. *See Wollard v. Lloyd's & Cos. of Lloyd's*, 439 So. 2d 217 (Fla. 1983) (insureds paid benefits owed after suit filed but before judgment are nevertheless entitled to attorneys' fees and costs under Fla. Stat. § 627.428); *Insurance Co. of North America v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992) ("if the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees."); *Roth v. Geico Gen. Ins. Co.*, 2019 U.S. Dist. LEXIS 197778 (S.D. Fla. Nov. 13, 2019) (awarding attorneys' fees and costs under § 627.428 in favor of plaintiff and certified class of insureds who suffered total-loss to insured vehicles). Moreover, as the 11th Circuit has held, fees under Fla. Stat. § 627.428 are an "integral part of the merits of the case and must be part of any final judgment." *Certain British Underwriters at Lloyds of London v. Jet Charter Service, Inc.*, 739 F.2d 534, 536 (11th Cir. 1984).

Thus, if this Court grants summary judgment in favor of the class, Plaintiff and his counsel will move, with Notice to the class, for a determination of attorneys' fees and costs, to which Plaintiff and the Class are entitled and which will be part of a Final Judgment.

### c. The Remediation Is a Set-Off to Damages and Does Not Preclude Summary Judgment

Plaintiff anticipates Defendant will argue that the supposed "remediation" obviates the need for judgment in favor of the class. Plaintiff anticipates requiring a Reply to fully address any such argument, but briefly addresses the topic here.

As set forth above, class members are entitled to prejudgment interest as an element of their compensatory and pecuniary interests, and it is not disputed Defendant failed to include prejudgment interest on any "remediated" claim. SoF at ¶ 25, 27. Thus, at minimum, the "remediation" did not fully compensate any insured for their compensatory damages. Moreover, Defendant still has yet to provide the evidence of "remediation" beyond topline amounts and the

claim members who received the "remediation" (but not the amounts issued, nor whether a respective insured actually received and/or cashed the check, etc.). Simply put, calculation concerning the amount to which class members are entitled, the amounts paid or remediated, and the amount of prejudgment interest owed to each respective class member has yet to occur.

Moreover, Defendant continues to contest it breached the policies and continues to contest prejudgment interest is owed to class members, as seen in the previous summary judgment briefing, along with the recently-filed Motion to Decertify the class. Thus, while any remediation provided to particular class members is potentially a set-off to damages owed, it does not preclude summary judgment in favor of the class.

### d. Final Judgment Can Be Entered After Magistrate or Special Master Determines Individual Damages Award

Thus, for the foregoing reasons, class members are entitled to summary judgment in their favor for sales tax calculated as 6% (plus applicable local surtax), title transfer fees of $75.25, prejudgment interest, and entitlement to attorneys' fees and costs under Fla. Stat. § 627.428. If summary judgment is granted, calculation of sales tax, title transfer fees, and prejudgment interest is a ministerial job, after which final judgment can be entered as to amounts still owed to Class Members.

While Plaintiff believes the Parties can easily perform the ministerial damages calculations for individual class members, it is also sensible to appoint a magistrate or special master to oversee the process and, if necessary, resolve any disputes. *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004) (district courts may appoint special master or magistrate to "preside over individual damages proceedings") (citations omitted); *see also Roth* Order on Motion to Decertify (Exh. R) at 4-5 (appointing magistrate to oversee damages calculations for individual insureds owed sales tax and title transfer fees as part of total-loss payment).

## V.   <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests this Court GRANT this Motion for Summary Judgment, and enter an Order which:

1. Grants summary judgment in favor of the Class, setting forth the measure of damages as sales tax calculated as 6% (plus local surtax) of the adjusted vehicle value, title transfer fees of $75.25, prejudgment interest, and applicable attorneys' fees and costs;

2. Determining Class Members are entitled to prejudgment interest calculated as the applicable rate, accruing as of the date of original total-loss settlement payment until date of the earlier of (a) remediation payment (if applicable) or (b) entry of the Order on summary judgment;

3. Orders that Plaintiff and Class Members are entitled to attorneys' fees and costs in an amount to be determined upon application by Class Counsel;

4. Refers calculation of damages as set forth above for individual class members to a special master or magistrate, and sets a deadline by which the Parties must move for entry of judgment, whether jointly or separately (Plaintiff proposes a deadline of 30 days after entry of summary judgment order);

5. Sets a deadline by which Plaintiff and Class Counsel must move for an award of attorneys' fees, costs, and Service Award (Plaintiff proposes a deadline of 45 days after entry of summary judgment order);

6. Sets a deadline by which the Parties must submit a proposed Notice to inform Class Members of the potential judgment and of the application for attorneys' fees and costs (Plaintiff proposes a deadline of 45 days after entry of summary judgment order).

Dated: January 24, 2020

Respectfully submitted,

*/s/ Jacob Phillips*
Jacob L. Phillips
FBN: 120130
Edmund A. Normand
FBN: 0865990
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: (407) 603-6031
Fax: (888) 974-2175
jacob.phillips@normandpllc.com
ed@normandpllc.com
service@normandpllc.com

Christopher J. Lynch
FBN: 331041
**CHRISTOPHER J. LYNCH, P.A.**
6915 Red Road, Suite 208
Coral Gables, Florida 33143
Tel:  (305) 443-6200
Fax: (305) 443-6204
clynch@hunterlynchlaw.com
lmartinez@hunterlynchlaw.com

*Attorneys for Plaintiff*

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using CM/ECF systems this 24th day of January, 2020.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in the some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Jacob Phillips</u>
Attorney for Plaintiff

## <u>SERVICE LIST</u>

Daniel F. Diffley, Esq. (*pro hac vice*)
Cassandra K. Johnson, Esq. (*pro hac vice*)
Alston & Bird LLP
1201 W. Peachtree Street
Atlanta, GA 30309
Tel:  (404) 881-7000
Fax: (404) 881-7777

Johanna W. Clark
FBN: 196400
Carlton Fields, P.A.
450 S. Orange Ave., Suite 500
Orlando, FL 32801
jclark@carltonfields.com
Tel:  (407) 849-0300
Fax: (407) 648-9099

***Attorneys for Defendant***