UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY SOS,

     Plaintiff,

                                     CASE NO.: 6:17-cv-890-orl-18KRS

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign insurance
company

     Defendant.

_____

### STATE FARM'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This is a unique motion for summary judgment. Plaintiffs apparently seek summary judgment on behalf of the class, but do they not present evidence to support their class-wide motion nor do they even attempt to present any type of class-wide damages. Instead, they rely entirely on the Court's prior order that Anthony Sos's Policy required the payment of taxes and fees and ask the Court to just copy that result here. And rather than address class-wide damages, as required by the Supreme Court in a class action, Plaintiffs request that this Court appoint a special master or magistrate judge to determine a process for assessing damages.

Additionally, the class does not have claims for interest or attorneys' fees, as the insureds were paid in the remediation before they had any legal status as class members, so neither remedy was ever triggered. As set forth below, Plaintiffs fall far short of meeting their burden on a motion for summary judgment, and the Court should deny this motion.

## I.     **FACTS**

State Farm issued two policies during the class period.  Sos's Policy covers a "***loss caused by collision*** to a ***covered vehicle***" and provides that State Farm will "[p]ay the actual cash value of the ***covered vehicle*** minus any applicable deductible."  Ex. A.   The other operative Policy in Florida during the relevant time period (Form 9810.7) provides that "Actual cash value is determined by the market value, age and condition at the time the ***loss*** occurred." Ex. B.  "Actual cash value" is not defined in either Policy.

State Farm treats "actual cash value" as the market value of the vehicle, which is calculated separately from taxes and fees.  Ex. C, Platt Dep. 54:25-55:2; Ex. D, Graff Dep. 12:22-223.   Although taxes and fees are not required under the Policies, it is State Farm's practice to pay taxes and title transfer fees on total losses in Florida.  Ex. E, Graff Decl. ¶ 9. During the class period, and at the time of Plaintiff's accident, State Farm's TLST had a "business rule" in place for Florida that changed the tax field in the TLST to zero dollars when a claims specialist indicated that the claim was on a leased vehicle for some total loss claims. Ex. C, Platt Dep. 103:22-104:3.   This was an unintended result through a computer programming error, and State Farm removed the business rule in mid-2017.  Ex. C, Platt Dep. 85:1-4.  The business rule did not affect all leased-vehicle total loss claims in Florida.  Ex. E, Graff Decl. ¶ 8.

Plaintiff filed this lawsuit in May 2017.  In December 2017, before Plaintiff moved for class certification and prior to any significant discovery or motion practice, State Farm decided to compensate Florida insureds who may not have received sales taxes or fees as a part of their

total loss settlement.[1]  Ex. E, Graff Decl. ¶ 10.  In October 2017, State Farm identified insureds from 2012 to 2017 who had leased vehicles and were not paid sales taxes through a search of its electronic claims database.  *Id.* ¶ 6; Ex. F, Thorpe Decl. ¶¶ 4-6.  State Farm then embarked on a file-by-file review of approximately 2,600 claims to assess whether sales taxes had been paid.  Ex. G, Butler Decl. at ¶¶ 6, 7, 10, 18-19.  If an individual had received no taxes, they were paid an amount equal to Florida's 6% sales tax plus any local sales tax, and if an insured had not received any fees, State Farm paid the insured $79.25.  Ex. H, Butler Dep. 31:17-32:3; 32:5-19.  State Farm made payments in November and December 2017 to 2,321 insureds totaling $3,417,730.  Ex. I, State Farm's Interrogatory Resp. No. 11.

