# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANTHONY SOS,

                Plaintiff,

v.                                      Case No:   6:17-cv-890-Orl-40LRH

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S VERIFIED MOTION FOR ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW** (Doc. No. 223) |
| **FILED:** | **August 28, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

      This case has a lengthy, and heavily litigated, history.  On January 28, 2016, Plaintiff Anthony Sos was involved in a motor vehicle accident, causing his leased Lexus GS350 to be declared a total loss.  (Doc. 159, at 3).  Mr. Sos's vehicle was insured by Defendant State Farm Mutual Automobile Insurance Company ("State Farm") by a policy that included comprehensive and collision coverage, and State Farm issued payments both to the lienholder and to Mr. Sos under

the terms of the insurance policy.   (*Id.* at 1-3).   At the time, State Farm had a business rule in place in Florida whereby State Farm would not pay sales tax on a total loss claim for a leased vehicle. (*Id.* at 3).   As such, State Farm did not pay Mr. Sos any sales tax, but did pay Mr. Sos the license and title fees.   (*Id.*).[1]

On May 17, 2017, Mr. Sos filed a putative class action complaint in this Court, asserting a single claim for breach of contract under Florida law.   (Doc. 1).   Mr. Sos alleged that the terms of his insurance policy required State Farm to pay sales tax, as well as various state and local regulatory fees, for leased vehicle total loss claims.   (*Id.*).   The putative class included all persons in Florida who insured a leased vehicle with State Farm, and within the prior five years sustained a total loss to the vehicle but did not receive payment for Actual Cash Value ("ACV") sales tax or state and local regulatory fees.   (*Id.* at 9).[2]

On August 23, 2017, Mr. Sos filed a second amended class action complaint again alleging a sole claim for breach of the insurance contract based on State Farm's failure to pay ACV sales tax or state and local regulatory fees.   (Doc. 27).   Mr. Sos also expanded the class allegations to include both a Florida Class and a National Class.   (*Id.* at 11).[3]   The second amended class action complaint remained the operative pleading for the duration of this litigation.

On August 29, 2017, United States District Judge Paul G. Byron issued a Case Management and Scheduling Order ("CMSO") establishing numerous deadlines, including a deadline to file a renewed motion for class certification of March 1, 2018, a discovery deadline of August 1, 2018,

---

[1] State Farm removed this business rule in mid-2017 and began paying sales tax on total loss claims for leased vehicles.   (*Id.*).

[2] Mr. Sos filed an amended complaint on June 2, 2017 asserting the same breach of contract claim and class allegations.   (Doc. 8).

[3] State Farm sought to strike the national class allegations (Doc. 36), which was denied on March 12, 2018.   (Docs. 52, 72).

and a dispositive motions deadline of September 4, 2018.   (Doc. 34, at 1-2).   Discovery proceeded, with the parties conducting depositions and serving discovery requests, and the parties litigated several motions to compel throughout the discovery period.   (*See* Docs. 67, 69, 74, 80, 93).   In addition, on March 1, 2018, Mr. Sos filed a renewed motion to certify both a Florida class and a "Multistate Class" which included the 43 states that impose sales tax on vehicles.   (Doc. 70).   Following extensive briefing on the motion and class discovery, (*see* Docs. 84-85, 92, 96, 98-99), Mr. Sos withdrew his request to certify a Multistate Class on June 27, 2018, thereby leaving pending only his request to certify a Florida Class.   (Doc. 100).

On September 4, 2018, both sides filed cross-motions for summary judgment.   (Docs. 110-11).   On March 13, 2019, Judge Byron granted State Farm's motion as to Mr. Sos's claims for injunctive and declaratory relief and granted Mr. Sos's motion as to his breach of contract claim. (Doc. 159, at 13).   In his Order, Judge Byron expressly rejected State Farm's argument that Mr. Sos's claims were moot because State Farm attempted to pay Mr. Sos in full after Mr. Sos filed this lawsuit.[4]   (*Id.* at 6).   Judge Byron awarded Mr. Sos damages in the amount of $2,239.12 in sales tax, applicable local sales tax, and $75.25 in title transfer fees (offset by $58.75 already paid by State Farm).   (*Id.* at 13).   In all other respects, both motions were denied.   (*Id.*).   Judgment was entered accordingly in Mr. Sos's favor the following day, (Doc. 160), and State Farm paid the judgment in full on March 25, 2019.   (Doc. 175).

This was not the end of the case.   On May 2, 2019, following a hearing and further briefing from both sides, Judge Byron granted in part and denied in part Mr. Sos's renewed motion for class certification, and certified a "Florida Class" consisting of "All insureds of State Farm Mutual Automobile Insurance Company and any subsidiary insurance companies with Florida automobile

---

[4] Mr. Sos refused to accept the tender.   (*Id.* at 4).

insurance policies that provide Auto Physical Damage coverage for a total loss insured leased vehicle, whose total loss claim payment did not include full state and local sales tax and tag title fees, within the five year period prior to the date on which this lawsuit was filed until the date of any certification order." (Doc. 181, at 18-19). In rendering his decision, Judge Byron addressed State Farm's argument that class certification was unwarranted because, after Mr. Sos filed the present action, State Farm began a remediation process, ultimately issuing payments to 3,269 insureds in the total amount of $4,317,838.00. (*Id.* at 2). Judge Byron rejected State Farm's argument for two reasons: (1) the putative class members had not yet been made whole because these payments did not include prejudgment interest or attorney's fees; and (2) there were doubts as to the completeness of the remediation process, and it appeared that State Farm "engaged in this unusual practice of remediating claims after the filing of the lawsuit to circumvent the normal class action mechanisms." (*Id.* at 4-5).

State Farm sought to stay all further proceedings pending an interlocutory appeal under Federal Rule of Civil Procedure 23(f). (Docs. 185-86). Both the motion to stay and the petition for interlocutory appeal were denied. (Docs. 190-91). On August 30, 2019, Judge Byron approved Mr. Sos's proposed class notice (Doc. 194), and notice was provided to the class on or about November 15, 2019. (Docs. 197-98). State Farm subsequently – and unsuccessfully – moved to decertify the class, reiterating its prior arguments concerning the impact its remediation process had on class certification. (Docs. 201, 213).

Mr. Sos also moved for summary judgment on the issues of liability and measure of damages for the class claims. (Doc. 203). On July 8, 2020, Judge Byron granted Mr. Sos's motion for summary judgment and, for a third time, rejected State Farm's arguments that the class claims were moot because it had engaged in remediation with all putative class members. (Doc. 214, at 11-16).

In so holding, Judge Byron specifically noted that "State Farms' continuing attempts to evade the insureds' valid claims for prejudgment interest – and moot this entire case – are not well taken." (*Id.* at 15).   Judge Byron held that each class member is entitled to damages in the amount of six percent of the value of his or her total loss vehicle, plus applicable local tax, $75.25 in title transfer fees, and prejudgment interest.   (*Id.* at 22).   These payments were to be offset by any amounts previously paid through remediation.   (*Id.*).   Judge Bryon also determined that Mr. Sos and the Florida Class are entitled to an award of attorney's fees under Fla. Stat. § 627.428.   (*Id.* at 16-22). Judge Byron referred the issue of calculating each individual class member's damages, as well as the quantification of the amount of attorney's fees to be awarded, to the undersigned.   (*Id.* at 22; *see also* Doc. 218).

Mr. Sos filed a proposed final judgment listing each class member's individual damages on August 28, 2020.   (Doc. 222).   State Farm did not object to the form of judgment, or to the accuracy of the individual damages calculations, but affirmatively reserved all rights on appeal related to summary judgment, final judgment, class certification, and any other orders.   (*Id.*).

That same day, Mr. Sos also filed his verified motion for attorneys' fees and proposed bill of costs, through which Mr. Sos seeks an award of $4,415,351.00 in fees and $11,235.43 in costs. (Docs. 223, 224).   State Farm filed its response in opposition to the motion for fees on October 16, 2020 (Doc. 231), and with leave of Court, Mr. Sos filed a reply (Doc. 234) and State Farm filed a sur-reply (Doc. 238).[5]   Both the motion for fees and the bill of costs were referred to the undersigned, and after giving notice to all class members, I held a hearing on Mr. Sos's motion for

---

[5] Despite receiving two extensions of time, (Docs. 225-26; Docs. 229-30), State Farm did not file any objections or opposition to Mr. Sos's proposed bill of costs.

attorneys' fees on November 17, 2020.   (Docs. 227, 240, 242).   The motion for attorneys' fees is therefore fully briefed, and along with Mr. Sos's proposed bill of costs, both are ripe for disposition.

For the reasons discussed below, I will respectfully recommend that Mr. Sos's motion for fees be granted in part and denied in part, and that Mr. Sos's proposed bill of costs be taxed in Mr. Sos's favor in its entirety.

## II.      THE MOTION FOR ATTORNEYS' FEES

Mr. Sos is seeking attorney's fees in the amount of $1,766,140.40, representing a total of 2,710.65 hours of attorney time incurred by four attorneys, and 153.60 hours of paralegal time incurred by two paralegals.   (Doc. 223, at 25; Doc. 223-2 ¶¶ 78-80, Docs. 223-1, 223-3 through 223-6).   The requested attorney hourly rates range from $900.00 to $458.00, and the paralegal hourly rates range from $195.00 to $225.00.   (Doc. 223-5 ¶ 51).   Mr. Sos is also seeking a 2.5 contingency fee multiplier, bringing the total fees requested to $4,415.351.00.   (Doc. 223, at 25). In support of these requests, Mr. Sos has submitted his counsels' time records, declarations from his four counsel of record, and two expert declarations.   (Docs. 223-1 through 223-6).

In response, State Farm raises a host of challenges to both the hourly rates and the hours requested and argues that a contingency multiplier is not warranted for this case.   (Doc. 231). When all reductions are accounted for, State Farm contends that a reasonable award of attorney's fees is $521,206.50.   (*Id.* at 16).   To support this argument, State Farm has attached Mr. Sos's deposition, Mr. Sos's fee agreement with his counsel, and several letters from 2017 between State Farm's counsel and Mr. Sos's counsel, each of which relate to State Farm's attempts to remediate Mr. Sos's and the Florida Class members' claims.   (Docs. 231-2 through 231-7).   State Farm has not submitted any expert testimony or other evidence on the reasonableness of Mr. Sos's attorney's hourly rates, requested hours, or the application of a contingency multiplier.

A.      *The Applicable Law*

The parties agree that Florida law governs this breach of insurance contract action.   Under Florida law, an insured or beneficiary who prevails in a lawsuit against his or her insurer is entitled to "a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."   Fla. Stat. § 627.428(1).   *See also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").[6]   By virtue of the rulings in this case, it is clear that Mr. Sos and the Florida Class are prevailing parties in this case, and Judge Byron has previously ordered that Mr. Sos and the Florida Class be awarded attorney's fees.   (Docs. 159, 181, 213, 214).   *See also Ins. Co. v. N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992) ("If the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees."). The only remaining issue is the quantification of those fees.

Florida follows the federal lodestar approach to calculating the amount of fees to be awarded.[7]   *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (citing *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990), and *Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985)).   "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate."   *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).   In applying the lodestar analysis, the party seeking fees

---

[6] There is no dispute that all of the procedural requirements of Fed. R. Civ. P. 23(h)(1)-(4) have been satisfied.

[7] There is some discussion in the parties' briefs about whether the Florida lodestar or the federal lodestar should apply to Mr. Sos's fee application.   During the hearing, counsel for Mr. Sos and the Florida class confirmed that the standards are the same.   (Doc. 242, at 73-74).   Thus, I will rely upon both Florida and federal jurisprudence throughout this report.

has the burden of establishing that the hourly rate and hours expended are reasonable.  *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  The fee applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and support the number of hours worked and the rate sought.  *See, e.g.*, *Hensley*, 461 U.S. at 433.  In addition, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303 (citations omitted).  Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney.  *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990)).

With these legal standards in mind, I will first address the requested hourly rates, followed by the requested attorney hours, and then the contingency multiplier.

B.      *The Reasonableness of the Requested Hourly Rates*

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman*, 836 F.2d at 1299.  *See also Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).  The "relevant market" is "the place where the case is filed." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).  To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must produce "satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits."  *Norman*, 836 F.2d at 1299.  This requires "more than the affidavit of the attorney performing the work," and generally

includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

In determining an appropriate hourly rate, the Florida Supreme Court has held that courts should look to the following factors (the "*Rowe* factors"):   (1) the skill requisite to perform the legal service properly; (2) the likelihood that undertaking the case would preclude other employment; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; and   (7) the experience, reputation, and ability of the lawyers performing the services. *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1126 (Fla. 2017) (citing *Rowe*, 472 So. 2d at 1150).[8]   The Court may also rely on its own knowledge and experience of the prevailing market rate. *See Norman*, 836 F.2d at 1299-1300, 1303.   However, "[t]he going rate in the community is the most critical factor in setting the fee rate." *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, No. 6:10-cv-1445-Orl-22DAB, 2012 WL 695670, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Martin v. Univ. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990)).

