UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ANTHONY SOS,**

       **Plaintiff,**

v.                                                            Case No: 6:17-cv-890-PGB-LHP

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,**

       **Defendant.**

_____/

## ORDER

This cause is before the Court on the following filings:

1. Plaintiff Anthony Sos' ("**Plaintiff**") Verified Motion for Attorneys' Fees (Doc. 223 (the "**Motion for Attorneys' Fees**")), Defendant State Farm Mutual Automobile Insurance Company's ("**Defendant**") response in opposition (Doc. 231), Plaintiff's reply (Doc. 234), and Defendant's sur-reply (Doc. 238);

2. The Magistrate Judge's Report and Recommendation regarding the Motion for Attorneys' Fees (Doc. 244 (the "**Report**")), Plaintiff's Objection (Doc. 247 (the "**Plaintiff's Objection**")), Defendant's Amended Objection (Doc. 248 (the "**Defendant's Objection**")), Defendant's Response in Opposition to Plaintiff's Objection (Doc. 250), Plaintiff's Response in Opposition to Defendant's Objection

      (Doc. 252), and this Court's March 19, 2021 Order adopting the Report in part (Doc. 256);

3.    This Court's April 21, 2021 Order for Entry of Final Judgment (Doc. 261) and the Final Judgment (Doc. 262); and

4.    The Eleventh Circuit Court of Appeals' Opinion (Doc. 270) and Mandate (Doc. 271).

## I. BACKGROUND

### A. Factual Background

Although this case has a complex procedural history, the issues presently before the Court are limited and concern only the amount of attorney's fees awarded to Plaintiff by the Court. (*See generally* Doc. 270). The pertinent allegations in this case are as follows. On January 28, 2016, Plaintiff was driving his leased vehicle, a Lexus sedan (the "**Vehicle**"), when he was involved in an automobile accident. (Doc. 1, ¶¶ 6–8). The Vehicle was insured by Defendant, with whom Plaintiff filed a claim following the accident. (*Id.* ¶¶ 9–10). Defendant determined that Plaintiff's Vehicle was a covered "total loss" under the terms of the insurance policy, and thus, Defendant purported to compensate Plaintiff for the actual cash value of the Vehicle. (*See id.* ¶¶ 11–15). However, Defendant failed to include in this payment the cost of sales tax and of state and local regulatory fees that would necessarily be incurred in replacing the Vehicle. (*Id.* ¶¶ 12–16, 37–38).

Consequently, Plaintiff filed a putative class action, alleging Defendant had breached its insurance contract with Plaintiff and with similarly situated insureds.

(*Id.* ¶¶ 32, 37–38). More specifically, the putative class contained members who had also insured their leased vehicles with Defendant, had suffered a total loss, and had received payments by Defendant that did not include payment for the aforementioned taxes and fees. (*Id.* ¶ 32).

Ultimately, while Plaintiff's request for class certification (Doc. 70) remained pending, the Court entered an Order holding Plaintiff was entitled to summary judgment as to both liability and damages for his *individual* breach of contract claim. (Doc. 159). The Court subsequently certified a class of Florida insureds who were similarly situated to Plaintiff. (Doc. 181). Soon after, the Court granted Plaintiff's request for summary judgment as to liability and damages for the *class members'* claims. (Doc. 214). Importantly, in setting forth the class members' damages, the Court found that each class member was entitled to attorney's fees. (*Id.* at p. 22).

### B. The Magistrate Judge's Report Addressing Amount of Attorney's Fees

Magistrate Judge Leslie Hoffman Price issued a Report addressing the appropriate calculation of individual class members' damages.[1] (*Id.*). The Court later entered a Scheduling Order pertaining to this ruling and set forth deadlines for the parties to brief the remaining issues in the case, including as to attorney's fees. (*See* Doc. 218). Pursuant to this Scheduling Order, Plaintiff filed its Motion for Attorneys' Fees (Doc. 223), Defendant responded in opposition (Doc. 231), and

---

[1] Magistrate Judge Leslie Hoffman legally changed her name during the pendency of this case. Accordingly, herein, the Court refers to the Magistrate Judge by her new legal name.

3

Plaintiff replied (Doc. 234). With the Magistrate Judge's leave, Defendant also filed a sur-reply (Docs. 236, 238). The Magistrate Judge also held a hearing on the issue of attorney's fees. (*See* Docs. 240, 241, 242).