In February 2018, before Plaintiff filed for class certification, State Farm independently identified 1,174 claims from a list of all Florida total losses that had not received any sales tax for remediation.  Ex. G, Butler Decl. ¶ 16; Ex. E, Graff Decl. ¶ 11.  State Farm then initiated a second remediation, identical to the first.  Ex. G, Butler Decl. ¶ 19.  After reviewing the 1,174 claims, State Farm added another 704 claims to the list of Florida claims it had already remediated with sales taxes and fees.  Ex. E, Graff Decl. ¶ 12.  The remaining 470 claims were not remediated for a variety of reasons, including that many claims had received sales taxes and some were never settled as a total loss.  Ex. E, Graff Decl. ¶ 14.  State Farm's continuing remediation efforts resulted in an additional $906,727.71 being paid to its insureds in March

---

[1] As outlined in State Farm's opposition to class certification, counsel for State Farm approached Plaintiff's counsel to participate in this remediation process that would compensate State Farm's insureds.  Dkt. No. 85 at 6-8.  State Farm to pay attorney's fees on top of the amount paid to State Farm's insureds, but Plaintiff's counsel demanded close to a million dollars for themselves.  *Id.* at 8.  The parties were unable to reach an agreement as to fees and negotiations broke down.  *Id.*

2018.  Ex. I, State Farm's Interrogatory Resp. No. 12.  All told, State Farm paid $4,324,457.74 to its insureds.  *Id.*  State Farm provided a full accounting of the payments to these vehicles to Plaintiffs' counsel.  Johnson Decl. ¶ X.

The Court certified a class of all "underpaid" State Farm insureds, which consisted of the remediated individuals and a group of insureds that Plaintiffs argued were "underpaid" and not part of the remediation.  During the class notice process, State Farm and Plaintiffs' counsel determined that only four of the 841 "underpaid" insureds were leased vehicles.  On those claims, State Farm had paid varying amounts between 0 and 6% of the ACV, which appears to be simply an entry error during the original claims handling.  State Farm has moved to decertify the class because these four insureds cannot form the basis of a class, nor can the remediated individuals whose claims are moot.

## II.     RESPONSE TO PLAINTIFFS' "UNDISPUTED" FACTS

State Farm responds to Plaintiffs' Statement of Undisputed Facts as follows:

- State Farm does not dispute the following facts: 2, 3, 4, 5, 7, 8, 9, 27.

- State Farm objects to the following facts because they rely exclusively on expert reports that (1) should be excluded; and (2) cannot form the basis of admissible facts: 10, 13, 20, 28.  FRE 801.

- State Farm does not believe that the following paragraphs present facts, but rather conclusions of law or Plaintiffs' assertions: 14, 15, 16, 18

**Paragraph 1**: State Farm disagrees with this statement because there were two policy forms in effect during the class period.  Exs. A, B.

**Paragraph 6**: State Farm disagrees with Plaintiff's characterization of this "fact."  The threshold for assessing that a vehicle is a total loss is set by the State of Florida.  Fla. Stat. 319.30.  As a practice, State Farm pays the actual cash value when a vehicle is a total loss, rather than the cost to repair or replace a vehicle, but it is not required to do so under the Policy. Ex. A; Ex. C, Platt Dep. 54:25-55:2; Ex. E, Graff Decl. ¶ 9.

**Paragraph 11**: State Farm disagrees with this characterization of the facts.  State Farm uses Autosource to determine the fair market value of the vehicle, which is the actual cash value.  Ex. C, Platt Dep. 46:18-25.

**Paragraph 12**: State Farm disagrees with this characterization of the facts because leased vehicles are not taxed at a flat rate of 6%, but rather, they are pro-rated and paid on a monthly basis for the duration of the lease.  *See* Rule 12A-l.071(1)(c), Florida Administrative Code.  In addition, some vehicles, such as government vehicles, are exempt from sales tax. Florida Department of Revenue, Tax Information for Motor Vehicle Dealers, p. 19 available at https://floridarevenue.com/Forms_library/current/gt400400.pdf.

**Paragraph 17**: State Farm does use the TLST for total loss claims handling, but the TLST does not calculate sales tax and fees, nor does it make any assessment of whether fees are mandatory.  Ex. C, Platt Dep. 49:17-18.

**Paragraph 18**: State Farm does not dispute that a business rule applied to zero out sales taxes on some leased vehicles.  State Farm disagrees with Plaintiffs' argument that this means that State Farm "refused to pay any sales tax."