### 1.     *The Attorneys*

Four attorneys represented Mr. Sos and the Florida Class in this case – two partners and two associates – each of whom have submitted a declaration in support of the requested fees.[9]   The first

---

[8] There are four other *Rowe* factors that are considered when determining an appropriate lodestar amount as a whole:   the time and labor required, the novelty and difficulty of the question involved, the results obtained, and whether the fee is fixed or contingent.   These factors are not considered, however, when determining the appropriate hourly rate. *See Joyce*, 228 So. 3d at 1126 & n.1.

[9] In each declaration, the attorneys present their credentials and experience, and discuss in detail their respective roles in the case, as well as the history of the litigation.   I find the attorneys' averments on these points to be both credible and persuasive evidence, particularly given that State Farm has not presented any evidence to refute them.   However, none of the attorneys opine as to

partner, Christopher Lynch, is a sole practitioner with nearly 40 years litigation experience, and extensive experience with insurance and class litigation claims.  (Doc. 223-1 ¶ 3 & p.6).   Mr. Lynch has been designated as class counsel in numerous class actions, including several pending within the Middle District of Florida and the Southern District of Florida.   Mr. Lynch avers that he actively contributed to the research, drafting, and editing that was done in the filings in this case, and that this case "demanded considerable time and effort" over the past three years.   (*Id.* ¶¶ 6-7).   However, he does not aver that he was precluded from taking on other employment during the litigation of this case.   Mr. Sos seeks an hourly rate of $900.00 for Mr. Lynch.   (Doc. 223, at 12).

The second partner, Edmund A. Normand, has been licensed to practice law in Florida since 1990 and is the sole shareholder/partner and founder of the law firm Normand PLLC.   (Doc. 223-2 ¶¶ 2, 8).   Mr. Normand has extensive experience with complex class action litigation specializing in the insurance industry and rental car industry and has been designated as lead class counsel in numerous class actions in the Middle District of Florida and Florida state courts.   (*Id.* ¶¶ 9, 10(a)–(g)).   He has also received several awards in the areas of consumer and personal injury litigation.   (*Id.*).   Mr. Normand avers that Mr. Sos approached him with this potential lawsuit, that Mr. Normand at all times served as lead counsel and "was responsible for overall strategy and direction of the case," and that he handled "investigation, discovery, and research," along with Mr. Lynch.   (Doc. 223-2 ¶¶ 3, 70-73, 75).   Last, Mr. Normand avers that due to the substantial time commitment required by this case, he declined "at least eight requests from other attorneys to litigate high-value cases [he] otherwise would have accepted."   (*Id.* ¶¶ 91-92).   Mr. Sos contends that a reasonable hourly rate for Mr. Normand is $800.00.   (Doc. 223, at 12).

---

whether the requested hourly rates are reasonable, perhaps in recognition of the fact that such averments would not be given much weight.  *See Norman*, 836 F.2d at 1299.

The two associates representing Mr. Sos in this action are Jacob Lawrence Phillips and Alex R. Couch. Both Mr. Phillips and Mr. Couch have been licensed to practice law in Florida since 2015, and both work with the Normand PLLC law firm. (Doc. 223-4; Doc. 223-6). Despite only less than six years in private practice, Mr. Phillips has become an experienced litigator; he is a member of all of the federal district courts in Florida, has been appointed class counsel in numerous state and federal certified class action lawsuits, and specializes in both class action and appellate litigation. (Doc. 223-4 ¶¶ 2-3; *see also* Doc. 223-2 ¶¶ 12-13). Mr. Phillips took on several key roles in this case; he was the attorney primarily responsible for (1) drafting discovery and communications with opposing counsel; (2) preparing and conducting expert depositions; and (3) researching and writing the class certification, interlocutory appeal, and summary judgment motions papers. (Doc. 223-2 ¶¶ 70-73; Doc. 223-4 ¶¶ 9-30). Mr. Phillips further avers that his work on this case "imposed significant time constraints particularly on [him]self and Mr. Lynch," which "precluded [him] from accepting other employment during the course of the litigation." (Doc. 223-4 ¶ 31). Specifically, Mr. Phillips turned down a "lucrative opportunity" to handle an appeal in the Sixth Circuit Court of Appeals, and an offer to be co-counsel in a Wisconsin class action. (*Id.*). Mr. Sos contends that a reasonable hourly rate for Mr. Phillips is $458.00. (Doc. 223, at 12).

Mr. Couch, on the other hand, has less experience with class actions; rather, his prior experience appears to be in the construction and IT industries, and he has previously litigated "other insurance and personal injury cases." (Doc. 223-6 ¶¶ 4, 7). With respect to class action litigation, Mr. Couch's experience is limited to the discovery stages. (*Id.* ¶ 5 ("I have dedicated myself to gaining discovery experience in complex class action cases in federal and state courts.")). In the present case, Mr. Couch's role was spreadsheet data analysis and discovery review, and he notes that he "was careful to spread as much of the workload as possible with paralegals and legal

assistants in order to concentrate on more difficult tasks." (*Id.* ¶¶ 8-9). Mr. Couch does not aver that his time spent on this case precluded him from working on other matters or retaining other clients. Mr. Sos claims that a reasonable hourly rate for Mr. Couch is also $458.00. (Doc. 223, at 12).

### 2.   *The Fees Expert*

Mr. Sos has also submitted the expert declaration of John Yanchunis, an attorney who has been admitted to practice in Florida since 1981. (Doc. 223-5). For the past 23 years, Mr. Yanchunis has specialized in the area of consumer class action litigation and has also represented insurance companies in various disputes. (*Id.* ¶¶ 1, 4-5). Mr. Yanchunis currently leads the National Consumer Class Action Department at Morgan & Morgan, a nationwide plaintiffs law firm, and has served as co-lead counsel in two of the largest class actions cases in the United States, as well as lead, co-lead, or liaison counsel in numerous Multi-District Litigation matters. (*Id.* ¶¶ 2, 4-6). He is AV rated by Martindale-Hubbell, is a frequent lecturer on class action litigation topics, and has previously testified as an expert on attorneys' fees in complex litigation and class actions in both state and federal court. (*Id.* ¶¶ 9-11).

Following his review of various pleadings, time sheets, and the declarations from Mr. Sos's counsel, Mr. Yanchunis opines that the hourly rates Mr. Sos seeks are reasonable given the skill required to litigate this case, the likelihood that the time spent on this case would preclude attorneys from taking on other employment, the amount involved and the result counsel obtained, and each attorneys' experience, reputation, and ability. (*Id.* ¶¶ 23-26, 30-39). Mr. Yanchunis avers that he is "personally aware" of Mr. Normand's experience, reputation in the community, and ability, and that Mr. Normand is "highly regarded as an excellent and skilled litigator" and "developed the reputation of being an excellent and experienced class action attorney." (*Id.* ¶ 37). Mr. Yanchunis

also avers that he is aware that Mr. Lynch "is known to be a very experienced and successful appellate attorney in the state." (*Id.*). However, Mr. Yanchunis candidly admits that he has "far less personal experience with Mr. Phillips," but opines that Mr. Phillips also possesses "excellent skill and ability." (*Id.*). Mr. Yanchunis expresses no opinion about the reputation, experience, or ability of Mr. Couch. (*Id.*).

Turning to the most important factor – whether the rates sought are customary in the relevant market (*i.e.*, the Central Florida area) – Mr. Yanchunis avers that he is personally familiar with the attorneys' fees charged in this locality in the context of class action and other complex litigation. (*Id.* ¶ 27). Mr. Yanchunis further avers that he relied upon the National Law Journal Billing Survey, Law 360, and the Laffey Matrix,[10] to assess whether the rates sought by Mr. Sos's counsel are customary in the relevant market. (*Id.*). Based on his review of these materials, Mr. Yanchunis opines that a "customary fee charged in this locality for complex litigation and class actions is based on the experience levels of lawyers seeking rates and rates of $950 an hour have been awarded. The customary fee for paralegal work in class litigation in this locality ranges from $150 to $250 per hour." (*Id.* ¶ 28). Mr. Yanchunis concludes, based on his experience and the Laffey Matrix, that the hourly rates of $900.00 for Mr. Lynch, $800.00 for Mr. Normand, and $458.00 for both Mr. Phillips and Mr. Couch, are "consistent with those charged for similar work in this locality." (*Id.* ¶ 29 & n.2; *see also id.* ¶¶ 49-51). In reaching these conclusions, Mr. Yanchunis does not cite to

---

[10] The National Law Journal Billing Survey collects, complies, and publishes hourly rates of lawyers based on years of experience. (*Id.* ¶ 27). Law360 reports on class litigation cases and related topics, including fee motions for class counsel. (*Id.*). Both of these sources address hourly rates nationwide. Similarly, "[w]hile the Laffey Matrix indicates rates for civil attorneys trying federal cases in the United States, it does not necessarily reflect the prevailing market rates in Florida for the particular services performed in this case." *Thomas v. Arm WNY, LLC*, No. 3:14-cv-360-J-39MCR, 2014 WL 6871654, at *8 (M.D. Fla. Dec. 3, 2014) (citing *Renninger v. Phillips & Cohen Assocs., Ltd.*, No. 8:10-cv-5-T-33EAJ, 2010 WL 3259417, at *2 (M.D. Fla. Aug. 18, 2010)).

any decisions from the Central Florida area where such rates were awarded, nor does he provide any further details to support his opinions.   To the contrary, during his October 1, 2020 deposition, Mr. Yanchunis admitted that he does not know "one way or the other" what hourly rates judges in this District have awarded to partners in insurance cases.   (Doc. 234-1, at 40).

Mr. Yanchunis is no doubt a highly qualified and impressive attorney, however I find that his opinions regarding the hourly rates are not entitled to great weight for several reasons.   First, he provides no details (such as citation to any case authority) where hourly rates such as those sought here have been awarded in the Middle District of Florida for class action litigation.   And when specifically asked what hourly rates have been awarded within the Middle District of Florida in insurance cases, Mr. Yanchunis was unable to provide an answer.   (Doc. 234-1, at 40).   *See Celotex Corp. v. Aetna Life Ins. Co.*, No. 8:05-cv-1465-T-27TGW, 2007 WL 9723629, at *2 (M.D. Fla. Aug. 30, 2007) (rejecting expert's opinion on a customary hourly rate where the expert did not "reference other cases in which an award of attorney's fees based on that hourly rate has been made").

Second, and contrary to Mr. Sos's assertions in his reply brief, it is clear that in reaching his conclusions Mr. Yanchunis relied, in large part, on national references, including the National Law Journal Billing Survey, Law360, and the Laffey Matrix.   (*See* Doc. 223-5, at ¶¶ 27-29; Doc. 234-1, at 17-33).   These national references are not considered competent and/or relevant evidence of the prevailing market rates in the Central Florida area, and therefore I find Attorney Yanchunis's reliance on them unavailing.   *See Taylor v. C&L Towing and Transport, LLC*, No. 6:17-cv-1929-Orl-40GJK, 2019 WL 10984161, at *3 (M.D. Fla. Oct. 17, 2019) (declining to rely upon the Laffey Matrix as competent evidence of a reasonable hourly rate for counsel in the Middle District of Florida), *report and recommendation adopted*, 2020 WL 6393850 (M.D. Fla. Jan. 15, 2020);

*Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc.*, No. 2:17-cv-292-FtM-38MRM, 2019 WL 2078730, at *1 (M.D. Fla. Apr. 23, 2019) (collecting cases in the Middle District finding that the Laffey Matrix is not relevant evidence of the prevailing market rate).   Third, Mr. Yanchunis was unable to speak to the experience, skill, or reputation of either Mr. Phillips or Mr. Couch that would justify such a high hourly rate.   And last, Mr. Yanchunis clearly states that he also relied on the amount involved *and* the results obtained as factors in concluding that the requested hourly rates are reasonable.   (Doc. 223-5 ¶¶ 32-35).   However, the Florida Supreme Court has expressly held that the results obtained is not a factor relevant to a determination of a reasonable hourly rate.   *Joyce*, 228 So. 3d at 1126.

### 3.      Other Evidence

In further support of the hourly rates, Mr. Sos references two decisions from this District: *Jackson v. Wendy's Int'l LLC*, No. 6:16-cv-210-Orl-40DAB (M.D. Fla. 2019), and *Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443-Orl-41GJK (M.D. Fla. 2018).   (Doc. 223, at 14-15).   Mr. Sos contends that in these cases, both of which were class actions where Mr. Yanchunis was lead counsel, the Court approved hourly rates of $950.00 for partners, and $717.00 and $575.00 for associates.   *See Jackson*, 6:16-cv-210, Docs. 153, 157; *Preman*, 6:16-cv-443, Docs. 68-69, 71. However, both cases were resolved via settlement agreements, the motions for attorneys' fees were unopposed, and there is no discussion or analysis with respect to whether the hourly rates were, in fact, both reasonable and customary for the relevant legal market.   *See id*.   As such, I find these decisions offer little, if any, support for the requested rates.   *See Rizzo-Alderson v. Tawfik*, No. 5:17-cv-312-Oc-37PRL, 2019 WL 3324298, at *3 (M.D. Fla. July 1, 2019) (citations omitted) ("Plaintiffs request an hourly rate of $500.00, without offering any 'specific and detailed evidence' concerning prevailing market rates in Ocala, Florida.   Instead, Plaintiffs' counsel points to two

Middle District cases in which he was previously awarded $500.00 per hour.   However, in both of those cases, the Court approved unopposed settlement agreements, which included attorney's fees, without any discussion of the requested hourly rate.   Accordingly, they offer little, if any, support for the requested rate."); *see also Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1312 (M.D. Fla. 2011) (finding "neither satisfactory nor persuasive" citation to a class action attorney's fee award where there was "no discussion of either the hourly rates requested or the prevailing market rate").