Importantly, in Plaintiff's Motion for Attorneys' Fees, Plaintiff sought an award of $4,415,351.00 in attorney's fees along with prejudgment interest on this award. (Doc. 223, pp. 23–24). Specifically, in arriving at this figure, Plaintiff sought the following hourly rates for the members of Plaintiff's legal team:

| Name | Position | Hourly Rate |
|---|---|---|
| Christopher Lynch | Partner | $ 900.00 |
| Edmund Normand | Partner | $ 800.00 |
| Jacob Phillips | Associate Attorney | $ 458.00 |
| Alex Couch | Associate Attorney | $ 458.00 |
| Janna Sherwood | Paralegal | $ 225.00 |
| Michelle Montecalvo | Paralegal | $ 195.00 |

(*Id.* at p. 12; *see* Doc. 223-5, p. 18). In support of Plaintiff's requested fees, Plaintiff attached, among other documents, the Declaration of Plaintiff's fee expert, John Yanchunis ("**Plaintiff's fee expert**"), who opined that the proposed hourly rates were reasonable. (*See* Doc. 223-5). Plaintiff also requested a 2.5 multiplier on the attorney's fee award and applied that multiplier in arriving at its proposed total award. (Doc. 223, pp. 22, 24).

Ultimately, Magistrate Judge Hoffman Price issued a Report recommending that the instant Court award Plaintiff $2,983,500.00 in attorney's fees, plus prejudgment interest running from July 8, 2020. (Doc. 244, p. 55). The Magistrate Judge used the federal lodestar analysis to arrive at this figure. (*See, e.g.*, *id.* at pp. 7–8). Importantly, Magistrate Judge Hoffman Price identified the "Central

Florida" market as the relevant market to consider when determining the reasonable hourly rates for the members of Plaintiff's legal team. (*See, e.g.*, *id.* at pp. 13–14, 17–18).

Consequently, in issuing the Report, the Magistrate Judge assigned little weight to Plaintiff's fee expert's opinions regarding reasonable hourly rates, in part because Plaintiff's fee expert: (1) had failed to provide support concerning similar fees that had been awarded in the Middle District of Florida in similar cases, and (2) had relied heavily upon national references in reaching his opinion. (*See, e.g.*, *id.* at p. 14; *see also id.* at pp. 16–17 (discounting the relevance of Plaintiff's citation to hourly rates that were awarded to attorneys in a Southern District of Florida case and reasoning that "the relevant market is . . . the Middle District of Florida[.]")). Further, although Plaintiff did cite to three awards of attorney's fees entered in the Middle District of Florida, the Magistrate Judge found that these awards were also entitled to little weight, as they were entered pursuant to settlement agreements and were thus unopposed. (*See id.* at pp. 15–16). Additionally, the Magistrate Judge noted that Plaintiff had failed to provide any evidence regarding Plaintiff's paralegals' professional histories in support of Plaintiff's proposed hourly rates for these paralegals. (*Id.* at pp. 21–22).

Accordingly, the Magistrate Judge relied upon her knowledge and experience in recommending the following hourly rates for the members of Plaintiff's legal team:

| Name | Hourly Rate | Hours[2] | Lodestar |
|---|---|---|---|
| Christopher Lynch | $550.00 | 466.9 | $256,795.00 |
| Edmund Normand | $550.00 | 827.4 | $455,070.00 |
| Jacob Phillips | $350.00 | 1225.7 | $428,995.00 |
| Alex Couch | $250.00 | 118.0 | $29,500.00 |
| Janna Sherwood | $150.00 | 92.4 | $13,860.00 |
| Michelle Montecalvo | $150.00 | 61.2 | $9,180.00 |
| | | **Total Lodestar:** | **$1,193,400.00** |

(*Id.* at pp. 18–20, 21 (collecting cases involving comparable fee awards in the Middle District of Florida)). Finally, Magistrate Judge Hoffman Price determined that Plaintiff's success was unlikely at the outset of the case. (*Id.* at p. 46). She thus applied a 2.5 multiplier in arriving at her total fee award of $2,983,500.00. (*Id.*).