**Paragraph 21**: State Farm disagrees with this assertion.  State Farm does not believe that the Policy requires payment of taxes and fees, although, it does generally pay them in practice.  Ex. E, Graff Decl. ¶ 9.

**Paragraph 23**: State Farm disagrees with this characterization.  State Farm initiated a remediation after the filing of this lawsuit which fully compensated 2,321 insureds totaling $3,417,730.  Ex. I, State Farm's Interrogatory Resp. No. 11.

**Paragraph 24**: State Farm disagrees with this fact.  State Farm identified additional insureds and commenced a second remediation prior to Plaintiff's counsel ever reviewing the data.  Ex. G, Butler Decl. ¶ 16; Ex. E, Graff Decl. ¶ 11.   State Farm also objects to citations to the Martin declaration because Martin was never a disclosed expert or witness in this case.

**Paragraph 25**: State Farm disagrees with this fact.  It engaged in a second remediation on February 2018, which had no relationship to Plaintiff's motions.  Ex. G, Butler Decl. ¶ 16; Ex. E, Graff Decl. ¶ 11.

**Paragraph 26**: State Farm disagrees with the characterization of this fact.  Out of over 20,000 total losses settled in Florida, State Farm identified an additional four losses that were "underpaid," which appears to be the result of a miscalculation, and not any specific policy or practice. *See* Dkt. No. 201.

### III.  <u>ARGUMENT</u>

Plaintiffs' first argument is that the "law of the case" doctrine requires the Court to find in Plaintiffs' favor.  This is incorrect and misconstrues Plaintiffs' burden on a motion for summary judgment.  Plaintiffs cannot just point to the Court's individual ruling on Mr. Sos's claim.  Instead, they bear the burden of showing that, drawing all inferences in favor of State

Farm, there is no dispute of material fact and that Plaintiffs are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Plaintiffs acknowledge that the law of the case doctrine does not actually apply to rulings by the Court prior to final judgment (Mot. at fn. 1), but yet, spend two pages arguing that this Court must find summary judgment as to the class simply because the Court previously ruled that summary judgment was warranted as to Anthony Sos's claim.  Mot. at 9-11.  The law on this point is unequivocal: "a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court.  Consequently, law of the case applies only where there has been a final judgment." *Villeda Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1289 (11th Cir. 2009).  There has been no final judgment in this case, so the Court is not bound to apply its prior ruling.[2]

Instead, at summary judgment, Plaintiffs must establish that all elements of a breach of contract claim are met as to the class members.  To prove a breach of contract, Plaintiffs must establish: (1) a valid contract; (2) a material breach; and (3) damages.  *Friedman v. New York Life Ins. Co.,* 985 So.2d 56, 58 (Fla. 4th Dist. Ct. App. 2008).  Plaintiffs cannot establish any of these elements because: (1) only four of the class members have suffered an injury sufficient to confer standing; (2) there is no breach as to those four class members because taxes and fees are not owed under the Policy; and (3) Plaintiffs have not even attempted to show actual evidence that the four class members, or any others, are entitled to damages.

---

[2] The Court specifically noted in its prior summary judgment order that no class had been certified and that any arguments as to the class were disregarded.  Dkt. No. 159 at 12.

### A. Summary Judgment Is Inappropriate Because the Class Claims Are Moot, and The Class Does Not Have Standing.

As explained in prior submissions, there is no longer any case or controversy in this lawsuit.  Dkt. Nos. 85, 110, 116, 201.  Further, Plaintiffs' remaining requested relief cannot create a case or controversy because prejudgment interest and attorneys' fees only attach to contested claims, not those remediated prior to any class certification.

### 1. The class claims are moot, and the Court should not exercise jurisdiction over those claims.

State Farm's remediation prior to class certification compensated the insureds who were affected by the business rule that zeroed out taxes.  Because these individuals were all paid at the outset of the case, their claims are moot.  "Mootness is among the important limitations placed on the power of the federal judiciary and serves long-established notions about the role of unelected courts in our democratic system."  *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005).  "If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion."  *Id.*  Further, "[w]hen an insurance company has 'paid all benefits in full . . . [t]here is no case or controversy[.]'"  *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019).