During oral argument and in his reply brief, counsel for Mr. Sos referenced two additional class action cases, both of which are also mentioned in his attorneys' declarations.   (Doc. 242, at 13-18; Doc. 234, at 6, n.6; *see also* Doc. 223-1 ¶ 3; Doc. 223-2 ¶ 10).   The first, *Cook v. GEICO General Ins. Co., et al.*, No. 6:17-cv-891-Orl-40KRS and 6:17-cv-1755-Orl-40DCI, was a common fund case, which was also resolved via a negotiated settlement agreement, and the final order and judgment was drafted by the parties themselves, with no objection to any requested attorneys' fees. (Docs. 213, 215).   Thus, in the absence of any detailed analysis by the Court, this case also provides little support for the requested hourly rates.

The second decision, *Roth v. GEICO General Insurance Co.*, No. 16-62942-Civ-DIMITROULEAS/SNOW, 2019 U.S. Dist. LEXIS 197778 (S.D. Fla. Nov. 13, 2019), a class action out of the Southern District of Florida, merits further discussion.   *Roth* involved nearly identical issues to the present case, and the same counsel litigated both actions.   *Id.*   Similar to this case, the plaintiffs prevailed both on class certification and summary judgment motions.   *Id.* at *4.   The district court awarded hourly rates ranging from $390.00 to $750.00 per hour.   *Id.* at *25-27.

I do not find *Roth* persuasive as to what hourly rates are reasonable in this case.   First, it is unclear whether *Roth* remains good law.   The judgment awarding fees in *Roth* was subsequently

amended, and later vacated. *See Roth v. Geico Gen. Ins. Co.*, No. 16-62942-Civ-DIMITROULEAS, 2020 U.S. Dist. LEXIS 86277, at *3 (S.D. Fla. May 4, 2020); *Roth v. Geico Gen. Ins. Co.*, No. 16-62942-Civ-WPD, 2020 U.S. Dist. LEXIS 169165, at *2-3 (S.D. Fla. Aug. 27, 2020).   And it appears that the parties may have settled the case on appeal.   *See Roth v. Geico Gen. Ins. Co.*, No. 19-11652-HH, 2020 WL 6301350 (11th Cir. Aug. 27, 2020).   Second, *Roth* clearly addressed the customary hourly rates awarded in the Southern District of Florida.   *See* 2019 U.S. Dist. LEXIS 197778, at *26-27.   However, the relevant market is the place where the case was filed – here, the Middle District of Florida – and reasonable hourly rates for professionals practicing in the Southern District of Florida "generally exceed reasonable hourly rates in central Florida."   *See Hill v. Allianz Life Ins. Co. of North America*, No. 6:14-cv-950-Orl-41KRS, 2018 WL 6983647, at *3 (M.D. Fla. Dec. 10, 2018).[11]

### 4.   *Recommended Hourly Rates*

In sum, I am faced with a scenario where Mr. Sos has not presented any competent, persuasive evidence that the rates he requests are customary and reasonable in the Central Florida market for attorneys with similar experience, performing similar work.   Nor has Mr. Sos pointed to any decisional authority where such high rates have been awarded in Central Florida (absent a

---

[11] During the hearing, Mr. Sos's counsel argued that the Court should award a rate similar to those awarded across the nation, focusing on the fact that this was a complex class action. However, this is, and always has been, a *Florida* class action, with local attorneys out of Orlando (and one out of South Florida) representing Mr. Sos and the class, and Mr. Sos has not presented any competent evidence or authority that would support the high hourly rates he seeks under such circumstances.   Nor has Mr. Sos presented competent evidence that without an award of such high rates, he would have been unable to find an attorney in the Central Florida area willing to take his case.   *See Barnes*, 168 F.3d at 437 ("A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate.   And 'market rate' means the hourly rate charged in the local legal market by someone with expertise in the area who is willing and able to take the case, if such an attorney exists.").

settlement agreement).   And State Farm has similarly failed to provide any evidence, as the decisions State Farm cites to each involved relatively straight forward "run of the mill" insurance disputes, unlike the case at hand.   I too have been unable to locate any authority where a court within the relevant legal market, and applying the lodestar analysis, found rates of $800-$900 an hour for partners and $458.00 for associates with less than six years' experience to be reasonable, even in complex or class action cases.   I will therefore rely upon my own experience and knowledge in this area to determine an appropriate hourly rate.   *See Norman*, 836 F.2d at 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees . . . ." (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).

Based on my experience and knowledge, I will recommend that a reasonable hourly rate for the two partners, Mr. Lynch and Mr. Normand, is $550.00, a reasonable hourly rate for Mr. Phillips is $350.00, and a reasonable hourly rate for Mr. Couch is $250.00.   While these rates are on the high end for the Central Florida market, I find that, when accounting for all of the relevant *Rowe* factors, the rates are both reasonable and appropriate.   The skill necessary to litigate this case to its conclusion is clearly high – despite State Farm's attempts to cast this case as a "straightforward" and "simple" matter, this was (and is) a complex class action, involving novel areas of law, and was heavily litigated.   Multiple rounds of class certification briefing and summary judgment briefing, as well as extensive class, fact, and expert discovery, was necessary, and a skilled set of litigators was required.   This was not a "run of the mill" insurance dispute.

Mr. Sos has also presented unrebutted evidence that his attorneys expended significant time on this matter during the pre-trial stages, including the aforementioned rounds of briefing, and at least two of his attorneys were forced to decline other lucrative employment opportunities in order

to devote sufficient time to the present case.   In addition, Mr. Lynch is a sole practitioner and the Normand PLLC firm is a small firm comprised of only a handful of attorneys – litigating a complex class action will necessarily result in the preclusion of other employment to some extent.[12]   And while each individual class member may have received a relatively small award, the amount in controversy overall was quite substantial, including future benefits should State Farm change its business rule (which it did).   As to the time limitations imposed, as previously mentioned, this was a hotly contested case, with dozens of discovery and filing deadlines.   The nature of the relationship between Mr. Sos and his attorneys also weighs in favor of a higher hourly rate – this is not a situation where Mr. Sos was a long-standing client who simply called up his attorneys and referred another matter to them.   *Cf. George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1288 (M.D. Fla. 2000) ("[T]he reduced rate which attorneys generally award to regular and ongoing clients is not applicable in this case.").   Further, Mr. Sos has presented ample – and uncontested – evidence concerning the high level of skill and abilities possessed by Mr. Lynch, Mr. Normand, and Mr. Phillips, as well as Mr. Lynch's and Mr. Normand's experience and reputation in the community.[13]

I further find that these recommended hourly rates are not outside the realm of what has been awarded for attorneys with similar levels of experience in complex insurance litigation and/or class actions in the Central Florida area.   *See Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-1043-Orl-

---

[12] I note, as does State Farm, that since the inception of this case, Mr. Sos's attorneys have filed several other cases in Florida, several of which involved similar factual and legal issues to the present case.   (*See* Doc. 231, at 11-12; Doc. 232-2 ¶ 10).   The fact that attorneys were able to litigate similar causes of action does not take away from the fact that at least some of Mr. Sos's attorneys turned down other lucrative clients in order to litigate this case.

[13] While I have no doubt that Mr. Couch is an excellent litigator, Mr. Sos has not provided the same level of evidence to support awarding Mr. Couch a rate above $250.00 when the *Rowe* factors are considered.   Moreover, and unlike Mr. Phillips, Mr. Couch's role in this case was limited, there is no evidence that he was precluded from working on other matters, his experience in class action litigation is also limited, and there is a dearth of evidence concerning his reputation in the community.

40TBS, 2019 WL 2223773, at *3-4 (M.D. Fla. May 23, 2019) (awarding hourly rate of $450.00 for attorneys with 19, 24, and 27 years of experience in a Fair Debt Collection Practices Act class action because the "time and labor required, the novelty and difficulty of the questions, and the skill required to perform the legal service properly are all factors that support a rate on the higher end"); *Inlet Marina Villas Condo. Ass'n, Inc. v. United Specialty Ins. Co.*, No. 6:17-cv-1337-Orl-40DCI, 2019 WL 2720219, at *3-4 (M.D. Fla. June 13, 2019) (awarding hourly rates of $450, $350, and $250 for attorneys litigating insurance disputes in the Orlando Division); *Diperna v. GEICO Gen. Ins. Co.*, No. 6:12-cv-687-Orl-36KRS, 2016 WL 7246094, at *4 (M.D. Fla. June 27, 2016 (awarding hourly rates of $550, $450, $400, and $225 for attorneys litigating an insurance dispute); *Transp. Alliance Bank, Inc. v. Sky Limits, Inc.*, No. 6:19-cv-53-Orl-31GJK, 2019 WL 7332775, at *2-3 (M.D. Fla. Dec. 13, 2019) (awarding rate of $290.00 per hour to an associate with five years' litigation experience); *Novak v. Safeco Ins. Co. of Ill.*, No. 6:15-cv-215-Orl-41DCI, 2016 WL 8849018, at *6-7 (M.D. Fla. Nov. 18, 2016) (awarding rates of $225.00 and $235.00 per hour for associates working on an insurance case). *See also Diagnostic Leasing, Inc. v. Associated Indemnity Corp.*, No. 8:16-cv-958-T-36TGW, 2020 WL 4582729, at *4 (M.D. Fla. Aug. 10, 2020) (noting that hourly rates between $450-$550 per hour are "perhaps appropriate in highly complex litigation matters").

For these reasons, I will therefore recommend an hourly rate of $550.00 for Mr. Lynch, $550.00 for Mr. Normand, $350.00 for Mr. Phillips, and $250.00 for Mr. Couch.

### 5.     *The Paralegal Hourly Rates*

Two paralegals, both from the Normand PLLC law firm, worked on this case:  Janna Sherwood and Michelle Montecalvo.  Mr. Sos seeks an hourly rate of $225.00 for Ms. Sherwood and $195.00 for Ms. Montecalvo.  However, Mr. Sos has not provided any evidence concerning

either paralegal's experience, skill, or role in this case.[14]   Nor has Mr. Sos provided any evidence as to whether such rates are customary in the Central Florida market.   Rather, Mr. Sos points to Mr. Yanchunis, who simply makes two conclusory assertions in his declaration:   (1) that the customary fee for paralegal work in class actions in this locality is between $150.00 and $250.00 per hour; and (2) that the requested rates "are reasonable and necessary for this matter."   (Doc. 223-5 ¶¶ 28, 51). At his deposition, Mr. Yanchunis stated that he based this opinion on the Laffey Matrix, as well as his review of what his own firm charges for paralegal services, "and what I've seen around the country."   (Doc. 234-1, at 27, 31).   Thus, for the same reasons discussed above, I give Mr. Yanchunis's opinion concerning the paralegal hourly rates little weight.   Mr. Sos also relies on the same authority cited above, which is equally unpersuasive here and does not constitute competent, reliable evidence of customary paralegal rates in the relevant market.

I will therefore again rely upon my own knowledge and experience, as well as the rates customarily awarded to paralegals in the Central Florida area, to recommend an appropriate reasonable hourly rate for the two paralegals.   Given that I have no evidence concerning their experience, or any of the other *Rowe* factors as they pertain to the paralegals, I do not find it appropriate to award an exorbitantly high hourly rate.   Nor does the record provide me with any support for awarding each paralegal a different rate.   Rather, I will recommend that a reasonable and appropriate hourly rate for both paralegals is $150.00.   *See Sanchez v. M&F, Inc., LLC*, No. 6:17-cv-1752-Orl-22LRH, 2020 WL 4671144, at *5 (M.D. Fla. Aug. 12, 2020) (awarding $150.00/hour under the lodestar for a paralegal in Orlando where evidence was presented as to the

---

[14]   During the hearing, I questioned Mr. Normand about this lack of evidence, to which he replied that Ms. Sherwood has worked as a paralegal for 35 years, and that Ms. Montecalvo graduated from Duke and is a certified paralegal.   (Doc. 242, at 16).   Other than these statements, Mr. Sos has presented nothing to support the requested paralegal rates.

paralegal's experience); *Defronzo v. Liberty Mut. Ins. Co.*, No. 6:19-cv-244-Orl-78LRH, 2020 WL 5881702, at *8-9 (M.D. Fla. July 28, 2020), *report and recommendation adopted*, WL 5881595 (M.D. Fla. Aug. 14, 2020) (finding $100.00/hour reasonable for a paralegal in Orlando); *Rabco Corp. v. Steel Plaza, LLC*, No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5188601, at *10 (M.D. Fla. July 29, 2019), *report and recommendation adopted*, 2019 WL 5176284 (M.D. Fla. Aug. 13, 2019) (awarding $150.00 per hour rate for paralegal in complex commercial litigation case); *Hill*, 2018 WL 6983647, at *4 (awarding $180.00 per hour rate to paralegal where evidence was presented establishing the paralegal's skill and years of experience).