Both Plaintiff and Defendant filed Objections to the Magistrate Judge's Report (Docs. 247, 248), and each responded to the other's Objection (Docs. 250, 252). Importantly, in Plaintiff's Objection, Plaintiff argued that the Court was not required to *totally* disregard the hourly rates commanded by attorneys outside of Central Florida in arriving at a "reasonable hourly rate" for Plaintiff's counsel here. (*See, e.g.*, Doc. 247, pp. 5–14 (noting that Plaintiff's counsel's firm is "perhaps the only consumer class action firm in Orlando," and citing persuasive authority demonstrating how courts have dealt with the "lack of an identifiable market,"

---

[2] In the Report, the Magistrate Judge was required to determine the number of hours reasonably expended by each member of Plaintiff's legal team. (*See* Doc. 244, pp. 22–37). She recommended that the instant Court adopt the number of hours for each legal professional as they appear in this table. (*See id.* at pp. 37—38). The instant Court did adopt this portion of the Magistrate Judge's Report and, on appeal, this portion of the Court's Order was affirmed by the Eleventh Circuit. (Doc. 256, pp. 16–17; Doc. 270, pp. 57–58). Accordingly, the number of hours reasonably expended by the members of Plaintiff's legal team in prosecuting the case are not at issue on remand.

6

including by considering, in various ways, markets outside of the immediate geographic area)).

### C. This Court's Order Adopting the Report in Part and the Court's Entry of Final Judgment for Plaintiff

On March 19, 2021, this Court, in large part, adopted and confirmed the Magistrate Judge's Report. (Doc. 256). However, the Court also found the arguments raised in Plaintiff's Objection regarding the relevance of outside geographic markets in arriving at reasonable hourly rates to be persuasive. (*Id.* at pp. 5–7). Consequently, unlike the Magistrate Judge, the Court found that the opinions of Plaintiff's fee expert were credible evidence that could be used in support of the requested hourly rates. (*See id.*). The Court also disagreed with the Magistrate Judge's decision to discount the Middle District of Florida fee awards that were cited by Plaintiff in the Motion for Attorneys' Fees. (*Id.* at pp. 6–8 (finding that, although these fee awards were the result of negotiated settlements, this actually "bolster[ed] . . . the reasonableness of the requested fees," since the rates awarded "represent what opposing counsel considered to be reasonable—and what their client was willing to pay.")). The Court therefore determined that Plaintiff's attorneys were entitled to higher hourly rates than the rates recommended by the Magistrate Judge. (*See id.* at pp. 16–17).

The Court also increased the hourly rates for Plaintiff's paralegals, this time citing (1) additional evidence provided by Plaintiff *following the issuance of the Report* regarding their professional histories; and (2) evidence of prior paralegal

7

fee awards entered *in the Middle District of Florida* that supported the increased hourly rates. (*Id.* at pp. 10–11).

As a result of the foregoing, this Court found the following rates to be reasonable for the respective members of Plaintiff's legal team:

| Name | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Christopher Lynch | $800.00 | 466.9 | $373,520.00 |
| Edmund Normand | $800.00 | 827.4 | $661,920.00 |
| Jacob Phillips | $458.00 | 1225.7 | $561,370.60 |
| Alex Couch | $458.00 | 118.0 | $54,044.00 |
| Janna Sherwood | $190.00 | 92.4 | $17,556.00 |
| Michelle Montecalvo | $180.00 | 61.2 | $11,016.00 |
| | | **Total Lodestar:** | **$1,679,426.60** |

(*Id.* at p. 16). The Court further agreed with the Magistrate Judge that a 2.5 multiplier was appropriate, and thus applied this multiplier to reach a total fee award of $4,198,566.50, plus prejudgment interest on this amount running from July 8, 2020. (*Id.* at p. 17).

Accordingly, Final Judgment was entered for Plaintiff and the class members pursuant to the Court's Orders in this case, including the Court's ruling regarding the proper amount of attorney's fees. (Docs. 261, 262). Defendant appealed the entry of the Final Judgment to the Eleventh Circuit Court of Appeals, citing a host of grounds it alleged warranted reversal. (*See* Doc. 263).

### D. The Eleventh Circuit's Opinion and Mandate

On appeal, the Eleventh Circuit upheld a multitude of rulings made by the Court in the case, including, *inter alia*, its decisions to certify the class, to enter summary judgment for the class members, to award prejudgment interest on

8

Plaintiff's award, to award attorney's fees to Plaintiff, to apply a multiplier to that award, and its decision regarding the reasonable number of hours expended by Plaintiff's legal team in prosecuting the case. (Doc. 270, pp. 3–4, 52–54, 57, 59). However, the Eleventh Circuit also found that the Court erred in two ways in calculating the *amount* of Plaintiff's attorney's fees. (*Id.* at p. 4).