In other contexts, courts have held that a defendant's voluntary remediation of the complained-of noncompliance moots a claim.  *See Diaz v. Kroger Co.*, No. 18-cv-7953 (KPF), 2019 WL 2357531, at *5 (S.D.N.Y. June 4, 2019) (finding a claim moot when the defendant removed ADA barriers); *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018) (finding that post-complaint remediation mooted the complaint when defendant provided an affidavit

that it had made the changes identified in the complaint).  State Farm has paid all benefits to the class, so all but the remaining four "underpaid" class members no longer have a live claim in the case.

To the extent that Plaintiffs argue that State Farm could repeat its conduct unless the Court rules on summary judgment, the Eleventh Circuit has held that when a defendant has changed the offending conduct, a plaintiff's "mere speculation that the [defendant] may return to its previous ways is no substitute for concrete evidence of secret intentions."  *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005).  Here, Plaintiffs' counsel does not argue that the business rule remains in place, or that there is any evidence that State Farm would stop paying taxes and fees in the future.  To the contrary, Plaintiffs' counsel has repeatedly pointed out that it is State Farm's practice to pay such taxes and fees.  *See e.g.,* SOMF ¶ 21.  State Farm has removed the barriers to payment of taxes and fees (the business rule), compensated everyone who was not paid full taxes and fees, provided an accounting of these efforts, and Plaintiffs' counsel does not argue it has reason to believe that State Farm would change its practice in the future.  There is no live controversy between the parties.

2. *At the time of the remediation, none of the insureds who received payments had filed a lawsuit against State Farm, so they are not entitled to prejudgment interest or attorneys' fees.*

As an initial matter, at the outset of this case, the putative class had no legal status.  *See e.g. Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2008 WL 113667, at *2 (S.D. Fla. Jan. 8, 2008) (finding that a summary judgment ruling pre-certification can only bind the named plaintiffs because "they were the only plaintiffs in the case at that point in time."); *Bailey v. Cumberland Cas. & Sur. Co.*, 180 F. App'x 862, 865 (11th Cir. 2006) (noting that a

class that was never certified does not achieve "separate legal status."). That group of State Farm insureds did not bring this lawsuit, rather Anthony Sos did, and the putative class was not represented by Mr. Sos or his counsel pre-class certification. *In re Katrina Canal Breaches Consol. Litig.*, No. 05-cv-4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired.") (quoting ABA Committee on Ethics & Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)).

Because the group of State Farm insureds that are now class members in this case were fully compensated through the remediation, before they had any legal identity in this case, the putative class never was denied any benefit under their policies that could trigger a claim for interest or attorney's fees. As a result, the statutory recovery of prejudgment interest and attorneys' fees, which could be available to insureds forced to sue and fight with their insurance company for additional benefits, are not relevant here. *Alvarado v. Rice*, 614 So. 2d 498, 499 (Fla. 1993); Fla. Stat. § 627.428. Similarly, the concept of confession of judgment does not apply.

a.    <u>Prejudgment interest is not owed to an insured who never sues.</u>

Prejudgment interest is owed when "plaintiff has suffered an actual, out-of-pocket loss" and generally applies to cases involving the "loss of a vested property right." *Alvarado*, 614 So. 2d at 499. A trial court only assesses prejudgment interest after a verdict liquidating damages has been rendered. *Albanese Popkin Hughes Cove, Inc. v. Scharlin*, 141 So. 3d 743, 746-47 (Fla. Dist. Ct. App. 2014). Liquidated claims are "sums which are certain, ***but which the defendant refuses to surrender***." *Air Ambulance Prof'ls, Inc. v. Thin Air*, 809 So. 2d 28,

31 (Fla. Dist. Ct. App. 2002) (emphasis added).  Thus, under Florida law, prejudgment interest is owed when an insurance company refuses to surrender the amounts owed, and the insured engages in an adversarial process to recover.