### C.   The Reasonableness of the Requested Billable Hours

The second half of the lodestar analysis requires the Court to calculate the number of hours reasonably expended on the litigation.  Counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434. In demonstrating that the requested hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303.  Inadequate documentation may reduce the fees requested.  *Hensley*, 461 U.S. at 433; *Rowe*, 472 So. 2d at 1150.  The court may also reduce hours it finds excessive or unnecessary.  *Rowe*, 472 So. 2d at 1150.

After the moving party provides sufficient documentation to support an attorney's fees award, the burden shifts to the opposing party to submit objections and proof that are specific and reasonably precise.  *Barnes*, 168 F.3d at 428 (citing *Norman*, 836 F.2d at 1301).  A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal.  *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp.

2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387

(11th Cir. 1997)).   Conclusory objections and generalized statements are not given much weight.

*Gray*, 125 F.3d at 1389.   Nevertheless, "[i]f fee applicants do not exercise billing judgment, courts

are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out

those that are excessive, redundant, or otherwise unnecessary."   *Barnes*, 168 F.3d at 428 (internal

quotation marks omitted).   When a court finds the number of hours billed to be unreasonably high,

a court has two choices:   it may review each entry and deduct the unreasonable time, or it may

reduce the number of hours by an across-the-board cut.   *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348,

1350 (11th Cir. 2008).

Mr. Sos is seeking recovery for a total of 2,864.25 attorney and paralegal hours, broken down

as follows:

| | |
|---|---|
| Edmund Normand | 829.70 |
| Christopher Lynch | 486.70 |
| Jacob Phillips | 1,225.70 |
| Alex Couch | 168.55 |
| Michelle Montecalvo | 61.20 |
| Janna Sherwood | 92.40 |

(Doc. 223-1 ¶ 7; Doc. 223-2 ¶¶ 78-80; Doc. 223-5 ¶ 51).

In support, Mr. Sos again references each of his attorney's declarations, as well as the

declaration from his expert, Mr. Yanchunis.   Mr. Sos has also submitted time records for each

attorney and paralegal.   (Docs. 223-1; 223-2).

Each of Mr. Sos's attorneys detail in their respective declarations the unique and complex

nature of this litigation, including the extensive discovery, multiple rounds of class certification and

summary judgment briefing (among other motions practice), and the reasons why this case extended for over three years.   (Docs. 223-1, 223-2, 223-4, and 223-6).   Specifically, the attorneys note that State Farm vigorously defended this case, and that State Farm attempted to obtain a judgment in its favor through its motions practice, while simultaneously attempting to extinguish the litigation through its continued remediation efforts – efforts which Judge Byron repeatedly found to be unavailing.   In other words, Mr. Sos's attorneys were required to litigate on two competing fronts, which was time consuming, to say the least.

In addition, it is clear from the declarations that the attorneys each played their own separate role in the litigation, and that any duplication was necessary and reasonable.   For example, Mr. Lynch contributed to the research, drafting, and editing of filings in the case.   (Doc. 223-1 ¶ 6). Mr. Normand was involved in the initial research to determine whether to pursue this litigation, overall case strategy, client communications, responses to discovery requests, fact witness depositions, and trial preparation.   (Doc. 223-2 ¶¶ 19-41, 70-76).   Mr. Phillips also assisted in preparing discovery responses, but had primary responsibility over expert depositions and briefing the numerous motions and related papers filed in this case.   (Doc. 223-2 ¶¶ 70-73; Doc. 223-4 ¶¶ 9-29).   And Mr. Couch's primary duties focused on spreadsheet data analysis and discovery review. (Doc. 223-6 ¶ 8).   Each of these attorneys averred that they were careful not to duplicate efforts and to pass work on to paralegals and legal assistants whenever appropriate.   (*See, e.g.* Docs. 223-2 ¶ 68; 223-6 ¶ 9).   To that end, all four attorneys have already reduced their hours to account for any duplication, for any unsuccessful claims (such as the national class claims and claims for nontaxable costs and an incentive award), for any research and drafting of motions that were not filed, and "in an exercise of billing judgment."   (*See* Doc. 223-1 ¶ 7 (Mr. Lynch reduced his time by 45.6 hours); Doc. 223-2 ¶ 78 (Mr. Normand reduced his time by 15.2 hours); Doc. 223-4 ¶ 4 (Mr. Phillips reduced

his time by 79.5 hours); and Doc. 223-6 ¶ 12 (Mr. Couch removed several hours of arguably duplicative time spent on discovery and case analysis, as well as 5.0 hours for reviewing court orders and filings)).

The declaration and deposition testimony of Mr. Sos's expert, Mr. Yanchunis, provides further support for the reasonableness of the requested hours.   Mr. Yanchunis reiterates the lengthy history of this case, and opines that State Farm prolonged the litigation through its defense tactics. (Doc. 223-5 ¶¶ 41-42).   Upon review of the time sheets and case history, Mr. Yanchunis opines that "the hours expended by counsel were necessary and reasonable to litigate this case."   (*Id.* ¶ 43)

State Farm does not present any expert testimony or other evidence in response.   Instead, State Farm raises several objections – some general and some specific – in an attempt to reduce the hours requested.   I will address each objection in turn.

### 1.   *The General Objections*

State Farm spends the majority of its opposition arguing that this was both a straight-forward, simple insurance dispute, and that Mr. Sos's attorneys unnecessarily prolonged the litigation by refusing to accept State Farms' repeated offers of payment (*i.e.*, the remediation process).   (Doc. 231, at 3-7).   I have previously discussed, at length, the complexity of this case, and continue to find State Farm's contentions that this was, at bottom, a "run of the mill" case to be unpersuasive. Moreover, State Farm has not rebutted the fact that at the time this case was filed, the legal issues at play remained undecided throughout the country, and there was no guarantee that Mr. Sos or the class would have ever received any payments absent the litigation.[15]   (*See* Doc. 214, at 19-20).

---

[15] At the hearing, counsel for State Farm first asserted that State Farm would have discovered what he classified as a "computer error" and would have eventually paid the class members, but candidly admitted that such an assertion was "speculation from both sides."   In addition, counsel admitted that the filing of this lawsuit at minimum "expedite[d] State Farm discovering that problem."   (Doc. 242, at 43).   I further note that Judge Byron previously rejected

As to State Farm's argument that it was Mr. Sos and his attorneys who dragged out this litigation by not accepting the offered payments, that argument is clearly belied by the record in this case. [16]   This was a fiercely litigated action, and State Farm itself filed numerous dispositive motions, including seeking interlocutory relief from the Court of Appeals.   Moreover, Judge Byron has repeatedly held that State Farm's remediation efforts did not resolve this case both because the payments did not include prejudgment interest or attorneys' fees, and because it was unclear that State Farm's efforts were accurate and complete.   Rather, Judge Byron found State Farm's conduct to be an attempt to evade class certification, as well as a continuing attempt to evade valid claims for prejudgment interest, and stated that State Farm's arguments were "not well taken."   (*See* Doc. 159, at 5; Doc. 181, at 4-5; Doc. 214, at 11-16).[17]

---

State Farm's contention that it would have paid all insureds.   (Doc. 214, at 13, n.10 ("State Farm withheld contractually mandated payments from the class members *for years* and only surrendered them after Anthony Sos initiated a class action lawsuit for their recovery.") (emphasis in original)).

[16] State Farm also attempts to depict Mr. Sos's attorneys as poor fiduciaries for the class, who were out for themselves.   State Farm points to several stages of the litigation – all of which have to do with State Farm's attempts at remediation – as proof of the attorneys' alleged self-interest. What State Farm ignores, however, is that litigation continued in spite of the remediation attempts, thus fees continued to accrue.   State Farm's emphasis on the fact that Mr. Sos's attorneys filed a charging lien in this case is equally misplaced.   As Judge Byron noted, a charging lien simply put State Farm on notice that even if it paid off all of the potential class members, State Farm would nonetheless be bound to pay the attorneys.   (Doc. 181, at 15 ("Notably, counsel filed the charging lien after State Farm indicated they would proceed with the remediation on its own volition and outside of court supervision.")).

[17] I also note that State Farm's own argument can readily be used against it.   If State Farm wished to resolve this case sooner, it simply could have agreed to pay Mr. Sos and each class member the entire amount they were due – including prejudgment interest and attorneys' fees.   But State Farm did not select that route, instead State Farm chose the path of *most* resistance, and continued to fight this case through to the end – and it intends to continue to do so through appeal. State Farm had every right to select this course of action, but Mr. Sos and his attorneys should not be penalized for State Farm's litigation strategy.   *See State Farm Fire & Cas. Co. v. Palma*, 555 So. 2d 836, 837 (Fla. 1990) ("Having chosen to stand and fight over this charge, State Farm, of course, made a business judgment for which it should have known a day of reckoning would come should it lose in the end."); *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir.

State Farm next argues that Mr. Sos's attorneys can only recover for fees related to Mr. Sos's individual claim, and not for any class litigation.   (Doc. 231, at 8-9).   State Farm contends that "the State Farm insured who received payments were not part of a certified class at the time of the remediation and were not required to 'contest valid claims' in order to obtain the amounts sought." (*Id.* at 8).   As such, State Farm categorizes the class claims as "unnecessary" and therefore attorneys' fees cannot be awarded under Fla. Stat. § 627.428.   (*Id.* (citing *Travelers of Fla. v. Stormont*, 43 So. 3d 941, 944 (Fla. 3d Dist. Ct. App. 2010))).   This exact argument was raised during the second round of summary judgment proceedings and was expressly rejected by Judge Byron.   (Doc. 214, at 16-19).   Even though Judge Byron's rulings are not the law of the case, *see* Doc. 214, at 5-6 (citing *Villeda Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 578 F.3d 1283, 1289 (11th Cir. 2009)), State Farm has not presented any new argument or evidence that would suggest a revisit of Judge Byron's well-reasoned analysis is required.   Judge Byron's rulings stand, and there is no need to discuss this argument further.

State Farm raises two more overarching objections to the requested attorney and paralegal hours – that the time sheets are replete with improper block billing entries,[18] and that many of the entries are indecipherable, contain no descriptions, and/or consist of what appear to be internal notes

---

1980))); *Royal Bahamian Ass'n., Inc. v. QBE Ins. Corp.*, No. 10-21511-CIV-MORENO/GOODMAN, 2011 WL 13220459, at *8 (S.D. Fla. May 18, 2011) (rejecting blanket objection to the reasonableness of the requested attorney hours in a "fiercely litigated" insurance dispute, and noting "the rule that a defendant 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" (quoting *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003))).

[18] Generally, "[b]lock billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task."   *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 8:09-cv-2465-T-33AEP, 2012 WL 2226441, at *4 (M.D. Fla. June 15, 2012) (quoting *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012).   The problem with block billing is that it results in "imprecision" in an attorney's records, "a 'problem' for which the opponent should not be 'penalized.'"   *Ceres*, 476 F. App'x at 203 (citing *Barnes*, 168 F. 3d at 429).

- 27 -

and abbreviations.   (Doc. 231, at 14).   Based on these alleged deficiencies, State Farm seeks a 20% across the board reduction of all hours charged by all four attorneys and both paralegals.   (*Id.* at 15 (citing *Ruderman ex rel. Schwartz v. Washington Nat'l Ins. Corp.*, 465 F. App'x 880, 881 (11th Cir. 2012)).

In his reply, Mr. Sos argues that such a reduction would be "facially improper," because State Farm has not made any specific objections or provided any detailed analysis to support the requested reduction.   (Doc. 234, at 8).   Just as Mr. Sos is required to provide evidence sufficient to determine that the hours spent in litigation are reasonable, Mr. Sos contends that any corresponding objections must be "voiced with a similar exactitude," which State Farm has failed to do.   (*Id.*   (quoting *Jones v. Grady Cnty.*, No. 1:13-CV-156(WLS), 2015 WL 5270487, at *3 (M.D. Ga. Sept. 9, 2015))).

The entirety of State Farm's objections on the basis of block billing and indecipherability are succinct, to say the least:

> Second, many of the time entries are block billed, particularly Mr. Normand's time which often encompasses several distinct tasks.   This makes distinguishing potentially recoverable and barred entries impossible and is a "failure to satisfy" Counsel's burden.   *Sanford v. Omni Hotels Mgmt. Corp.*, No. 3:16-cv-1578-J-34PDB, 2020 U.S. Dist. LEXIS 162109, at *40-42 (M.D. Fla. Aug. 19, 2020).
>
> Third, a number of the entries are indecipherable, have no time description, and appear to be notes to secretaries.    For example, Mr. Normand and Mr. Lynch's entries often include the entire text of an ECF notice without any description, while Mr. Couch's entries have the description almost entirely cut off (and they are overwhelmingly time that Mr. Couch spent reading filings).   These are inappropriate as well.   *See Travelers Home & Marine Ins. Co. v. Calhoun*, No. 5:13-cv-251-Oc-22PRL, 2014 WL 1328968, at *8-9 (M.D. Fla. Apr. 2, 2014) (eliminating entries that did not include sufficient particularity to allow the court to determine whether the time expended was reasonable).