First, the Eleventh Circuit found that, in setting the hourly rate in this case, the relevant market to consider is the Central Florida market. (*Id.* at p. 56). The Eleventh Circuit further noted that, in setting the hourly rates for Plaintiff's legal team, this Court rejected the Magistrate Judge's proposed rates, in part, because the Court found that commercial class action law is "sufficiently specialized that it should be considered a *national market*." (*Id.* at p. 57 (internal quotation marks omitted)). The Eleventh Circuit acknowledged that it was "unclear to what extent" the instant Court considered a national market in setting these hourly rates, noting that the Court had also cited to previous awards in the Middle District in making its ruling. (*Id.*). Still, the Eleventh Circuit found that "even if the . . . hourly determination was based entirely on these prior awards" in Central Florida, this would require reversal, as "[c]ourts applying the lodestar approach are prohibited from giving 'controlling weight to prior awards.'" (*Id.* at pp. 57–58 (citing *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000))).

Second, the Eleventh Circuit held that a 2.5 multiplier was too generous here, as it disagreed with the instant Court and with the Magistrate Judge that Plaintiff's "success was unlikely at the outset of the case." (*Id.* at p. 58 (quoting

9

*Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990) (internal quotation marks omitted))). However, the Eleventh Circuit also found that the record did support the instant Court's "decision to reject the smallest multiplier of 1 or 1.5," since success was also not *likely* at the outset of the case. (*Id.* at p. 60).

As a result of these findings, the Eleventh Circuit reversed the Final Judgment in part and remanded so that this Court may recalculate Plaintiff's award of attorney's fees in light of its guidance. (Docs. 270, 271).

## II.   LEGAL STANDARD

Florida follows the federal lodestar approach to calculating the amount of attorney's fees to be awarded to a party. *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (internal citations omitted). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate" to arrive at a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In applying the lodestar analysis, the party seeking fees has the burden of establishing that the hourly rate and the hours expended are reasonable. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *see also Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir.

1996). The "relevant market" is "the place where the case is filed." *Am. Civ. Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must produce "satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.*

In determining an appropriate hourly rate, the Florida Supreme Court has held that courts should look to the following factors (the "**Rowe factors**"): (1) the skill requisite to perform the legal service properly; (2) the likelihood that undertaking the case would preclude other employment; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; and (7) the experience, reputation, and ability of the lawyers performing the services. *Joyce v. Federated Nat'l Ins.*, 228 So. 3d 1122, 1126 (Fla. 2017) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985)). The Court may also rely on its own knowledge and experience of the prevailing market rate in fashioning an appropriate fee award. *See Norman*, 836 F.2d at 1299–1300, 1303. However, "[t]he going rate in the community is the most critical factor in setting the fee rate."

*Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, No. 6:10-cv-1445, 2012 WL 695670, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Martin v. Univ. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990)).

Once the trial court arrives at a proper "lodestar" amount, it may consider whether a contingency fee multiplier on this amount is warranted. *Joyce*, 228 So. 3d at 1126. In insurance disputes, Florida courts consider the following three factors in making this determination:

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

*Id.* at 1128 (internal quotation omitted). "Evidence of these factors must be presented to justify the utilization of a multiplier." *Quanstrom*, 555 So. 2d at 834. Moreover, if success at the outset of litigation was "more likely than not," the proper multiplier is 1 to 1.5; if it is "approximately even," the proper multiplier is 1.5 to 2.0; and if it is unlikely, the proper multiplier is 2.0 to 2.5. *Id.*

### III. DISCUSSION

#### A. Reasonable Hourly Rates

On remand, and in light of the Eleventh Circuit's mandate in this matter, this Court adopts and confirms in its entirety the Magistrate Judge's analysis in the Report concerning the reasonable hourly rates for the legal fees in this case (Doc. 244, pp. 8–22), with two discrete exceptions.