Plaintiffs cite to *Colombia Casualty Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217 (11th Cir. 1989), but there, the parties arbitrated the case with a third-party appraiser (because the insurer denied the claim) prior to the lawsuit.  In that circumstance, the insurance company denied the claim and defended the suit.  Here, that did not happen because State Farm never denied the putative class members claims and never refused to surrender taxes and fees on their claims.

b.      Only an insured who files a lawsuit can recover attorneys' fees.

Similarly, the attorneys' fees statute provides for recovery only for those who sue an insurance company and recover.  Fla. Stat. § 627.428.  This fee-shifting statute does not apply in a vacuum.  Rather, the statute narrowly provides that: "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured," the insured is entitled to attorneys' fees.  *Id*.  The statute does not provide for recovery of attorneys' fees when there is any disagreement in the amount of coverage between an insured and insurance company.  *Id.*  Rather, only where an insured sues in court and prevails is there any entitlement to attorneys' fees.  But, "[w]here suit is filed without any necessity to do so, attorneys' fees under section 627.428 will be denied."  *Travelers of Fla. v. Stormont*, 43 So.3d 941, 944 (Fla. Dist. Ct. App. 2010).  Here, no putative class member filed a lawsuit, and

the class was not certified prior to State Farm's remediation. As such, no putative class member is entitled to attorneys' fees.[3]

           c.       <u>There is no confession of judgment when no suit was filed.</u>

Finally, the concept of confession of judgment does not apply to these individuals. Plaintiffs argue that the remediation is a "confession of judgment" which entitles the class members to prejudgment interest, attorneys' fees, and costs. But, the confession of judgment doctrine allows a plaintiff who settles his claim to recover an award of attorneys' fees "even though technically no judgment for the loss claimed is thereafter entered." *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 688 (Fla. Dist. Ct. App. 2008). The confession of judgment doctrine is not applicable to the remediated putative class members because they were not a part of this lawsuit and never contested the payment of their claims with State Farm. *Carefree Lifestyles, Inc. v. Gov't Emps. Ins. Co.*, No. 15-20005, 2017 U.S. Dist. Lexis 7603 at *5 (S.D. Fla. Jan 18, 2017) (Where a plaintiff was not "forced to sue," attorneys' fees may be withheld.).

The remedies of prejudgment interest and attorney's fees are only available to an insured when an insurance company denies or refuses to surrender amounts to its insureds, such that the insureds must sue to recover. That did not happen here with anyone in the remediation. State Farm paid these insureds before they had any legal status as a class.

---

[3] Even if Florida law applied to insureds who were never adverse to their insurance company, a request for attorneys' fees alone cannot create a justiciable controversy. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit. The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[An] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.").

This conclusion is not at odds with the policies behind the fee-shifting statute. These class members never had to incur any expense in order to be compensated by State Farm because they did not engage a lawyer to represent them. Only Mr. Sos incurred those expenses.

3.   *The four remaining claims cannot form the basis of a class.*

The four remaining claims cannot form the basis of a class. These claims fail to meet the Rule 23(a) requirements: (1) they are not sufficiently numerous; (2) there is no common question of fact; and (3) their claims were not zeroed out by the business rule, so Anthony Sos is not a typical representative of these claims. Fed. R. Civ. P. 23(a); *See* Dkt. No. 201. Further, Plaintiffs have not put forward any specific evidence demonstrating that State Farm owes taxes and fees on these claims. As with the remediated individuals, a file-by-file review is necessary to determine if a claim was settled as a total loss, if the taxes and fees are owed, and if taxes were in fact paid on the claim. *See e.g.*, Graff Decl. ¶ 14.