(Doc. 231, at 14-15).

With respect to block billing, State Farm points to a single example, a January 6, 2018 entry from Mr. Normand for 1.6 hours. (*Id.* at 14, n.5). With respect to indecipherability, State Farm provides no examples whatsoever. And because the time records are voluminous (they exceed 350 pages), State Farm appears to be arguing that it is not required to further hone or specify its objections.

State Farm is incorrect. The Eleventh Circuit has held, in the context of conducting a lodestar analysis, that *courts* " 'need not engage in an hour-by-hour analysis' when 'the fee motion and supporting documents are so voluminous' that 'an hour-by-hour review is simply impracticable and a waste of *judicial resources*.'" *In re Home Depot Inc.*, 931 F.3d 1065, 1089 (11th Cir. 2019) (quoting *Loranger*, 10 F.3d at 783 (emphasis supplied)). However, this does not erase the obligation of the *fee opponent* to make specific objections. *See Gray*, 125 F.3d at 1389 (conclusory objections and generalized statements are not given much weight in determining reasonable hours under the lodestar); *Scelta*, 203 F. Supp. 2d at 1333 (a failure to explain with specificity the particular hours claimed to be unnecessary or redundant is "generally fatal"). And here, State Farm has not met its burden.

On the issue of block billing, State Farm makes a generalized and conclusory statement about all of the attorney's hours, but only points to a single time entry from Mr. Normand, nothing more. The failure to object to any other hours or provide any further examples of purported block billing is "fatal" to State Farm's objection on this basis, and most certainly does not support an across the board 20% reduction. Moreover, a cursory review of Mr. Normand's time records belies State Farm's claim of block billing. To be sure, Mr. Normand frequently lists multiple tasks in the same entry. However, "the mere fact that an attorney includes more than one task in a single billing entry is not, in itself, evidence of block-billing." *Franklin v. Hartford Life Ins. Co.*, No. 8:07-cv-1400-

T-23MAP, 2010 WL 916682, at *3 (M.D. Fla. Mar. 10, 2010).   *See also Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, No. 8:08-cv-1189-T-17AEP, 2013 WL 393916, at *4 (M.D. Fla. Jan. 8, 2013), *report and recommendation adopted*, 2013 WL 394014 (M.D. Fla. Jan. 31, 2013) (citation omitted) ("Including more than one task in a single billing entry does not, in itself, constitute inappropriate block billing, especially where a thorough description of the activities performed clarifies rather than obscures the record.").   Upon review, it appears that many of the time entries relate to the same subject matter, and the descriptions are clear enough to ascertain that the various tasks involve compensable activities, such as research, conducting discovery, and drafting communications.   (Docs. 223-1, 223-2).   *See Gay v. Brencorp, Inc.*, No. 3:09-cv-1002-J-JBT, 2013 WL 2683156, at *3 (M.D. Fla. June 11, 2013) (including multiple tasks in one entry may not be fatal unless it includes clearly non-compensable tasks).

As to the January 6, 2018 time entry for 1.6 hours, however, I agree with State Farm that this entry combines multiple tasks, and the description is full of acronyms and shorthand such that I cannot determine whether the tasks are compensable.   (Doc. 223-2, at 174).   I will therefore recommend that Mr. Normand's hours be cut by 1.6 hours, but that no further reductions on the basis of block billing be taken due to the lack of specificity in State Farm's objections.[19]

State Farm's objections on the basis of indecipherability suffer from the same fatal flaws. State Farm points to Mr. Normand's and Mr. Lynch's time entries generally, yet provides not a single example.   Accordingly, State Farm has failed to meet its burden of providing particularized and specific objections.   Even if State Farm had met its burden, I have conducted a review of these

---

[19] Mr. Sos attempts to clarify this time entry in his reply brief as "related to researching and assisting a class member understand his claim and potential payment."   (Doc. 234, at 7, n. 7). However, the abbreviations and shorthand contained in this time entry does not appear to completely coincide with Mr. Sos's explanation.

attorney's time records and find them, for the most part, to be comprehensible, to cover legal work that is compensable, and that the hours are reasonable, particularly given that these attorneys have already reduced their hours.   And while State Farm does not mention any of Mr. Phillips' hours, I have also reviewed his time records, and find that Mr. Phillips has not engaged in block billing, his time entries are legible, and the tasks listed are both compensable and reasonable given the length and complexity of this case, and Mr. Phillips' key litigation role.

Mr. Couch, however, is another matter.   State Farm notes that nearly all of his time entries are cut off and overwhelmingly list reviewing filings.   (Doc. 231, at 14).   I find this objection to be sufficiently specific, and the four pages of time entries Mr. Sos has submitted for Mr. Couch bear out the objection.   (Doc. 223-2, at 326-29).   It appears that Mr. Couch used some standardized codes for the activity category and task,[20] which merely state "review/analyze," "plan and prepare," "draft/revise."   As to the description, State Farm is again correct, almost all of the descriptions are either cut off, or merely state "read and review" a docket entry.   And while Mr. Couch avers in his declaration that the majority of his contributions to this lawsuit centered on discovery matters, these cut off and abbreviated time sheets do not coincide with his representations.

Because I am unable to read these descriptions, I am unable to ascertain whether they are reasonable.   I am also unable to conduct an hour-by-hour analysis, therefore an across the board cut is warranted.   Given the degree to which Mr. Couch's time entries are illegible, I find a significant cut is appropriate.   I will therefore recommend a 30% reduction in Mr. Couch's total hours.   *See Hamilton v. Southland Christian Sch., Inc.*, No. 6:10-cv-871-Orl-22TBS, 2012 WL 6761676, at *6 (M.D. Fla. Dec. 12, 2012), *report and recommendation adopted*, 2013 WL 49498

---

[20] At the hearing, Mr. Sos's counsel represented that they used standardized ABA codes, but did not provide a code sheet.

(M.D. Fla. Jan. 3, 2013) (reducing total compensable time by the number of hours listed in illegible time entries); *Franklin*, 2010 WL 916682, at *4 (applying across the board reduction to vague time entries); *Aguilar v. Transportes Medrano, Inc.*, No. 07-23290-CIV, 2010 WL 11596317, at *2 (S.D. Fla. Apr. 8, 2010) (applying across the board reduction for "vague and insufficient" time entries); *see also Rowe*, 472 So. 2d at 1150 (noting that inadequate documentation may reduce the fees requested); *Gutman v. Klein*, No. 03 CV 1570 BMC RML, 2010 WL 4975593, at *20 (E.D.N.Y. Aug. 19, 2010), *report and recommendation adopted*, 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010) (applying across the board reduction to fee petition that was illegible in part), *aff'd,* 515 F. App'x 8 (2d Cir. 2013).[21]

### 2.    *The Specific Objections*

This leaves four objections to specific categories of attorney hours, for which State Farm requests an additional 20% across-the-board cut.

First, State Farm argues that Mr. Sos's attorneys have not "fully removed" time entries for unsuccessful motions to strike State Farm's answer, for their unsuccessful attempt to certify a national class, and for two motions to compel related to nationwide issues. (Doc. 231, at 15). I will recommend that this objection be sustained in part and overruled in part. It is undisputed that hours spent on unsuccessful *claims* should be deducted from a fee award. *See Norman*, 836 F. 2d at 1302. However, as Mr. Sos correctly notes, "the law in this circuit is that a prevailing party entitled to attorneys' fees is not to be penalized for failed motions." *Eagle Hosp. Physicians, LLC.*

---

[21] Mr. Sos's counsel argued at the hearing that they were not put on sufficient notice concerning State Farm's objections on the basis of block billing and indecipherability. As to block billing, I agree. As to indecipherability, I do not. Even a cursory review of Mr. Couch's time records demonstrates the difficulties in reviewing them. Mr. Sos and his counsel had the initial burden to provide sufficiently detailed records and evidence which would allow the Court to conduct a lodestar analysis. They chose to provide the records in their current form. And those records fail to satisfy their burden.

*V. SRG Consulting, Inc.*, 346 F. App'x 403, 404 (11th Cir. 2009) (citing *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990)).[22]   *See also Rynd v. National Mut. Fire Ins. Co.*, No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at *5 (M.D. Fla. Jan. 25, 2012) (citations omitted) (recognizing that time spent on unsuccessful claims should be reduced from a fee award, but "time is not excluded simply because a motion was denied."); *Bankers Sec. Life Ins. Soc. v. Kane*, 692 F. Supp. 1326 (S.D. Fla. 1988) ("this Court *must* deduct time spent on unsuccessful claims." (emphasis in original) (citing *Norman*, 836 F.2d at 1302)).   Thus, with respect to State Farm's objection to any hours spent on a failed motion to strike, that request should be denied.   With respect to any hours spent on the nationwide class claims – including failed motions to compel nationwide class discovery – State Farm's objection should be granted.   *Norman*, 836 F. 2d at 1302; *Rynd*, 2012 WL 939387, at *5.

The question is how deep a cut should be made.   All four of Mr. Sos's attorneys have already removed hours related to unsuccessful motions and the national class action claims.   (*See* Doc. 223-1 ¶ 7; Doc. 223-2 ¶¶ 78-79; Doc. 223-4 ¶ 4;   Doc. 223-6 ¶ 12).   And the only example State Farm points to is "at least 11 hours" Mr. Lynch billed between February 14-21, 2018.   (Doc. 231, at 15).   I have reviewed Mr. Lynch's time records for that period, and they do coincide with the filing of a motion to compel discovery related to the nationwide class.   (*Compare* Docs. 67, 69 *with* Doc. 223-1, at 14).   Because these 11 hours clearly relate to an unsuccessful claim to certify a national class, the law of this Circuit dictates that these hours be removed.   *See Rynd*, 2012 WL 939387, at *6-7 (deducting 27.7 hours of attorney time spent litigating an unsuccessful claim).

---

[22] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.   *See* 11th Cir. R. 36-2.

However, State Farm has presented no further evidence of any hours related to the national class, so this will be the extent of the recommended reduction.

State Farm next argues that "a significant number of entries from the month prior to filing [the motion for attorneys' fees and costs] are related to the preparation of this motion and should be removed."  (Doc. 231, at 15).  "The Florida Supreme Court has held that, while attorney's fees incurred for litigating the issue of entitlement to attorney's fees are recoverable, fees incurred for litigating the amount of attorney's fees are not."  *McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002) (citing *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993)).  Mr. Sos acknowledges this binding precedent and, with the exception of one time entry, contends that all of the hours listed on the attorney time records are for litigating entitlement, not quantification.  (Doc. 234, at 10).  The one exception is 7.3 hours of Mr. Lynch's time that was "inadvertently" included, and which Mr. Sos agrees should be removed.  (*Id.*).  Other than generally pointing to the "month prior to filing" the motion for fees, State Farm has not otherwise identified any allegedly improper hours or provided any evidence on this point, which is fatal to this objection.   Moreover, a cursory review of Mr. Normand's and Mr. Phillips time records shows that they have already removed hours related to the quantification of the fee application.   Thus, I will recommend that Mr. Lynch's hours be reduced by another 7.3 hours, but nothing more.

Third, State Farm argues that Mr. Normand, Mr. Lynch, and Mr. Phillips all billed for travel time and attendance at an April 25, 2018 court hearing, which State Farm contends is "both duplicative and unrecoverable."  (Doc. 231, at 15 (citing *Jin Zhi Star Lt. LLC v. Am. Zurich Ins. Co.*, No. 08-61191-CIV, 2009 WL 2899913, at *7 (S.D. Fla. Sept. 9, 2009)).[23]  According to the

---

[23] Although State Farm challenges travel time in general, the April 25, 2018 event is the only example provided, and thus will be the only entry that I will address.

Court's docket, Magistrate Judge Karla R. Spaulding directed the parties to meet and confer, in person, at the Orlando courthouse on April 25, 2018 in an effort to resolve a pending motion to compel.  (Doc. 94).   The order specifically named Mr. Lynch and Mr. Normand and required their personal attendance; however, Mr. Phillips was not named.   (*Id.*).   At the conclusion of the meet and confer, Magistrate Judge Spaulding denied the motion to compel as moot, based on the parties' representations that they had resolved all outstanding issues.  (Doc. 95).   According to the time records provided, Mr. Lynch billed 12 hours for travel and attending the meet and confer (Doc. 223-1, at 16); Mr. Normand billed 3.2 hours to travel and attend the meet and confer (Doc. 223-2, at 141); and Mr. Phillips billed 2.5 hours to attend, he did not bill any travel time.   (Doc. 223-2, at 279).   Of these three attorneys, only Mr. Lynch resides out of town.   (*See* Doc. 223-1, at 8 (listing office address in Coral Gables, Florida)).