First, the Court reasserts its finding that the Middle District of Florida fee awards cited by Plaintiff in support of Plaintiff's proposed hourly rates[3] should not be disregarded solely because these fee awards were the results of negotiated settlements. (*See* Doc. 223, pp. 13–14; Doc. 247, pp. 5–6; Doc. 256, pp. 7–8). However, on remand, and upon careful reconsideration of the matter, the Court does find that the absence of any discussion or analysis regarding the factors that made these fees reasonable in Plaintiff's cited cases renders these fee awards of limited value in determining the appropriate hourly rates here. (*See Jackson*, Case No. 6:16-cv-210-Orl-40DAB, Doc. 157; *Preman*, Case No. 6:16-cv-443-Orl-41GJK, Doc. 71; *Cook*, Case No. 6:17-cv-891-Orl-40KRS, Doc. 215). The Court additionally notes that these cases were common fund cases wherein counsel merely utilized a lodestar analysis to conduct a "cross-check" on the proposed award, which distinguishes them from the case at bar. (*See Jackson*, Case No. 6:16-cv-210-Orl-40DAB, Doc. 153, pp. 17–20; *Preman*, Case No. 6:16-cv-443-Orl-41GJK, Doc. 69, pp. 16–19; *Cook*, Case No. 6:17-cv-891-Orl-40KRS, Doc. 210, pp. 22–24). Accordingly, this Court adopts the Magistrate Judge's recommended hourly rates for each of Plaintiff's attorneys and finds that the hourly rates of $550.00 for Mr. Normand, $550.00 for Mr. Lynch, $350 for Mr. Phillips, and $250 for Mr. Couch are reasonable. (*See* Doc. 244, p. 20).

---

[3] This included the attorney's fee awards in *Jackson v. Wendy's Int'l LLC*, Case No. 6:16-cv-210-Orl-40DAB (M.D. Fla. 2019); *Preman v. Pollo Operations, Inc.*, Case No. 6:16-cv-443-Orl-41GJK (M.D. Fla. 2018); and *Cook v. Gov't Emp. Ins. Co.*, Case No. 6:17-cv-891-Orl-40KRS (M.D. Fla. 2020).

Secondly, this Court finds that the Eleventh Circuit's Opinion in this case need not disturb the hourly rates that this Court previously found to be reasonable for each of Plaintiff's paralegals. Unlike the Court's analysis of the hourly rates for the attorneys in this case, in arriving at the paralegal's hourly rates, the Court expressly considered previous paralegal awards from the Middle District of Florida and did not consider such awards from outside this District. (*See* Doc. 256, pp. 10–11 (internal citations omitted)).

Consequently, this Court does not alter its finding that $190 per hour is a reasonable fee for Ms. Janna Sherwood ("**Ms. Sherwood**")—a certified paralegal with more than thirty-five years of experience who has served as a paralegal in diverse and complex practice areas. (*See* Doc. 247-2). This award is supported by other fee awards for paralegals in the Middle District of Florida, which is the most important factor in determining the reasonableness of the fee. *See TemPay Inc. v. Biltres Staffing of Tampa Bay, LLC*, No. 8:11-cv-2732, 2013 U.S. Dist. LEXIS 158724, at *5 (M.D. Fla. Oct. 30, 2013) (finding $190 per hour was a reasonable rate for a paralegal with twenty years' experience more than ten years ago); *Hill v. Allianz Life Ins. Co. of N. Am.*, No. 6:14-cv-950-Orl-41KRS, 2018 WL 6983647, at *3–4 (M.D. Fla. Dec. 10, 2018) (finding $190 per hour was a reasonable rate for two paralegals based upon their years of experience, where one paralegal had twenty-seven years of experience and the other paralegal had thirty-seven years of experience); *Glob. Fin., LLC v. Pay Pro Card Corp.*, No. 8:07-CV-0029, 2008 U.S. Dist. LEXIS 114805, at *6 (M.D. Fla. July 17, 2008) (finding that $170.00 and

$190.00 were reasonable hourly rates for work performed by paralegals in 2007 and 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 88574 (M.D. Fla. Oct. 20, 2008)); *Taylor Newman Cabinetry*, 2012 WL 695670, at *5 (citing *Martin*, 911 F.2d at 610) (identifying the "going rate in the community" as the most important factor in the Court's analysis).

However, upon careful reconsideration of the matter, this Court finds that a reduction of the $180.00 hourly rate that it previously awarded for Ms. Michelle Montecalvo ("**Ms. Montecalvo**") is warranted. (*See* Doc. 256, p. 16). Ms. Montecalvo does have an impressively varied skillset. (*See* Doc. 247-3). She obtained her paralegal certificate from Duke University and has recently focused her paralegal work in the class action field. (*Id.*). She also has a bachelor's degree in English and, prior to entering the legal field, spent years serving as a medical transcriptionist. (*See id.*).