4.   *Anthony Sos's claim became moot before the class obtained independent status, so there is no case or controversy.*

Anthony Sos's claim is similarly moot because judgment has been satisfied as to his claim, so there is no class representative with any stake in this litigation left. Because his claims are moot as the class representative, the class claims are also moot. In similar situations, courts have concluded that payment of sums in satisfaction of a judgment to a proposed class representative moots any class claims, requiring dismissal. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1137-38 (10th Cir. 2009) (finding that State Farm's payment of the judgment as to the named plaintiff mooted the case because plaintiff no longer had any personal stake in the outcome of the litigation).

Although the Eleventh Circuit has never directly addressed this question, courts consistently note that full relief for a class representative moots his or her claim. *See, e.g.*, *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1041 (5th Cir. 1981) (noting that "a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has properly been certified" and that "[i]n such a case there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution"); *Willard v. Home Depot, U.S.A., Inc.*, No. 509CV110/RS-MD, 2009 WL 4730644, at \*3 (N.D. Fla. Dec. 7, 2009) (noting that "a named plaintiff must have a live claim both when she filed the complaint and when the court decides whether to certify the putative class" and concluding that because the plaintiff's claim was moot she "lack[ed] standing either to prosecute her individual claim or to represent the putative class"); *see also Geismann v. ZocDoc, Inc.*, 909 F.3d 534, 542 (2d Cir. 2018) ("Our decisions appear to recognize that where a defendant surrenders to 'complete relief' in satisfaction of a plaintiff's claims, the district court may enter default judgment against the defendant—even without the plaintiff's agreement thereto—and '[t]hen, after judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III.'").

Because Sos's claim became moot before the class obtained independent legal status, there is no longer a case or controversy under Article III of the Constitution. Absent a case or controversy, there is no basis for the Court to grant summary judgment.

### B.  <u>Neither Policy Requires Payment of Taxes and Fees.</u>

If this Court finds that the case should proceed to the merits at to the four remaining claims, or any State Farm Florida insured, it should reconsider its prior ruling that actual cash value includes taxes and fees.  First, Plaintiffs have failed to identify which of the two State Farm policies apply to which of the four remaining insureds (or any of the class members). Second, actual cash value is the fair market value of the vehicle and nothing more.  Third, to the extent that the Court finds that taxes and fees are owed, only prorated taxes and fees are due.

> 1.  *State Farm had two policies during the class period, but Plaintiffs fail to address the second policy or distinguish which class members had which policy.*

There are two State Farm policies at issue over the class period, which Plaintiffs have failed to address.  Anthony Sos's Policy provides that State Farm will: "Pay the ***actual cash value*** of the covered vehicle minus any applicable deductible." Ex. A (emphasis added).  This Policy does not include a definition of actual cash value.  The other operative Policy in Florida during the relevant time period (Form 9810.7) similarly provides for coverage of actual cash value, and that Policy provides that "Actual cash value is determined by the market value, age and condition at the time the loss occurred." Ex. B.  This definition is consistent with State Farm's argument that actual cash value means simply the market value of the vehicle, and clearly puts insureds on notice that actual cash value does not include taxes and fees.  Plaintiffs have failed to address the second Policy.  Plaintiffs have also failed to identify which of the insureds were insured under each policy, so the Court should not simply apply Sos's Policy to all potential class members.

2.     *Actual cash value is the fair market value of the vehicle.*

State Farm maintains that actual cash value in the context of insurance policies in Florida is unambiguous: "The expression 'actual cash value' is an often-used appraisal term, generally synonymous with 'market value' or 'fair market value.  Thus when the Policy provides for 'actual cash value' it means 'fair market value' . . . ." *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d Dist. Ct. App. 1997) (citing Black's Law Dictionary 53 (4th ed. 1968)).  The Eleventh Circuit has similarly ruled that the term "actual cash value" is unambiguous and means the "fair market value, of the item—that is, the fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business." *United States v. Robertson*, 493 F.3d 1322, 1332 (11th Cir. 2007).