There is no bright-line rule with respect to recovering attorney fees for counsel's travel time; indeed "[c]ourts in the Middle District have taken varying approaches to awarding fees for travel time.   Some have deducted the time where able counsel was available, some have awarded it, and others have reduced the number of recoverable hours."   *Baez*, No. 2019 WL 2223773, at *6 (quoting *Martinez v. Hernando Cty. Sheriff's Off.*, No. 8:12-cv-666-T-27TGW, 2013 WL 6047020, at *3 (M.D. Fla. Nov. 13, 2013)).   And I note that the presiding District Judge has both granted and denied travel time in attorney's fees cases.   *Compare Johnson v. Borders,* No. 6:15-cv-936-Orl-40DCI, 2019 WL 8105907, at *7 (M.D. Fla. June 19, 2019), *report and recommendation adopted as modified sub nom. Johnston v. cros,* 2019 WL 8105896 (M.D. Fla. July 30, 2019) (denying an award for counsel's travel time where fee applicant failed to demonstrate that there was a lack of local attorneys willing and able to handle her claims) *with Baez*, 2019 WL 2223773, at *7 (reducing travel hours by 10 percent, but otherwise granting an award of counsel's travel time).

I believe that some of counsel's travel time should be recoverable.   It is undisputed that Mr. Lynch and Mr. Normand were required to attend this meeting – in other words, any travel time was not discretionary.   And Mr. Sos has presented unrebutted evidence concerning the complexity and unique nature of this case, and the reasons behind Mr. Lynch joining the litigation.   Thus, I find that a wholesale rejection of travel time (or a 20% across the board reduction) is not warranted.   I also find that having Mr. Lynch, Mr. Normand, and Mr. Phillips all attend the meet and confer to be reasonable – the two partners were explicitly required to be there, and as previously discussed, Mr. Phillips played a key role in drafting motions and discovery responses.   *See Barnes*, 168 F.3d at 432 (citations and internal quotation marks omitted) ("There is nothing inherently unreasonable about a client having multiple attorneys . . ., a reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work.   An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.").

I do find, however, that a modest reduction in the requested travel time is appropriate.   As best as I can determine from the billing records, it appears that the meet and confer lasted approximately 2.5 hours.   Contrary to State Farm's contention, Mr. Phillips did not bill for any travel time, and while the time records for Mr. Normand list "travel and attend," it would seem the maximum amount of travel time would be .70 hours (the difference between the hours Mr. Phillips has claimed for attending the meeting and what Mr. Normand has claimed).   And Mr. Sos does not provide any explanation for this discrepancy, nor does Mr. Sos provide any authority for allowing recovery of local travel time.   I will therefore recommend a reduction of Mr. Normand's hours by .70 to account for his travel time within Orlando.   With respect to Mr. Lynch, I find 12 hours to be excessive and unreasonable – the distance between Mr. Lynch's office and the courthouse is

approximately 250 miles, which should take approximately 4 hours by car each way.   And it appears that the hearing only lasted 2.5 hours.   Thus, I will recommend reducing Mr. Lynch's hours by 1.5 to account for the excessive time.   Beyond that, no further reductions are warranted.[24]

State Farm's final objection is general, conclusory, and speculative.   State Farm contends – without any specifics – that much of the work on this case "benefit[ted] other cases which [Mr. Sos's counsel] were concurrently litigating on the exact same issues," and this unspecified duplicative work should be deducted from any fee award.   (Doc. 231, at 15-16).   Mr. Sos's attorneys admittedly joined forces to work on the present case and others in order to "have additional resources and more collective experience to litigate class actions."   (Doc. 223-2 ¶ 29).   However, each case had its differences, involved different class members, and State Farm has not identified a single time entry that it claims related to work shared amongst other litigation, or that would be duplicative or unnecessary in this case.   In the absence of any details, and in light of the fact that counsel have already removed several hours of duplicative time, I will recommend that this objection be overruled in its entirety.   (*See* Doc. 223-2 ¶ 84;   Doc. 231-4 ¶¶ 4-6; Doc. 223-5 ¶¶ 43, 49-50).

When all of State Farm's objections are taken into consideration, Mr. Normand's hours are reduced to 827.40, Mr. Lynch's hours are reduced to 466.90, and Mr. Couch's hours are reduced to 118.[25]   Mr. Phillips 1,225.70 hours are not reduced, and in the absence of any objections from State Farm, neither are the 153.60 paralegal hours.   I will recommend to the Court that these reduced hours are reasonable and appropriate under the applicable lodestar analysis.

---

[24] I do not find State Farm's reliance on the *Jin Zhi Star* case persuasive, as *Jin Zhi Star* provides no analysis as to why the travel time was deleted, other than to say that the hours "are not warranted here," which would imply that the decision was fact specific.   2009 WL 2899913, at *7.

[25] The exact number of hours for Mr. Couch is 117.985, and I have rounded up to 118.

D.    *The Lodestar*

When the recommended reasonable hourly rates are multiplied by the recommended reasonable hours, the total recommended lodestar amount is as follows:

| | |
|---|---|
| Edmund Normand | $455,070 (827.40 hours x $550/hour) |
| Christopher Lynch | $256,795 (466.90 hours x $550/hour) |
| Jacob Phillips | $428,995 (1,225.70 hours x $350/hour) |
| Alex Couch | $29,500 (118.00 hours x $250/hour) |
| Michelle Montecalvo | $9,180 (61.20 hours x $150/hour) |
| Janna Sherwood | $13,860 (92.40 hours x $150/hour) |
| **Total Lodestar:** | **$1,193,400.00** |

E.    *The Contingency Multiplier*

In contingency fee cases that apply Florida law, once the lodestar is established, the court must consider whether a multiplier is appropriate.  *Quanstrom*, 555 So. 2d at 831; *Rowe*, 472 So. 2d at 1151.[26]   A case need not be "rare" or "exceptional" to merit a contingency multiplier.  *See Joyce v*, 228 So. 3d at 1132-33.   However, "[t]he decision to award a multiplier is discretionary." *Crossman v. USAA Cas. Ins. Co.*, No. 6:18-cv-1301-Orl-31GJK, 2020 WL 1172048, at *4 (M.D. Fla. Feb. 7, 2020) (citing *David L. Goldstein DMD PA v. Phoenix Ins. Co.*, No. 6:17-cv-1963-Orl-31TBS, 2018 WL 5084750, at *3 (M.D. Fla. Aug. 21, 2018)).

The Florida Supreme Court "separated attorney's fees cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters, each with a separate means of determining the appropriate amount of attorney's fees."  *Joyce*, 228 So. 3d at 1128 (citing *Quanstrom*, 555 So. 2d

---

[26] There is no dispute that this is a contingency fee case.   (*See* Doc. 223-2, at 385-90).

at 832).   The present case involves an insurance coverage dispute, which falls into the second category – tort and contract claims.   *See Crossman*, 2020 WL 1172048, at *4.   In insurance disputes, "Florida courts consider three factors in determining the necessity of a contingency fee multiplier:   '(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.'"   *Houston Specialty Ins. Co. v. Vaughn*, 749 F. App'x 800, 803 (11th Cir. 2018) (quoting *Joyce*, 228 So. 3d at 1128).   "Evidence of these factors must be presented to justify the utilization of a multiplier." *Quanstrom*, 555 So. 2d at 834.

### 1.   Whether a Multiplier is Required

To support his request for a multiplier, Mr. Sos first relies upon the declarations of Mr. Lynch and Mr. Normand.   Mr. Lynch avers that he is aware of the risk associated with class actions, and "would never have agreed to accept the case absent the possibility of a multiplier or a recovery based on a percentage of the sums received."   (Doc. 223-1 ¶ 4).   Mr. Normand details the risks associated with bringing this litigation:   at the time the case was filed there was no precedent, and while other similar cases had also commenced, none had reached final judgment, and many involved differing policy language.   (Doc. 223-2 ¶¶ 28, 65).   Mr. Normand characterized the risk as "essentially a 'bet the firm' proposition."   (*Id.* ¶ 28).   Mr. Normand further avers that neither he, nor the other Normand PLLC attorneys, have received any compensation to date, the case is purely contingent in nature, and Mr. Normand "would not have taken on this case without the opportunity for a multiplier."   (*Id.* ¶¶ 87, 93, 95).

Mr. Sos also points to Mr. Yanchunis's declaration and deposition.  Mr. Yanchunis first opines that the relevant market requires a contingency multiplier.   Based on his own experience "as well as conversations and discussions with other attorneys concerning this matter, no class action attorney in this locality would undertake this litigation this [sic] without the possibility of a contingency risk multiplier."  (Doc. 223-5 ¶ 44).  Mr. Yanchunis specifically points to the novelty and complexity of the case, the significant expenses incurred (over $110,000 in unrecovered costs to date), the fact that in federal court attorneys are unlikely to recover costs expended on expert testimony, the significant chance of no recovery, the averments of Mr. Lynch and Mr. Normand that they would not have taken this case without the chance for a multiplier, and the fact "that State Farm is known to be a voracious litigator with virtually unlimited resources," as support for his opinion that a contingency multiplier is required.  (*Id.* ¶¶ 44-45).[27]

Next, Mr. Yanchunis opines that Mr. Sos's attorneys were unable to mitigate the risk of nonpayment.  According to Mr. Yanchunis, the retainer agreement between Mr. Sos and his attorneys made clear that Mr. Sos would not owe any fees, costs, or expenses, in any form, if the case was unsuccessful, or recovery not obtained.  (*Id.*  ¶ 46).  Mr. Yanchunis interprets this language as showing that the risk of non-payment was not mitigated at all, and further opines that "[i]nsureds simply cannot afford to bear fees or costs in unsuccessful actions for recovery of the relatively small amount at stake in first-party auto litigation."  (*Id.*).

---

[27] At his deposition, Mr. Yanchunis admitted that he did not know whether Mr. Sos had spoken with other attorneys prior to retaining his present counsel, or if any attorneys had rejected his case.  (Doc. 234-1, at 53).   However, Mr. Yanchunis testified that the class action bar in Florida is "pretty small," the circle of attorneys who are both skilled in class litigation and insurance litigation is even smaller, and he did not think that every attorney who handles class litigation "could have handled this case and obtained the result that the lawyers did in this case."   (*Id.* at 54).

Last, Mr. Yanchunis opines that the *Rowe* factors – in particular the results obtained – support the award of a multiplier.  (*Id.* ¶ 47).  Most class actions result in either dismissal or settlement, and those that settle usually resolve for less than the full value of the claim.  (*Id.*).  This case, however, presented a rare and excellent result – summary judgment entirely in the favor of a certified class for the full value of each class members' claim.  (*Id.*).  Mr. Yanchunis also points out that the benefits from this case will continue into the future; State Farm modified its business rule, and therefore all insureds going forward will receive payment for ACV sales tax and title transfer fees.  Thus, Mr. Yanchunis concludes that a multiplier of 2.5 is necessary and justified in this case.  (*Id.* ¶ 48; *see also* Doc. 223-6 ¶¶ 26-30 (estimating future benefits to insureds)).

In response, State Farm first argues that Mr. Sos has failed to show that the relevant market requires a contingency fee multiplier.  State Farm ignores the expert testimony from Mr. Yanchunis, and instead cites to a Southern District of Florida decision for the proposition that there is "no shortage of attorneys in Florida, or the Orlando area specifically, willing to sue insurance companies."  (Doc. 231, at 17 (citing *Beach Bars USA, LLC v. Indemnity Ins. Corp. of DC*, No. 11-60883-Civ-COOKE/TORRES, 2015 WL 11422318, at *15 (S.D. Fla. May 6, 2015))).  However, *Beach Bars* – which is not a class action case – clearly refers to attorneys in the South Florida legal market, and as previously discussed, the relevant market for this case is the Central Florida market. State Farm's reliance on this case is unavailing.

The only other evidence State Farm references as to this first factor is Mr. Sos's own deposition testimony.  Mr. Sos testified that he did not speak with any other attorneys before hiring Normand PLLC to represent him in this matter.  (Doc. 231-2, at 27-28).  According to State Farm, this testimony shows that Mr. Sos had no difficulty in finding competent counsel to represent him, and therefore a contingency multiplier is not required.  (Doc. 231, at 17-18).

It appears that State Farm is thus arguing that the *only* evidence that can ever support this factor is testimony from the prevailing party that he or she spoke with other lawyers, was rejected, and only when a contingency multiplier was brought into the negotiations was competent counsel retained.   Florida law does not require such a draconian approach.   *See Joyce*, 228 So. 3d at 1134 (affirming a 2.0 contingency fee multiplier where the fee applicant did not seek any other counsel prior to retaining their attorneys, but instead presented evidence from a fee expert, as well from their attorneys, to establish that a contingency fee risk multiplier was necessary to retain competent counsel); *Citizens Prop. Ins. Corp. v. Laguerre*, 259 So. 3d 169, 177 (Fla. 3d Dist. Ct. App. 2018) ("[A] trial court may rely on 'expert testimony that a party would have difficulty securing counsel without the opportunity for a multiplier' in support of the imposition of a multiplier." (quoting *Massie v. Progressive Express Inv. Co.*, 25 So. 3d 584, 585 (Fla. 1st Dist. Ct. App. 2009))).[28]

Here, Mr. Sos has presented the unrebutted expert testimony of Mr. Yanchunis that a contingency fee multiplier was necessary to secure competent counsel in this locality.   The reasons behind Mr. Yanchunis's opinions are sound and have not been challenged.[29]   The declarations of Mr. Lynch and Mr. Normand further support Mr. Yanchunis's opinions and establish the complexity of this case.   And in the absence of any countervailing expert testimony, I find that the first factor has been met.