Nonetheless, at the time of the Court's prior Order, Ms. Montecalvo had only acquired approximately five years of experience as a paralegal. (*See id.*; Doc. 256). Paralegal fee awards in this District that fall towards the higher end of the spectrum have generally been reserved for paralegals with decades of experience in the legal field. *See, e.g.*, *TemPay*, 2013 U.S. Dist. LEXIS 158724, at *5; *Hill*, 2018 WL 6983647, at *3–4. Thus, upon this opportunity to reconsider the matter, this Court reduces Ms. Montecalvo's hourly rate to the rate of $150.00 per hour, as was recommended by the Magistrate Judge in the Report. (Doc. 244, pp. 20–22).

15

The Court also seeks to make clear that it does not base the paralegals' hourly rates entirely upon the prior awards it considers from this District. Instead, the Court considered these awards together with its own knowledge and experience as well as its consideration of the applicable *Rowe* factors in the context of the instant case. *See Norman*, 836 F.2d at 1299–1300, 1303; *Joyce*, 228 So. 3d at 1126 (citing *Rowe*, 472 So. 2d at 1150). Thus, in addition to finding the awarded hourly rates are supported by prior awards in the Central Florida community, the Court specifically notes that these rates are commensurate with the complexity of this case, the skill required to bring this case to a successful conclusion, and the substantial amount in controversy in this matter. *See Joyce*, 228 So. 3d at 1126 (citing *Rowe*, 472 So. 2d at 1150).

### B.     The Contingency Fee Multiplier

The Eleventh Circuit has affirmed that a contingency fee multiplier is warranted in this case and has further affirmed the Court's decision to reject a multiplier of 1.5 as too low. (*See* Doc. 270, pp. 60–63). However, the Eleventh Circuit also held that this Court's application of a 2.5 multiplier was too generous here. (*Id.*). In accordance with the Eleventh Circuit's findings, a multiplier of 2.0 is appropriate and will be applied to the lodestar amount in this case. (*See id.*); *Quanstrom*, 555 So. 2d at 834.

## IV. CONCLUSION

To summarize, in light of the Eleventh Circuit Court of Appeals' Opinion and Mandate in this case (Docs. 270, 271), the Court provides the following table of compensable fees:

| Name | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Christopher Lynch | 466.9 | $550.00 | $256,795.00 |
| Edmund Normand | 827.4 | $550.00 | $455,070.00 |
| Jacob Phillips | 1225.7 | $350.00 | $428,995.00 |
| Alex Couch | 118 | $250.00 | $29,500.00 |
| Janna Sherwood | 92.4 | $190.00 | $17,556.00 |
| Michelle Montecalvo | 61.2 | $150.00 | $9,180.00 |
| | | **Total Lodestar:** | **$1,197,096.00** |

Further, the Court will apply a contingency fee multiplier of 2.0 to the total lodestar amount, resulting in a total recovery of $2,394,192.00. The Court finds that this award is reasonable and appropriate under the lodestar method, applicable Florida jurisprudence, Florida Statute § 627.428, and Federal Rule of Civil Procedure 23(h).

For these reasons, it is **ORDERED** as follows:

1. The Court's March 19, 2021 Order (Doc. 256) is **VACATED IN PART** to the extent outlined in this Order;

2. The Report and Recommendation (Doc. 244) is **ADOPTED AND CONFIRMED IN PART** and made a part of this Order;

3. Plaintiff's Objection (Doc. 247) is **SUSTAINED IN PART**;

4. Defendant's Amended Objection (Doc. 248) is **OVERRULED**;

5. Plaintiff's Verified Motion for Attorneys' Fees (Doc. 223) is **GRANTED IN PART** and **DENIED IN PART** to the extent outlined in this Order. Accordingly, this Court awards attorney's fees in the amount of $2,394,192.00.[4]

6. The Court's April 21, 2021 Order for Final Judgment (Doc. 261) and the Final Judgment (Doc. 262) are **VACATED** so that the Court may address the amount of appellate attorney's fees, if any, that should be awarded in this case.

**DONE AND ORDERED** in Orlando, Florida on May 13, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[4] The Eleventh Circuit has affirmed this Court's finding that Plaintiff is entitled to prejudgment interest on this award. (Doc. 270, p. 6). Accordingly, such interest shall be included in the Final Judgment in this case.