Equating "actual cash value" to mean "fair market value" is significant because "fair market value" is different than the "replacement cost of the vehicle," the definition Plaintiff advocates.  Under Florida law, "[r]eplacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property."  *State Farm Fire & Cas. Co. v. Patrick*, 647 So.2d 983, 983 (Fla. 3d Dist. Ct. App. 1994).  "[R]eplacement cost policies provide greater coverage than actual cash value policies because depreciation is not excluded from replacement cost coverage, whereas it generally is excluded from actual cash value."  *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013).  And with this discrepancy, Plaintiffs hope to impose the extra contractual obligation of paying amounts beyond those imposed by the definition of actual cash value.

Other insurance companies similarly treat actual cash value as a distinct concept from replacement cost, which may include taxes and fees, as have many courts interpreting the

meaning of actual cash value.  *See, e.g., Gill v. Progressive Direct Ins. Co.*, No. 2:06-CV-1151-MEF, 2008 WL 130774, at *4 (M.D. Ala. Jan. 10, 2008) ("While the policy does not define 'actual cash value', it is apparent . . . that 'actual cash value' would include an adjustment for the actual physical condition, and would not be merely equivalent to its replacement value."); *Seckinger-Lee Co. v. Allstate Ins. Co.*, 32 F. Supp. 2d 1348, 1358 (N.D. Ga. 1998) (actual cash value and replacement value are separate amounts); *Clark v. Clarendon Ins. Co.*, 2002-1314 (La. App. 3 Cir. 3/26/03); 841 So. 2d 1039, 1045-46 (finding that policy did not include sales tax despite actual cash value statute including sales tax).  The fact that the State Farm policies both provide for the lesser of the cost to repair or replace *or* actual cash value supports State Farm's interpretation of the policies that these concepts are two separate and distinct amounts.  Actual cash value is simply the fair market value of the vehicle and does not include costs that are incurred to replace the vehicle.

### 3.     *Leased vehicles only incur monthly taxes and $54.25 in fees.*

To the extent that the Court finds that taxes and fees are owed, the Court should only require a pro-rated repayment of leased vehicle taxes and $54.25 in fees because that is all an insured leasing a vehicle would have paid.  Under Florida law, full sales tax is not due upon the lease of a vehicle.  Rather, sales tax is charged on a monthly basis, is only charged on the "gross proceeds" of the lease (not on the purchase value of the vehicle), and only for the life of the lease. *See* Rule 12A-l.071(1)(c), Florida Administrative Code.  Thus, none of the class members ever paid full sales tax on their leased vehicles.  The amount of sales taxes that they actually paid would vary depending on how long they held their leases before the total loss.  If the Plaintiffs were granted the full 6% plus county tax on their total losses, they would recover

more than they ever paid in taxes. Similarly, leased vehicles are only charged $54.25 for a title transfer fee, which is less than owned vehicles. Fla. Stat. § 319.32. Plaintiffs acknowledge that this lesser amount applies to leased vehicles. Mot. at fn. 5.

If the Court required the full value of sales tax and fees to be paid, this would make the Policy's "lesser of" language superfluous. Under both policies, State Farm only agrees to pay the lesser of the actual cash value and the cost to repair or replace the vehicle. Exs. A, B. By requiring State Farm to pay the cost to replace a leased vehicle with an owned vehicle (including full sales tax and transfer fees) as the actual cash value, then there is no meaningful difference between the actual cash value and the cost to repair or replace the vehicle. "A contract is not to be read so as to make one section superfluous, and so all the various provisions of a contract must be so construed as to give effect to each." *Austin Commer., Ltd. P'ship v. L.M.C.C. Specialty Contractors, Inc.*, 268 So. 3d 215, 220 (Fla. Dist. Ct. App. 2019). Thus, the Court should not interpret actual cash value to include taxes and fees greater than what Plaintiffs ever paid on their leased vehicles.

Further, Plaintiffs have failed to identify for any of the four remaining claims whether State Farm's partial payment covers all sales taxes actually incurred. And Plaintiffs have not put forward any evidence of the amount of taxes paid by any leaseholder on their vehicle— such evidence would be individualized and would certainly necessitate de-certifying the class. Plaintiffs' motion for summary judgment should be denied because they have not proven that State Farm breached its policies.