---

[28] The two decisions State Farm references are distinguishable.   In both *Progressive Express Insurance Co. v. Schultz*, 948 So. 2d 1027 (Fla. 5th Dist. Ct. App. 2007) and *Eckhardt v. 424 Hintze Management, LLC*, 969 So. 2d 1219 (Fla. 1st Dist. Ct. App. 2007) the fee applicant did not provide any evidence at all concerning the difficulty in obtaining competent counsel.   Neither case holds that the only acceptable competent evidence is the fee applicant's own testimony that he or she could not find an attorney.

[29] While I did not afford Mr. Yanchunis's opinions as to the hourly rate much weight, I find his opinions with respect to the other lodestar factors and the contingency multiplier factors to be relevant and competent evidence.   And I further note that State Farm has only challenged Mr. Yanchnunis's opinions with respect to the hourly rates.   (Doc. 238, at 3-4).

Next, State Farm points to the retainer agreement between Mr. Sos and Normand PLLC as proof that the risk of nonpayment was mitigated.  (Doc. 231, at 18-19).  The agreement provides that Mr. Sos is not obligated to pay any attorneys' fees, costs, or expenses unless Normand PLLC secures some recovery (either individual or class based).  (Doc. 223-2, at 385-86).  If class recovery is achieved, Normand PLLC will petition the court for an award of fees and expenses, to be recovered at either one-third of the total recovery plus costs, or at the lodestar method.  (*Id.*). However, if class certification is denied, Normand PLLC has no continuing obligation to represent Mr. Sos on an individual basis, and the firm agreed not to seek any fees from Mr. Sos directly, but only from State Farm if any individual recovery or settlement is reached.  (*Id.*).  Based on these terms, State Farm argues that the risk of non-payment was sufficiently mitigated because the only way Mr. Sos's counsel would not be paid is if Mr. Sos lost his case.[30]

"Generally, the controlling consideration in determining whether an attorney can mitigate the risk of nonpayment under the second prong of *Joyce* is whether the plaintiffs can afford a retainer or hourly fees."  *Wesson v. Fla. Peninsula Ins. Co.*, 296 So. 3d 572, 573-74 (Fla. 3rd Dist. Ct. App. 2020).  *See also Joyce*, 228 So. 3d at 1125 (affirming award of contingency multiplier based, in part, on testimony that the client could not pay a retainer, and on testimony from the fee expert that there was no meaningful way to have mitigated the risk of nonpayment in this case); *Eckhardt v. 424 Hintze Management, LLC*, 969 So. 2d 1219 (Fla. 1st Dist. Ct. App. 2007) (analyzing client's

---

[30] I do not find persuasive State Farm's reliance upon *David L. Goldstein DMD PA v. Phoenix Ins. Co.*, No. 6:17-cv-1963-Orl-31TBS, 2018 WL 5084750 (M.D. Fla. Aug. 21, 2018). While in that case, the court determined that the risk of non-payment was mitigated due to the existence of a contingency fee agreement that provided for the attorneys to receive 33.3% of the gross recovery, or court awarded fees, whichever was greater, the court expressly acknowledged that "this was obviously dependent on success on the merits."  2018 WL 5084750, at *7. Moreover, the plaintiff in *Phoenix Ins.* paid his law firm a five-figure retainer and presented no evidence that a contingency multiplier was otherwise necessary.  *Id.* at *6-7.

ability to pay on an hourly basis when considering risk of non-payment).   I again look to the unrebutted opinion of Mr. Yanchunis that "[i]nsureds simply cannot afford to bear fees or costs in unsuccessful actions for recovery of the relatively small amount at stake in first-party auto litigation."   The fact that the attorneys would recover if Mr. Sos prevails does not, by itself, mitigate the risk of non-payment, as it is entirely speculative and conditioned on the fact that Mr. Sos prevail. Further, there was no hourly rate arrangement, Mr. Sos did not pay any retainer or other up-front amount, and there is nothing in the record demonstrating that Mr. Sos had the ability to foot the exorbitant bill in this case.   *Cf. Pompano Ledger, Inc. v. Greater Pompano Beach Chamber of Com., Inc.,* 802 So. 2d 438, 439 (Fla. 4th Dist. Ct. App. 2001) (finding risk of nonpayment was mitigated and thus no multiplier warranted where the fee arrangement was strictly on an hourly basis).   To the contrary, Mr. Sos's individual claim involved approximately $3,000 before fees (*see* Doc. 231-3) – for such a small claim it would be unrealistic to expect an individual to pay an hourly rate (and thus bear the full cost of litigation) regardless of outcome.   Thus, Mr. Sos's attorneys took a risk of proceeding with the litigation, knowing full well that they may receive nothing.   I find that the second factor has also been met.

The last point to consider is whether the *Rowe* factors support a multiplier.   I find that they do.   I have previously discussed all but three of the relevant factors and have found that evidence exists to satisfy each of them.   I further find that evidence exists to establish these last three factors: the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.   *See Vaughn*, 749 F. App'x at 803.

This is a contingency fee class action case, and the amount involved, although relatively small on an individual basis, is quite large when the entire class recovery is considered.   To date, State Farm has paid out $4,317,838.00 – a not insubstantial amount.   And this is not the entirety of

what is at play in this case – prejudgment interest is also left to be calculated, which will raise the amount involved to well over $5,000,000.00.   Specifically, as of August 28, 2020, the parties have agreed that State Farm owes an additional $695,661.70 in prejudgment interest, which has continued to accrue since that date.   (Doc. 222-1).   The results obtained are a rarity indeed – Mr. Sos prevailed at both the class certification and summary judgment stage – and achieved the remarkable result of a complete recovery of all amounts Mr. Sos and the Florida class have claimed they are due.   Mr. Yanchunis's unrebutted opinions further support a finding that such an unusual and excellent result weighs in favor of a multiplier.

State Farm makes three arguments with respect to this final stage of the analysis:   (1) because State Farm "voluntarily" paid all amounts due, the amount involved and results obtained is therefore limited to the $695,661.70 in prejudgment interest, and such a relatively small amount cannot justify a multiplier; (2) this was, at bottom, a contractual dispute for insurance coverage, thus, a multiplier is unnecessary; and (3) Mr. Sos's attorneys have already sought and received millions of dollars in fees from other "essentially identical" cases.   (Doc. 231, at 19).   These arguments are unpersuasive.

The amount involved and results obtained are not as narrow as State Farm claims.   As Judge Byron previously discussed, at the time the lawsuit was filed, State Farm was not paying *any* of its insureds in Florida ACV sales tax or title transfer fees, in other words, State Farm was already breaching its contracts.   (Doc. 214, at 19).   Instead, "[t]his lawsuit acted as a necessary catalyst to resolve the dispute over coverage and force State Farm to satisfy its contract obligations.   Holding otherwise would frustrate the purpose of § 627.428."   (*Id.* at 20).   Thus, the amount involved and results obtained were not limited to simply prejudgment interest, but rather includes all payments made to the entire Florida class – whether "voluntary" or not.   As to whether this is simply a "breach

of contract" case, while that may be true, it is one of first impression and was hotly contested, and the risks attendant substantial, thus I do not believe the lodestar by itself adequately accounts for the time-consuming nature of this case.   Last, State Farm has presented no authority for its bald assertion that because Mr. Sos's attorneys have already recovered fees in other cases, they should not be able to recover their fees (including a multiplier) in this case.   Such a position would clearly have a chilling effect on necessary litigation.[31]

Having found record evidence to support all of the relevant facts, I therefore find, and will recommend, that a multiplier is necessary and appropriate in this case.

### 2.     The Amount of the Multiplier

Once it is determined that a multiplier is necessary, the next question is the amount.   Mr. Sos requests a 2.5 multiplier, while State Farm requests none.   The Florida Supreme Court has established a formula for determining the appropriate multiplier in tort and contract claims (including insurance disputes):   "If the trial court determines that success was more likely that not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5."   *Quanstrom*, 555 So. 2d at 834.

Upon review of the record, and the evidence submitted, I find that success was unlikely at the outset of this case.   At the time the case was filed, it was unclear whether State Farm's business rule with respect to ACV sales tax and title transfer fees would be deemed a breach of its contract, and there was no applicable precedent upon which Mr. Sos could rely.   The risks attendant to

---

[31] I note that State Farm nowhere asserts or even suggests that due to the results in the other related cases, such as *Roth*, that any insurer changed its position on paying ACV sales tax and title transfer fees absent the inception of litigation.

bringing this case were high, particularly given State Farm's reputation for engaging in a vigorous defense.  (*See* Doc. 223-2 ¶¶ 64-67; Doc. 234-1, at 35, 55-57).  While State Farm points to the decision in *Bastian v. United Services Automobile Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015), that decision denied summary judgment to an insurer on a related issue concerning sales tax, primarily addressed issues of statutory interpretation not at play in the present case, did not address title transfer fees or prejudgment interest, did not involve leased vehicles, and the case was ultimately resolved via a settlement.  Thus, I do not find that *Bastian* demonstrates that Mr. Sos had a likelihood of success, or even that the chances were even, when he initiated this lawsuit. Moreover, State Farm's own actions demonstrate the low chance of success Mr. Sos faced – State Farm was (and remains) a formidable opponent – it vigorously defended its position that it did *not* breach its insurance contracts, and admittedly intends to file an appeal seeking to overturn Judge Byron's rulings.  In other words, Mr. Sos did not simply file a basic breach of contract case involving a well-settled area of law.

I further find that the class certification proceedings in this case demonstrate the risks Mr. Sos and his attorneys undertook in proceeding.  All of the information concerning the number of class members, as well as the amount of damages, rested with State Farm, and it is clear from a review of the docket that the process of ascertaining these numbers was not easy.  To the contrary, it was a lengthy and time-consuming process, resulting in multiple rounds of briefing, including attempts by State Farm during the process to cut off further litigation, and even Judge Byron cast doubt on the accuracy and completeness of State Farm's calculations.  When these facts are considered, I conclude that a multiplier of either 2.0 or 2.5 is appropriate.[32]

---

[32] In his reply, Mr. Sos points to recent decisions by other Circuit Courts of Appeals which have held in favor of the insurance company on similar issues as proof of the risks involved and the likelihood of success.  (Doc. 234, at 13-14).  While these decisions further support my finding that

The time records for Mr. Sos's attorneys demonstrate that the attorneys divided the work reasonably well.   There were only four attorneys representing Mr. Sos and the Florida Class, and the number of hours billed by the two partners is roughly equal to the number of hours billed by the two associates.   And as discussed above, each attorney performed a separate and key role in the litigation, and any overlap was reasonable.   I also have recommended reduced hourly rates for each of the four attorneys, thus I cannot say that the lodestar by itself properly accounts for the risks involved.   Considering all of the circumstances, I will therefore recommend that the Court exercise its discretion and apply a multiplier of 2.5.[33]   *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Moore*, 597 So. 2d 805, 807 (Fla. 2d Dist. Ct. App. 1992) (awarding 2.5 contingency multiplier in insurance case in part due to expert testimony, and "because of the contingent nature of the fee arrangement, the [plaintiff's] lack of assets to mitigate the risk of nonpayment in any way, the result obtained in comparison to the amount obtained, and the finding that [the plaintiff] was less than likely to prevail at the outset of case in light of the legal and factual issues raised."), *disapproved on other grounds in Palma*, 629 So. 2d 830; *Maltzer, M.D. v. Provident Life and Accident Ins. Co.*, 843 F. Supp. 692 (M.D. Fla. 1993) (awarding 2.5 contingency fee multiplier in insurance breach of contract action where prior counsel was unwilling to proceed on a contingency basis, the defenses raised created protracted discovery proceedings and a hard fought trial, the plaintiff was unable to pay his attorney, and the complexity of the legal and factual issues); *Moeller v. Cassedy, Jr.*, No. 4:03MC7-SPM,

---

the risk of success was unlikely at the outset, I cannot give them much weight for – as Mr. Sos himself repeatedly emphasizes – the analysis is the risk at the time the lawsuit was filed – which, in this case, was 2017, several years prior to the issuance of these other decisions.

[33] I note in *Roth*, the case Mr. Sos's attorneys rely upon heavily, the court awarded a multiplier of 2.0.   However, the lower multiplier was awarded, in part, due to the fact that the billing structure was top-heavy, and the high hourly rates (topping at $750.00) were not reduced.   2019 U.S. Dist. LEXIS 197778, at *36-37.   In the absence of such facts here, I find that the higher multiplier is appropriate.