**C.      Plaintiff Does Not Even Attempt to Prove Any Damages, And State Farm Is Entitled to a Jury Trial.**

Rather than actually provide evidence that damages are owed to any individual insured or present evidence of some class-wide damages model, Plaintiffs have asked this Court to appoint a special master or magistrate judge to oversee the damages determinations.  This is inappropriate because Plaintiffs bear burden to prove damages.  Plaintiff must prove by "reference to material on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Here, State Farm is not even entirely clear which claims Plaintiffs believe still are owed money, in what amount, or why.  In large part, this is because Plaintiffs never requested any claim file other than Anthony Sos's file, even though Plaintiffs were fully aware that the spreadsheet State Farm produced in this litigation was not able to provide the level of detail necessary to assess damages.  For instance, many of the claims reviewed in the remediation were not owed sales taxes because they were not settled as a total loss, even though State Farm's spreadsheet showed that these claims were opened as a total loss.  Graff Decl. ¶ 14.  Similarly, the spreadsheet does not show whether a vehicle is a tax-exempt vehicle, so no sales tax was ever paid or owed.  Thus, the spreadsheet alone is not sufficient evidence of damages.

The Supreme Court has cautioned that simply because a case is a class action, that procedural mechanism does not give "plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1048 (2016).  And, the First Circuit has recently reiterated this point and found that when a defendant has no meaningful opportunity to contest liability or damages, then the class action cannot be maintained.  *In re Asacol Antitrust Litig.*, 907 F.3d

42, 52-53 (1st Cir. 2018).  In order to even maintain a class, plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis."  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  They have not done so here.

Instead of proving damages, Plaintiffs ask for a special master or magistrate judge, but Plaintiffs have not made any proposal for what process would be used by a special master or magistrate judge in assessing damages.  Discovery is closed in this case, and it is not for State Farm to prove that damages are not owed on any particular claim—Plaintiffs must show that they are entitled to damages. It appears Plaintiffs are attempting to side-step this burden of proof and essentially force State Farm to arbitrate damages by engaging in some kind of back-and-forth process to determine damages.  The time for that has passed.  If Plaintiffs cannot prove their damages, summary judgment on their breach of contract should be denied, and State Farm is entitled to a jury trial.  *Borgh v. Gentry*, 953 F.2d 1309, 1311 (11th Cir. 1992) ("[T]he issue of breach of contract is a legal issue to be tried by a jury."); *Martin v. Am. Sleep Med., LLC*, No. 3:14-CV-401-J-39JBT, 2015 WL 13359439, at *3 (M.D. Fla. June 11, 2015) (finding that a breach of contract claim proceeds to trial after denial of a plaintiff's motion for summary judgment).[4]

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion for summary judgment.

---

[4] State Farm is entitled to a jury trial, even though it did not demand one in its Answer, because Plaintiff made a jury demand in his Complaint.  "When a proper jury demand has been made, such demand applies to all parties for the duration of the case."  *Beron v. Alvarez*, No. 8:10-CV-1014-T-33TBM, 2011 WL 5358684, at *2 (M.D. Fla. Nov. 2, 2011).

DATE: February 14, 2020

Respectfully submitted,

*/s/ Daniel F. Diffley*
Daniel F. Diffley (*pro hac vice*)
Cassandra K. Johnson (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Tel.: 404-881-7000
Fax: 404-881-7777

Johanna W. Clark
Florida Bar No. 196400
CARLTON FIELDS, P.A.
450 S. Orange Avenue, Suite 500
Orlando, Florida 32801
Tel.: 407-849-0300
Fax: 407-648-9099
***Attorneys for Defendant, State Farm Mutual***
***Automobile Insurance Company***

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of February, 2020, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF which will send a notice of

electronic filing to all counsel or record.

*/s/ Daniel F. Diffley*
*Attorney for Defendant*