2006 WL 566494 (N.D. Fla. Feb. 8, 2006) (awarding 2.5 contingency fee multiplier in Florida arbitration case in part due to the difficulty in prosecuting the case, a finding that plaintiffs were unlikely to succeed at the outset, the relatively small damages awards, a rigorous defense, the time consuming process of arbitration, a dearth of qualified attorneys, and the need for large outlays of costs); *cf. McCarthy Brothers Co. v. Tilbury Constr., Inc.*, 849 So. 2d 7, 10 (Fla. 1st Dist. Ct. App. 2003) (awarding contingency fee multiplier of 2.0 where the likelihood of success was approximately even at the outset).[34]

>    E.     *Total Award and Prejudgment Interest*

When the recommended 2.5 contingency fee multiplier is applied to the recommended lodestar of $1,193,400.00, this results in a total recommended award of attorneys' fees in the amount of $2,983,500.00.   I will further recommend that the Court find this fee award to be reasonable and proper under Fla. Stat. § 627.428 and Fed. R. Civ. P. 23(h).   *See In re Home Depot*, 931 F.3d at 1082 ("A reasonable fee is one sufficient to attract competent counsel to represent the case, but not one that provides a windfall for attorneys.").

---

[34] Mr. Sos has submitted one final expert declaration from Professor Arthur R. Miller, a Professor of Law at the New York University School of Law, and the author of *Federal Practice and Procedure*, the pre-eminent treatise on federal civil litigation.   (Doc. 223-3 ¶¶ 1-2).   To say that Professor Miller is a qualified expert in complex civil litigation would be an understatement.   (*See id.* ¶¶ 2-5).   Professor Miller was retained to provide an opinion on whether and to what extent a multiplier should be applied in this case.   (*Id.* ¶ 9).   I have reviewed Professor Miller's declaration and find that while he provides a fascinating and detailed recitation of the academics and societal benefits behind class litigation, his opinions concerning the application of a multiplier in this particular case are largely limited to general comments.   For example, Professor Miller does not discuss in any specific detail the risks that existed at the outset of the case, instead focusing on State Farm's litigation strategy once a complaint was filed (cast in the light of class litigation in general throughout the nation), admittedly defers to Mr. Yanchunis on at least one of the relevant factors (the need for a contingency multiplier in the relevant market), and does not discuss whether the risk of nonpayment has been mitigated.   (*See id.* ¶¶ 15-58 & n.1).   For these reasons, I have relied instead on the opinions of Mr. Yanchunis, who does provide such details, as well as my own review of the record evidence to determine whether and to what extent a contingency risk multiplier is appropriate.

Last, Mr. Sos requests prejudgment interest be added to his attorneys' fees award, (Doc. 223, at 24), and I note that he included a request for prejudgment interest in his second amended class action complaint.   (Doc. 27, at 13).   State Farm has not raised any objection to prejudgment interest.   The Florida Supreme Court has held that prejudgment interest is to be awarded on attorneys' fees, with the date of entitlement to the fees serving as the date of accrual.   *Quality Engineered Installation, Inc. v. Higley South, Inc.*, 670 So. 2d 929, 931 (Fla. 1996).   Here, Judge Byron ruled that Mr. Sos and the Florida Class were entitled to an award of attorneys' fees on July 8, 2020.   (Doc. 214, at 16-22).   I will therefore also recommend that the Court award prejudgment interest on the amount of attorneys' fees, running from July 8, 2020 through the date of final judgment.   *Quality Engineered Installation*, 670 So. 2d at 931; *see also Beach Terrace Ass'n, Inc. v. Wanda DiPaola Stephen Rinko Gen. P'hip*, 27 So. 3d 147, 148-49 (Fla. 2nd Dist. Ct. App. 2010). Such interest should accrue in the amount established by Fla. Stat. § 55.03, and thereafter "cease[] to accrue on amounts of attorney fees up to the amount for which an actual tender of payment is made."   *Diperna,* , 2016 WL 7246094, at *8 (quoting *Quality Engineered Installation*, 670 So. 2d at 931).

## III.   THE PROPOSED BILL OF COSTS

Federal Rule of Civil Procedure 54(d) sets forth the general procedure for the taxation of costs, which provides, in relevant part:

> (1) ***Costs Other Than Attorney's Fees***.   Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. . . . The clerk may tax costs on 14 days' notice.   On motion served within the next 7 days, the court may review the clerk's action.

Fed. R. Civ. P. 54(d)(1).

Here, Mr. Sos filed a proposed bill of costs on August 28, 2020.   (Doc. 224).   State Farm indicated its intention to object to the requested costs, but despite being permitted two extensions of

time to respond to the proposed bill of costs, State Farm has chosen not to do so.   (Docs. 225-26, 229-30).   Accordingly, absent any response from State Farm, the undersigned addresses Mr. Sos's proposed bill of costs as unopposed.

Generally, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).   The party seeking costs must provide sufficient detail and documentation regarding the requested costs so that the opposing party may challenge the costs and so the court may conduct a meaningful review of the costs.   *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000). "Failure to provide sufficient detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs." *Pelc v. Nowak*, No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) (citing *Johnson v. Mortham*, 173 F.R.D. 313, 318 (N.D. Fla. 1997)).

"When challenging whether costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed cost is a matter within the exclusive knowledge of the prevailing party." *Miles v. Provident Life & Accident Ins. Co.*, No. 6:08-cv-69-Orl-18KRS, 2009 WL 10670312, at *1 (M.D. Fla. Nov. 16, 2009).   "To rebut the presumption that the prevailing party receives costs, the losing party must demonstrate that there is some fault, misconduct, default or action worthy of penalty on the part of the prevailing party." *Luka v. City of Orlando*, No. 6:07-cv-841-Orl-22GJK, 2011 WL 4837263, at *7 (M.D. Fla. Sept. 23, 2011) (citations and quotation marks omitted), *report and recommendation adopted*, 2011 WL 4836229 (M.D. Fla. Oct. 12, 2011).

28 U.S.C. § 1920 delineates the following allowable costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees for disbursements for printing and witnesses;

(4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under 28 U.S.C. § 1923; and

(6) Compensation of court appointed experts, interpreters, and costs of special interpretation services.

Mr. Sos seeks recovery of a total of $11,235.43 in costs in four different categories and has provided various invoices and expense ledgers to support his request. (Docs. 224, 224-1 Exhibits A-D). The first two categories – a $400.00 court filing fee, and $195.00 for service of process fees (*see* Doc. 224-1, Exhibits A and B) – are both recoverable under 28 U.S.C. § 1920(1), do not appear to exceed the limits established in 28 U.S.C. § 1920(1), and in the absence of any objection, are taxable. *See also W&O, Inc.*, 213 F.3d at 624; 28 C.F.R. § 0.114(a)(3).

The third category consists of $7,169.15 for the costs of printed and/or electronically recorded transcripts for nine witness depositions (State Farm's Corporate Representative, Justin Platt, Jeffrey Martin, Mr. Sos, Steven Wilson, Douglas Graff, Bill Hager, Andrea Willis, and Cassandra Butler), and two hearings (a March 26, 2019 status conference and an April 25, 2019 hearing on Mr. Sos's renewed motion for class certification). (Doc. 224-1, at 3, 9-32). The costs of recording depositions, both by stenographic and non-stenographic means, are taxable under 28 U.S.C. § 1920(2), so long as the transcripts were necessarily obtained for use in the case. *W & O, Inc.*, 213 F.3d at 620-21. A review of the docket shows that each of these witnesses were referenced in either the various summary judgment pleadings, the class certification pleadings, or in other

papers filed in this case.   And State Farm has raised no objection or argument suggesting otherwise, nor has State Farm argued that the two hearing transcripts were not necessary.   Accordingly, I will recommend that the full amount of $7,169.15 in costs for deposition and hearing transcripts be taxed in favor of Mr. Sos.[35]   *See Watson v. Lake Cty.*, 492 F. App'x 991, 996–97 (11th Cir. 2012) ("[W]e have held that the costs of the deposition are taxable under § 1920 where no evidence shows that the deposition was unrelated to an issue in the case at the time it was taken." (citing *W & O, Inc.*, 213 F.3d at 622)); *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 464–65 (11th Cir. 1996) (holding that costs for a video deposition are properly taxable under 28 U.S.C. § 1920).

The fourth and final category of costs is $3,471.28 in photocopying and printing charges. Such charges are recoverable under 28 U.S.C. § 1920(4), so long as the copies are necessarily obtained for use in the case.   To support these costs, Mr. Sos has attached an expense ledger, which lists the photocopying and printing charges, along with notations that the copies were for pleadings, discovery, case law, statutes, motions, and other related documents.   (Doc. 224-1 at 35-47). Again, State Farm has raised no objection, and I find that these costs are sufficiently supported and recoverable.   *See George*, 114 F. Supp. 2d at 1299 ("To recover for photocopy expenses, a prevailing party must produce adequate documentation to show that the copies at issue were reasonably intended for use in the case." (citing *W & O, Inc.*, 213 F.3d at 623)); *see also Watson*, 492 F. App'x at 997   ("Actual use of the information contained in the document copied is not a

---

[35] I note that "[c]harges for condensed transcripts, summaries, scanning, and CD litigation packages are typically not recoverable because they are costs incurred for the party's convenience." *See HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*, No. 6:14-cv-2004-Orl-KRS, 2018 WL 186378, at *11 (M.D. Fla. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 1863779 (M.D. Fla. Apr. 13, 2018) (citations omitted).   However, in the one deposition invoice where such charges were assessed, it appears that Mr. Sos's attorneys received a credit for the litigation support package and condensed transcript, and Mr. Sos is not seeking recovery of those costs.   (Doc. 224-1 at 20).

prerequisite to finding that it was necessary to copy the document." (citing *W & O, Inc.*, 213 F.3d at 623)).

Accordingly, I will recommend that costs be taxed in Mr. Sos's favor in the full amount of $11,235.43.[36]

## IV.   THE FINAL JUDGMENT ON DAMAGES

On August 28, 2020, Mr. Sos filed a Notice of Filing Plaintiff's Request for Entry of Final Judgment.   (Doc. 222).   Attached to the Notice is a list of all judgment class members and the damages calculations for each, with prejudgment interest running through August 28, 2020 (Doc. 222-1), as well as a proposed final judgment (Doc. 222-2).   The list details accrued prejudgment interest in the amount of $695,661.70.   (Docs. 222, 222-1).   And while the notice states that the list of judgment class members does not include four individuals who have opted out of the class, the list does, in fact, include an award of damages in the amount of $3,012.94 for these four opt-out plaintiffs.   (Doc. 222-1, at 63; *see also* Doc. 223-6 ¶¶ 19-22).   State Farm does not oppose the accuracy of any of these calculations.   (Doc. 222, at 1).   I have reviewed the damages calculations and the form of judgment and find both to be reasonable and appropriate, and particularly in light of no objection from State Farm, will recommend that the damages calculations for the judgment class members be accepted and final judgment entered.

---

[36] Mr. Lynch avers in his Declaration that he has incurred an additional $27,438.69 in out of pocket costs and expenses.   (Doc. 223-1, at 4).   He also attaches what appears to be an expense sheet listing $24,921.19 in expenses to Mr. Sos's proposed bill of costs.   (Doc. 224-1, at 34).   In addition, Mr. Normand avers in his Declaration that his law firm has incurred $110,882.65 in expenses, and also attaches an expense ledger.   (Doc. 223-2 ¶¶ 89-90& Exhibit 7).   Neither Mr. Sos nor his attorneys have made any argument or presented any legal authority suggesting that these expenses are recoverable, nor have they presented any evidence that would demonstrate that these expenses are taxable under 28 U.S.C. § 1920.   I will therefore refrain from further considering these expenses and will not recommend that Mr. Sos or his attorneys be reimbursed for them.

At the conclusion of the November 17, 2020 hearing, I addressed with the parties whether the proposed final judgment would require updating to account for additional accrued prejudgment interest since August 28, 2020.   The parties agreed that the damages calculations should be updated, and therefore I will also recommend that the Court provide the parties with a period of time to prepare and file an amended proposed final judgment to account for the additional accrued prejudgment interest.[37]   I will further recommend that the amended proposed final judgment should remove the four opt-out plaintiffs from any attached list.   Should the Court find it appropriate, the amended proposed final judgment and damages calculations can be referred to me for further review.

## V.     CONCLUSION

For the reasons set forth above, I hereby **RESPECTFULLY RECOMMEND** that Plaintiff Anthony Sos's Verified Motion for Attorneys' Fees and Incorporated Memorandum of Law (Doc. 223) be **GRANTED IN PART AND DENIED IN PART.**   I further recommend that the Court find that an award of attorneys' fees in the amount of $2,983,500.00 is reasonable and appropriate under both the lodestar method, applicable Florida jurisprudence, Fla. Stat. § 627.428, and Fed. R. Civ. P. 23(h), and that prejudgment interest on the $2,983,500.00 fee award accrue in the amount established by Fla. Stat. § 55.03 to run from July 8, 2020 through the date of final judgment.   In all other respects, I recommend that the motion for attorneys' fees be **DENIED.**   I further **RESPECTFULLY RECOMMEND** that the Court direct the Clerk of Court to tax Plaintiff Anthony Sos's proposed Bill of Costs (Doc. 224) in the full amount of $11,235.43.

I also **RESPECTFULLY RECOMMEND** that the parties be permitted to file an amended proposed final judgment, to account for the additional accrued prejudgment interest from August

---

[37] The amendment should merely require adjustments to the calculations contained in Exhibit A.   (Doc. 222-1).

28, 2020 to date, and to remove the four opt-out plaintiffs from any attached list of damages.   (*See* Doc. 222).

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 26, 2021.

**LESLIE R. HOFFMAN**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy